**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JONATHAN W. RUDE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 05-01274 (RCL) |
| | ) |
| **OLAYINKA ADEBOYEKU,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANT ADEBOYEKU'S MOTION TO**
**STRIKE "EXPERT" WITNESSES**

Defendant Olayinka Adeboyeku, by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 26(a)(2)(B) and 26(b)(4)(C) and the Local Rules of the District of Columbia, hereby moves this Court to exclude the "expert" reports of Drs. Juliet Lee, Benjamin S. Shaffer, Stephen J. Wall, and Craig E. Geist and bar their testimony or, in the alternative, order production of full reports that comply with the rules and thereafter allow Defendant Adeboyeku to depose these experts without having to pay their fees. The basis for this motion is set forth in detail in the Memorandum of Points and Authorities filed herewith.

DATED: November 20, 2006        /s/ Daniel E. Loeb
　　　　　　　　　　　　　　　　Daniel E. Loeb (DC Bar # 386098)
　　　　　　　　　　　　　　　　Douglas W. Baruch (DC Bar # 414354)
　　　　　　　　　　　　　　　　Kerry Hotopp (DC Bar # 483747)
　　　　　　　　　　　　　　　　Fried, Frank, Harris, Shriver & Jacobson, LLP
　　　　　　　　　　　　　　　　1001 Pennsylvania Ave., NW, Suite 800
　　　　　　　　　　　　　　　　Washington, DC  20004
　　　　　　　　　　　　　　　　(202) 639-7000
　　　　　　　　　　　　　　　　(202) 639-7003, Fax

　　　　　　　　　　　　　　　　*Attorneys for Olayinka Adeboyeku*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JONATHAN W. RUDE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 05-01274 (RCL) |
| | ) |
| **OLAYINKA ADEBOYEKU,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT
ADEBOYEKU'S MOTION TO STRIKE EXPERT WITNESSES**

Pursuant to Fed. R. Civ. P. 26(a)(2)(B) and 26(b)(4)(C),[1] and the Local Rules of the District of Columbia, Defendant Olayinka Adeboyeku ("Adeboyeku") respectfully moves this Court to exclude the "expert" reports of Drs. Juliet Lee, Benjamin S. Shaffer, Stephen J. Wall, and Craig E. Geist and bar their testimony or, in the alternative, to allow Defendant Adeboyeku to depose these putative "experts" without having to pay their fees.

Plaintiff has proffered the reports of four expert witnesses under Fed. R. Civ. P. Rule 26(a)(2)(B) that are so deficient in terms of the requirements of Rule 26 that they should be stricken and the "experts" barred from testifying. As a threshold matter, nowhere in any of the reports has Plaintiff shown that he has actually retained these experts for this case. More importantly, none of the reports meet other minimum standards set out in Rule 26(a)(2)(B). For instance, they are missing information such as the foundation for the doctors' statements, citations to documents, whether the doctors intend to use any exhibits during their testimony, signatures, and fee schedules.

---

[1] Defendant Adeboyeku reserves his right to move *in limine* under Fed. R. Evidence 702, 703, and 705 to exclude the reports and testimony of Plaintiff's proffered "expert" witnesses.

In the alternative, if the reports are not stricken and the witnesses barred from testifying, Defendant Adeboyeku requests that, after proper reports that comply fully with Rule 26(a)(2)(B) have been provided, he be allowed to depose the expert witnesses without having to pay their fees. Mr. Adeboyeku is currently unemployed and has no source of income; absent the ability to pay to depose Plaintiff's experts, Mr. Adeboyeku otherwise will be barred from seeking discovery from them. Because Mr. Adeboyeku's financial status acts as a bar to the depositions of Plaintiff's experts, applying the fee-shifting provision under Rule 26(b)(4)(C) to Defendant would be a manifest injustice and should not be applied in this case.

## BACKGROUND

In the early morning of June 27, 2004, Plaintiff and his friend assaulted Defendant Mr. Adeboyeku, a student of limited means with no prior criminal record, as he walked to his car in the Georgetown area of Washington, D.C. Incredibly, Plaintiff later falsely accused Mr. Adeboyeku of assault, but the jury agreed with Mr. Adeboyeku and acquitted him of all charges. Plaintiff, represented by his father, now seeks civil damages of $500,000 from a defendant who is currently unemployed and has no significant financial resources. *See* Motion to Vacate Clerk's Entry of Default, Affidavit of Olayinka Adeboyeku (Docket No. 11). Neither his parents, a cab driver and a nanny, nor his wife, are in a position to assist him financially. *Id*. Because of his financial situation, Mr. Adeboyeku was *pro se* for a period of time before retaining counsel, who accepted his case *pro bono*.

On October 26, 2006, three days prior to the deadline established by the Court's March 1, 2006 Scheduling Order, Plaintiff purported to designate four doctors as his expert witnesses and to provide their "expert reports" pursuant to Fed. R. Civ. P. Rule 26(a)(2)(B): Juliet Lee's report (attached hereto as Exhibit 1), Benjamin S. Shaffer's report (attached hereto as Exhibit 2),

2

Stephen J. Wall's report (attached hereto as Exhibit 3), and Craig E. Geist's report (attached hereto as Exhibit 4). Each of these doctors apparently provided Plaintiff with medical care after he assaulted Defendant on June 27. With the exception of Dr. Juliet Lee's report, each "report" consists of a letter to Plaintiff's counsel and a *curriculum vitae*. In addition, Dr. Shaffer's report contains a fee schedule outlining his typical rates as an "expert" witness and Dr. Wall's report contains eight additional pages of background documents. Dr. Lee's "report," on the other hand, consists of a copy of an e-mail message she wrote to the prosecutor in Defendant's criminal case and her *curriculum vitae*, both of which were produced by Defendant to Plaintiff during discovery.

## ARGUMENT

I.    **Plaintiff's "Expert" Reports Should Be Stricken Because They Do Not Meet The Clear Standards Established By Rule 26(a)(2)(B).**

Rule 26(a)(2)(B) establishes clear and unambiguous requirements for the content of an expert's report. Where a report fails to meet the strictures of Rule 26(a)(2)(B), courts can strike those reports. This is precisely what this court did in *United States ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 97-98 (D.D.C. 2002) (Friedman, J.), where the court struck an expert report because it "was not prepared in compliance with Rule 26(a)(2)(B)." Among other things, the report failed to identify such basic information as how much the expert was being paid, whether the expert had published any articles, whether the expert intended to use any exhibits during his testimony, and what the expert considered in writing his report. These requirements to include such information helps expedite discovery, since the "failure to include information concerning the retained expert that is specifically required by Rule 26(a)(2)(B). . . frustrates the purpose of candid and cost-efficient expert discovery." *Ortiz-Lopez v. Sociedad Espanola de*

3

*Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29 (1st Cir. 2001); *see also Nguyen v. IBP, Inc.*, 162 F.R.D. 675 (D. Kan. 1995) (stating that the rule ensures "that all parties disclose[] certain information concerning their expert witnesses, including certain background facts which would enable a party to prepare for cross-examination at deposition or trial"). Plaintiff's proffered reports do not come anywhere close to satisfying the clear requirements of Rule 26(a)(2)(B).

As a threshold issue, Rule 26(a)(2)(B) provides that an expert must be "retained or specially employed to provide expert testimony in this case." Treating physicians, like those who apparently treated Plaintiff's injuries, should not be deemed "retained" based solely on some earlier relationship with a party. In the case of Dr. Lee, it is highly doubtful that Plaintiff has even contacted her, let alone retained her. Dr. Lee's "report" is actually an e-mail communication from Dr. Lee to Jonathan Haray, the prosecutor in Defendant's criminal case. *See* Documents from Dr. Lee, p. 1 (Ex. 1). Indeed, the "report," which was written over three months before Plaintiff even filed this case, is so obviously tied to the criminal case that it ends with Dr. Lee saying that she "will plan on being at the court on Tuesday at about 2 PM as instructed." *Id.* at 1-2. Even more surprising, the report was produced by Defendant himself during discovery, a fact made obvious by Defendant's "ADE" Bates Stamps at the bottom of every single page of the "report." Any cursory examination of this "report" confirms the obvious -- that the "report" was not written as an expert report for this litigation, and that Plaintiff has not even bothered to request from Dr. Lee a Rule 26 expert report.

Plaintiff has similarly failed to show that he has met the basic requirement of retaining his expert witnesses with respect to *any* of his other proffered experts. Indeed, none of the reports have any indicia that Plaintiff actually retained or employed those doctors to provide

4

expert testimony. All of the "reports" are letters to Plaintiff's counsel, thinly summarizing the steps the doctors took in treating Plaintiff. The reports do not indicate whether they were prepared in anticipation of litigation, nor do they contain any statement regarding the costs of authoring the report. Two of the reports lack even the basic information about the doctors' expert witness fees. *See* Documents from Dr. Wall (Ex. 3) and Documents from Dr. Geist (Ex. 4).

Even more important than the issue of whether Plaintiff has actually retained these doctors as expert witnesses for this litigation, each of the individual reports lack essential information required by Rule 26. Such failures are not mere technicalities; rather, the reports lack information critical to understanding precisely what the "experts" believe and what they will testify to.

The most glaring example again is Dr. Juliet Lee's "report," which as pointed out previously, is not a report at all, but an informal e-mail message that Dr. Lee wrote over a year and a half ago to an attorney who has no connection to this case. This e-mail message was produced by Defendant to Plaintiff during discovery, as evidenced by the "ADE" Bates Stamps on the bottom of each page. *See* Documents from Dr. Lee (Ex. 1). The purported report utterly fails to meet any of the required elements that an expert report should have, such as 1) the bases for Dr. Lee's conclusions, 2) the materials she examined, 3) her level of compensation, 4) whether she has participated in other cases, 5) whether she intends to use any exhibits during her testimony, and 6) her signature. This e-mail message is so deficient and woefully inadequate as an expert report, it simply does not meet even the most basic requirements under the Rule.

While Dr. Lee's "report" is the most egregious example, the other proffered reports also suffer from severe deficiencies. For instance, Dr. Benjamin Shaffer's report fails to include 1)

5

any references to the bases for his statements, 2) what documents and data he used in drafting his report, 3) the amount Dr. Shaffer was paid to author the report, and 4) whether he intends to use any exhibits during his testimony. *See* Documents from Dr. Shaffer (Ex. 2). Thus, while the report refers repeatedly to events that occurred years ago, such as Plaintiff's 6-year-old surgery on his shoulder, it fails to reference the documents Dr. Shaffer relied on in drafting these statements. *Id*. at 1. Nor does the report detail how Dr. Shaffer knew that Plaintiff lost consciousness and then regained it on the morning of June 27. *Id.* at 1. The report is also replete with various legal and other conclusions that are clearly outside the bounds of this doctor's knowledge and expertise. For instance, Dr. Shaffer's report conclusory states that Plaintiff "had been jumped," was "knocked out," and was "mugged." *Id*. at 1-2.

       Suffering from similar lapses, Dr. Stephen Wall's *unsigned* report also does not contain any information about his fees, does not reference the documents he used in drafting his letter, and fails to identify whether he plans to use any exhibits during his testimony. Thus, without any sort of referencing documents, Dr. Wall's report states that Plaintiff was "assaulted," "attacked from behind by two individuals," and sustained "blows and kicks to the body and the face." *See* Documents from Dr. Wall, p. 1 (Ex. 3). At one point, the report even mentions "records that have been reviewed," but fails to identify those records. *Id*. at 8.

       Finally, like the rest of Plaintiff's expert "reports," Dr. Craig Geist's report does not disclose vital information. This includes: 1) any references to the bases for the Dr. Geist's statements, 2) what documents and data he used in drafting his report, 3) Dr. Geist's fees, and 4) whether he intends to use any exhibits during his testimony. *See* Documents from Dr. Geist (Ex. 4).

Each of these failures prejudices Defendant Adeboyeku. Without the full and complete disclosure required by the rules, Mr. Adeboyeku is unable to properly prepare for depositions of these and other witnesses. Moreover, these deficiencies deprive him of the ability to determine whether to find and obtain proper expert witnesses who will be able to provide appropriate testimony that can assess Plaintiff's experts and their opinions. Because these lapses fail to satisfy the clear requirements of Rule 26(a)(2)(B), Plaintiff's "expert" reports should be stricken and bar their testimony.

## II.     Requiring Defendant To Pay To Depose Plaintiff's Expert Witnesses Would Be A Manifest Injustice.

If the Court does not strike Plaintiff's declared expert witness reports, *after being provided with reports that fully comply with Rule 26*, Defendant in the alternative seeks an order from this Court allowing him to take the depositions of Plaintiff's expert witnesses without having to pay the experts' fees. Given Defendant Adeboyeku's limited financial resources, it would be virtually impossible for him to shoulder the heavy financial burden necessary to depose Plaintiff's experts. Thus, requiring Defendant to pay for these depositions would impose a manifest injustice.

Although the federal rules normally require the party seeking to depose an expert witness to pay the expert's fee, the Court may preclude such payments where "manifest injustice would result." *See* Fed. R. Civ. P. 26(b)(4)(C). While the Rules do not define "manifest injustice," the 1970 Advisory Committee Notes explain that "the court can protect, when necessary and appropriate, the interests of an indigent party." Fed. R. Civ. P. 26, 1970 Advisory Committee Notes.

Courts have followed the Advisory Committee's suggestion and found manifest injustice where a party is financially unable to pay to depose expert witnesses. For instance, in *Reed v. Binder*, 165 F.R.D. 424, 427-28 (D.N.J 1996), the court determined that two unemployed plaintiffs, one of whom received Veteran's Administration and social security benefits, and a student living with his wife, were too impoverished to pay the fees charged by defendant's experts, which ranged from $250 per hour to a $900 flat fee. Explaining that the client (and not his attorney) "remains responsible for the costs of the litigation," the *Reed* court concluded that it would be a "manifest injustice. . . if these impoverished plaintiffs had to pay the six (6) defense experts for their testimony at deposition."[2] *Id.* at 428. *See also Work v. Bier*, 107 F.R.D. 789, 793 n.4 (D.D.C. 1985) (stating, in dicta, that "in the absence of special circumstances (*such as an impoverished plaintiff* and a very affluent defendant), a party seeking discovery must go where the desired witnesses are normally located") (emphasis added).

Like the plaintiffs in *Reed*, Mr. Adeboyeku is unemployed student who has no significant financial resources to call upon. Because of his limited resources, he is represented in this case *pro bono*, and was represented by a Public Defender in his criminal trial. With such limited assets, it would be virtually impossible for Defendant to pay to depose Plaintiff's expert witnesses, which would effectively prohibit Mr. Adeboyeku from taking their depositions and learning anything further about their opinions and the basis for those opinions.

---

[2] This analysis relied in part on the analysis of "manifest injustice" under Rule 16(e), where courts "weigh the possible hardships imposed on the respective parties. . . [and] balance the need for doing justice on the merits between the parties. . . against the need for maintain orderly and efficient procedural arrangements." *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1444 (7th Cir. 1995).

For instance, Dr. Benjamin Shaffer charges $2000 for the first hour of deposition, and $1000 for each additional hour.[3] In addition to the time spent in the deposition, Dr. Shaffer also charges for time spent preparing for depositions, which is an additional $500 for the first hour and $250 for every additional hour. Requiring Defendant to pay these fees would not merely present an undue hardship; it would result in an absolute bar to necessary discovery, because Mr. Adeboyeku has nothing even approaching those types of resources.[4] On far less compelling grounds, the court in *Reed* found that it would be a manifest injustice to require three plaintiffs to pay to depose six expert witnesses, where the experts' fees ranged from $250 per hour to a $900 flat fee. Dr. Shaffer's fee is eight times the amount in *Reed* and would not be shared among three people, but would be borne by Mr. Adeboyeku alone. Thus, while Mr. Adeboyeku shares a similar financial situation as the plaintiffs in *Reed*, his case is even more compelling, because the extreme costs that Defendant would have to bear. Therefore, like the plaintiffs in *Reed*, Mr. Adeboyeku should be allowed to take the depositions of Plaintiff's expert witnesses without having to pay their required fees, but only after Plaintiff provides expert reports that fully comply with Rule 26(a)(2)(B).

## **CONCLUSION**

For the foregoing reasons Defendant Adeboyeku respectfully requests that the Court strike the "expert" reports of Drs. Juliet Lee, Benjamin S. Shaffer, Stephen J. Wall, and Craig E.

---

[3] As discussed above, Plaintiff provided the fees only for Dr. Shaffer, conveniently neglecting to include the fees charged by his three other "experts."

[4] Even though Plaintiff fully understands this, he has continued to act like Mr. Adeboyeku is a high net worth individual. Plaintiff recently made a six figure settlement demand, knowing full well that such demand was far in excess of anything that Defendant could realistically pay, even assuming Defendant was prepared to pay anything to settle Plaintiff's baseless claims.

Geist and bar those four individuals from testifying at the trial in this case, or in the alternative order that reports compliant with Rule 26(a)(2)(B) be produced, and thereafter to allow Defendant Adeboyeku to depose these experts without payment.

## CERTIFICATION

Pursuant to Local Rule 7(m), counsel for Mr. Adeboyeku has conferred with Plaintiff's counsel, who refused to consent to this Motion.  Counsel for co-defendant Tony Wood concurs in this motion.

DATED:  November 20, 2006			/s/ Daniel E. Loeb
						Daniel E. Loeb (DC Bar # 386098)
						Douglas W. Baruch (DC Bar # 414354)
						Kerry Hotopp (DC Bar # 483747)
						Fried, Frank, Harris, Shriver & Jacobson, LLP
						1001 Pennsylvania Ave., NW, Suite 800
						Washington, DC  20004
						(202) 639-7000
						(202) 639-7003, Fax

						*Attorneys for Olayinka Adeboyeku*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JONATHAN W. RUDE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )     **Civil Action No. 05-01274 (RCL)** |
| | ) |
| **OLAYINKA ADEBOYEKU,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**PROPOSED ORDER**

Upon consideration of Defendant Adeboyeku's Motion to Strike Expert Witnesses and all responses thereto, and for good cause shown, this Court determines that the Motion is **GRANTED**. It is hereby **ORDERED** that:

(i)    The reports of Drs. Juliet Lee, Benjamin S. Shaffer, Stephen J. Wall, and Craig E. Geist are hereby stricken; and

(ii)    Drs. Juliet Lee, Benjamin S. Shaffer, Stephen J. Wall, and Craig E. Geist are barred from testifying at trial.

So ORDERED this __ day of November, 2006.

_____
United States District Judge Royce C. Lambert