UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

    Plaintiff,

v.    Case No. 1:05CV1274(RCL)

OLAYINKA ADEBOYEKU
And ANTHONY B. WOOD,

    Defendants.

PLAINTIFF'S OPPOSITION MEMORANDUM TO
DEFENDANT'S MOTION TO EXTEND DISCOVERY DEADLINE

COMES NOW Plaintiff, by and through his counsel, and submits this Opposition Memorandum to Defendant's Motion to Extend Discovery Deadline. Defendant is being represented by one of this nation's largest law firms. The firm, Fried, Frank, Harris, Shriver & Jacobson, LLP, has over 500 attorneys at various offices in the United States.[1]

The "Lead Counsel" for defendant is Mr. Daniel E. Loeb. It is remarkable that Mr. Loeb is blaming defendant's failure to schedule and take depositions upon the loss of an Associate Attorney—Ms. Wendy Fischman. Mr. Loeb's attempt to shirk his own professional responsibilities is astonishing. Mr. Loeb appears to have engaged in what can be termed '**PIGGY-BACK DISCOVERY**'. This tactic involves a party intentionally waiting to engage in discovery until after all other parties have completed discovery. The delaying party then simply issues a comprehensive discovery demand on the other parties thereby attempting to "**Piggy Back**" on the work of diligent counsel. This tactic then usually includes an extension of the discovery period based upon some nonsensical

---

[1] Fried, Frank, Harris Shriver & Jacobson reported revenue in excess of $328 Million in 2005. The Washington D.C. office is listed as having 109 attorneys. Defendant has had at least three attorneys assigned and entering appearances in this case at all times.

1

excuse by the delaying party. Plaintiff, in further response and opposition to defendant's motion, hereby states as follows:

## Summary of Opposition

Plaintiff opposes the motion based upon the fact that defendant has had 13 months to conduct discovery in this proceeding. Secondly, defendant has already had the benefit of first hand knowledge of the trial testimony of many individuals during his criminal trial. The criminal trial transcript has been on file in the office of the Clerk of the Superior Court since **JULY 3, 2006.** There has been no change in the Lead Counsel for defendant. Daniel E. Loeb entered his appearance as "Lead Counsel" on November 1, 2005. Defendant has had notice of and was provided all requested information on plaintiff's lay and expert witnesses 6 to 8 months ago. Defendant has been provided with numerous documents, including copies of deposition transcripts, as well as offered access and review of additional transcripts and documents. Defendant's contention regarding 'delays' by plaintiff is spurious, misleading and incorrect. Defendant has not established the necessary due diligence as required for good cause under Rule 16(b), Fed.R.Civ.Proc. 16(b).

## OPPOSITION STATEMENT OF FACTS

This case involves a claim for common law assault and battery. The defendant was arrested and indicted for aggravated assault on plaintiff. Discovery has been conducted since April 2006. Defendant, based upon his litigation conduct, obviously made the decision to delay his discovery, including depositions, until the conclusion of discovery and filing of dispositive motions in Rude v. Dancing Crab at Washington Harbour et al (Case No. 05cv1278).

Defendant's motion omits some very important material facts. An **overriding and highly material fact** is that in late August 2006 plaintiff obtained a copy of a videotape from the Metropolitan Police Department. The production of this videotape obviated the need for a portion of the plaintiff's discovery in this case. The tape is of a police interview with defendant Anthony B. Wood ("WOOD"). The tape was noticed to defendant and copy of a certified transcript provided on August 30, 2006. The tape implicates Wood in the assault on plaintiff. Secondly, the tape describes defendant Adeboyeku as engaging in a violent criminal act--- Assault With a Deadly Weapon (ADW). Wood describes the fact that he had tackled plaintiff and had pinned plaintiff to the sidewalk. While plaintiff was pinned by Wood defendant Adeboyeku is kicking plaintiff in the head. Plaintiff, on September 18, 2006, provided Wood's deposition transcript wherein statements regarding the attack on plaintiff were made. Plaintiff, on September 18, 2006, further offered to defendant's counsel the opportunity to review the deposition transcripts of two witnesses—Michael Gillman and James Sylvester. Defendant, between September 18th and November 1st, 2006, made no effort to accept or take up plaintiff's offer.

On November 1, 2006, defendant issued a voluminous document production request to plaintiff demanding all files and documents (including deposition transcripts) in the Dancing Crab proceeding-- case number 05cv1278(RCL). The documents are not due for production until December 14, 2006. It is impossible to have refused to produce documents when the date for production has not passed. Defendant now has the involved documents by way of a subpoena duces tecum. Plaintiff informed that Mr. Hotopp that he could make an appointment to visit counsel's office to review the original files and

transcripts anyway. Plaintiff has set forth below the primary discovery fact dates. These dates are:

## PRIMARY FACT DATES

**February 25, 2004** – Defendant is provided with a copy of the Wood videotape and transcript by the AUSA in case No. F 04-4460 & F 04-4895. Defendant also provided with all grand jury transcripts, witness statements, photographs and medical records reflecting plaintiff's injuries on June 27, 2004.

**March 4-16, 2004** - Defendant afforded view of all exhibits and testimony of police officers, witnesses and expert medical testimony (Juliet Lee, MD) during course of criminal trial.[2]

**March 7, 2004** – Wood and defendant Adeboyeku demand and Judge orders AUSA/USDOJ to provide Wood a letter with immunity from prosecution for testimony in defendant's criminal trial.[3]

**November 1, 2005** – Lead Counsel Daniel E. Leob enters appearance, files motion for enlargement of time to "investigate the facts" and plead counterclaims. (Dkt # 11-1).

**February 27, 2006** –Parties file Joint Report and Proposed Scheduling Order (Dkt # 22).

**March 1, 2006** – Court issued Scheduling Order directing the completion of discovery by January 1, 2007. Order limits depositions to 10 and written discovery concluded by December 1, 2006.

---

[2] The witnesses included James Sylvester, Michael Gillman, Samir Zarkhosh, Matthew Zarhkosh, Charles Moran, Jonathan Eagleton, Robert Owen, Nelson Morias, Howard Smith, Edmund Kennedy, Mark Lee, Juliet Lee, Jonathan Rude and Oluwatosin Adeboyeku. This list included 5 police officers—Owen, Lee, Smith, Kennedy and Morias. Officer Glenn Luckett was omitted as duplicative of Owen. A complete copy of the criminal trial transcript has been on file at the Office of the Clerk of the Superior Court since July 3, 2006.

[3] This document as well as many others were obtained through the Metropolitan Police Department. Plaintiff had previously issued a similar discovery document demand to defendant Adeboyeku. However, these and other incriminating documents were not produced in response to plaintiff's document production request. Defendant's counsel had no explanation for this production oversight.

**March 16, 2006** – Defendant files Initial Disclosures with the court and lists 16 witnesses. The document lists seven (7) individuals that testified in defendant's criminal trial.[4] (Dkt # 27).

**May 1, 2006** – Appearance of Kerry Hotopp, Esq.; he signs and serves defendant's answers and objections to plaintiff's first interrogatories. Mr. Hotopp, in discussions regarding the 'handling' of defendant's case, represents that he has taken over from Ms. Wendy Fischman. (See Exhibit No. 1 hereto, page 12).

**May 15, 2006** – Plaintiff provides Plaintiff's Initial Disclosures, including identification of witnesses, medical treatment providers including treating physicians, the nature of their services, as well as itemized list of medical expenses broken out by date, doctor, function and amount. (See Exhibit No. 2 hereto).

**May 18, 2006** – Plaintiff telefaxed letter to Kerry Hotopp regarding discovery discussion and agreements between the parties. Plaintiff agrees to provide expert witness reports of Drs. Wall, Shaffer and Geist. (See Exhibit No. 3 hereto).[5]

**May 19, 2006** – Kerry Hotopp forwards letter confirming the discussions and agreement regarding discovery issues and forwards agreed upon Confidentiality Agreement signature page. Hotopp specifically acknowledges the production of expert witness reports and plaintiff's reservation. (See Exhibit No. 4 hereto).

**May 19, 2006** – Plaintiff serves Answers to defendant's first interrogatories and to first production request. (See Exhibit No. 5 --certificates of service).

---

[4] Those witnesses were Samir Zarhkosk, Matthew Zarkhosh, Charles Moran, Jonathan Eagleton, Michael Gillman, Oluwatosin "Tosin" Adeboyeku, Robert Owen. Defendant further identified Glen Luckett, Dean Cibel, John Cummings and Robert Puzio as witnesses having relevant information and testimony. Of interest is that defendant himself was not identified as a witness.

[5] Defendant already had a copy of the e-mail from Dr. Juliet Lee. Dr. Lee was a treating doctor and testified at defendant's criminal trial in March 2005.

**June 7, 2006** – Plaintiff serves defendant with copies of medical records and the expert witness reports pursuant to executed confidentiality agreement. (See Exhibit No. 6 hereto).

**June 19, 2006** – Defendant serves Answers to First Interrogatories and Responses to Document Production Request including information designated as confidential. (See Exhibit No. 7, cover letter-Kerry Hotopp).

**August 1-4, 2006** –Plaintiff undertakes to attempt to set up deposition schedule but is informed by Kerry Hotopp that depositions should be scheduled after September 1, 2006. (See Exhibit No. 8 hereto).

**August 30, 2006** – Plaintiff notices and serves upon Kerry Hotopp the transcript of the June 27, 2004 police interview of Anthony Wood, the police witness statement of Jonathan Cummings and copies of hospital photographs of plaintiff. (See Exhibit No. 9 hereto).

**September 18, 2006** – Plaintiff provides defendant with the deposition transcript texts for Oluwatosin Adeboyeku and Anthony B. Wood. Plaintiff further indicates that he has the deposition transcripts of Mr. Gillman and Mr. Syslvester (sic) "which you are free to review if you so wish". (See Exhibit No. 10 hereto).

**September 19, 2006** – Plaintiff provides to defendant copies of Dancing Crab documents as well as defendant's purported employment file and the employment file for Anthony Wood. Plaintiff provides defendant with a CD Disc containing approximately 700 pages of telephone records for various witnesses, including defendant. (See Exhibit No. 11 hereto).

**November 1, 2006** – Plaintiff receives defendant's Second Request For Production of Documents. Production Request number 1 seeks all deposition transcripts and exhibits from Case No. 05cv1278(RCL). Production Request numbers 4, 5, 6, 7, 8 request medical records and invoicing. Production Request number 9 seeks medical records and information related to a reconstructive surgery from September 2000. (See Exhibit No. 12 hereto).

**November 6, 2006** – Plaintiff serves Notice of Deposition of Defendant Olayinka Adeboyeku. (See Exhibit No. 13 hereto).

**November 7, 2006** – Defendant served Subpeona Duces Tecum on registered agent for The Dancing Crab at Washington Harbour, L.P. demanding production by November 20, 2006 of all documents and discovery in Rude v. Dancing Crab at Washington Harbour, Case No. 05cv1278(RCL) and including all deposition transcripts and exhibits. (See Exhibit No. 14 hereto, document demand at Attachment A, items 1, 2 and 3).

**November 8, 2006** – Plaintiff forwards e-mail message to Kerry Hotopp confirming agreement for the **extension of time for response** to defendant's second document production request to **December 14, 2006** due to the demand for production of medical records from September 2000 involves obtaining such records from Georgetown University Medical Center Hospital and their contracted archive. (See Exhibit No. 15 hereto).

**November 10, 2006** – Plaintiff forwards message to counsel for defendant confirming counsel's inability to contact defendant Olayinka Adeboyeku and his appearance for deposition. (See Exhibit No. 16 hereto).

**November 20, 2006** – Defendant files Motion to Strike Plaintiff's Expert Witnesses with Memorandum which states: "Mr. Adeboyeku is currently unemployed and has no source of income; absent the ability to pay to depose Plaintiff's experts, Mr. Adeboyeku will be barred from seeking discovery from them". (See Exhibit No. 17, page 2 as marked).

**November 27-29, 2006** – Defendant confirms to Plaintiff that Dancing Crab has produced numerous documents to defendant, including deposition transcripts, medical records, medical bills and invoicing as well as copy of criminal trial transcript. (See Exhibit Nos. 18 and 19 hereto).

The above outline of the discovery time line underscores that defendant has copies of the prior witness statements for most if not all of plaintiff's witnesses. Second, that plaintiff provided to defendant any and all discovery, transcripts and documents which were determined to be relevant by plaintiff. Thirdly, defendant had copies of plaintiff's expert witness reports since June 7, 2006 but waited six (6) months before raising any questions. It is important to note that each physician is a "treating" doctor and **NO EXPERT WITNESS REPORT IS REQUIRED IN ANY EVENT UNDER RULE 26(A)(2)(A) and (B).** Lastly, Daniel E. Loeb has always been the Lead Counsel and Kerry Hotopp has handled "all" of the case discovery since **MAY 1, 2006.**

### ARGUMENT

#### Introduction

The defendant knowingly and intentionally engaged in a tactic of delaying the taking of depositions until the completion of discovery in a related case. This litigation strategy has substantial risks. The strategy depends upon the work of other counsel and that all counsel have the same approach to a case. Secondly, it depends upon "complete"

discovery in the other case. Lastly, that the 'other case' not result in the disclosure of a defendant's failure to comply with discovery requests. Defendant herein was apparently banking upon the fact that plaintiff would not learn of nor be able to obtain a copy of the WOOD videotape. Simply, once that material surfaced—all bets were off and the "cat was out of the bag". This videotape and certified transcript was provided to defendant and his counsel on **FEBRUARY 25, 2004.** Defendant had personal knowledge of this tape; plaintiff requested this information discovery from defendant. Defendant did not produce nor disclose that this tape existed.

## STANDARD FOR MODIFICATION OF A SCHEDULING ORDER

Defendant does not provide a complete statement of the standards and burden required to obtain a modification of a scheduling order. Rule 16(b) of the Rules of Civil Procedure, Fed.R.Civ.Proc. 16(b) (see also LCvR 16.4) requires a showing of **"GOOD CAUSE"** by the party seeking to amend a scheduling order. This standard is an "exacting one" and 'demands a demonstration that the existing schedule cannot reasonably be met despite the **DILIGENCE** of the party seeking the extension'". *Archer Daniels Midland Company v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 581-582 (D. Minn. 1999). The court in *Archer Daniels*, further stated:

> "It hardly bears mention, therefore, that 'carelessness is not compatible
> with a finding of diligence and offers no reason to grant relief'. Johnson
> v. Mammoth Recreations, Inc., 975 F.2dd. 604, 609 (9th Cir. 1992). Nor
> does the question of good cause turn on the existence or absence of prejudice
> to the non-moving party, Luigino's Inc. v. Pezrow Cos., supra at 525".

The Court when on to explain the importance of complying with scheduling orders. The court noted that scheduling orders are critical to the court's case management responsibilities. *Ibid.* The Court observed that the failure of a litigant to honor the

established deadlines "gravely disturbs" the court's calendar as well as the capacity of the court to "promptly address the concerns of those litigants who do abide by Scheduling Orders and in a real sense, the integrity of the system of Federal Justice". 187 F.R.D. at 585. The court in *Johnson v.Mammoth Recreations, Inc.* 975 F.2d. 604, 610 (9th Cir. 1992) noted that disregard of a scheduling order disrupts the agreed upon course of the litigation and "rewards the indolent and the cavalier". The requirement that a movant provide proof of "due diligence" under Rule 16(b) is a threshold matter. Cf. *Wolf Designs, Inc. v. DHR & Company, et al.*, 231 F.R.D. 430, 436 (N.D. Ga. 2005). If the court finds that the sought discovery could have been performed during the period allotted under the existing Scheduling Order; then the motion must be denied. Cf. *Claytor v. Computer Associates International, Inc.*, 211 FR.D. 665, 666 (D. Kan. 2003); and *Interstate Narrow Fabrics v. Century U.S.A., Inc. et al.*, 218 F.R.D. 455, 460 (M.D. NC. 2003).

I. DEFENDANT'S REPRESENTATIONS ARE NOT CONSISTENT WITH THE RECORD AND DO NOT MEET THE BURDEN OF PROOF OF DUE DILIGENCE BY DEFENDANT.

Defendant's motion is internally inconsistent both as a matter of fact and law. Defendant goes on at length regarding the "unexpected departure" of Ms. Fischman. (Memorandum at page 4). The record (see the Primary Fact Date and summary of events contained at pages 3-7 infra) shows Ms. Fischman "left" this case as of May 1, 2006. Mr. Loeb and Mr. Hotopp have handled this case (without incident) for over six months. Any "justification" related to Ms. Fischman is patently insufficient.

Defendant states: "because of lead defense counsel's maternity absence, very little discovery occurred between June and October". (Memorandum at pg 3). Mr. Hotopp had

this case along with Mr. Loeb from May 1st forward—Ms. Fischman should not be used as an excuse. The record shows ongoing activities—even a questionable "stall" by Mr. Hotopp during this period (See Exhibit No. 8). Mr. Loeb or Mr. Hotopp signed all documents, engaged in all communications, entered into confidentiality agreements, responded to and issued discovery requests.

In truth, there appears to be an intentional decision NOT to conduct discovery or depositions until after the closure of the record in the Dancing Crab case. Mr. Loeb's statement suggests a level of personal neglect as well as the imputed incompetence of Mr. Hotopp. This in and of itself is a damaging admission.[6] The contention that defense counsel took no steps to prosecute defendant's contentions between June and October represents a clear admission of a lack of diligence and would be a violation of Rules 1.3(a), 1.3(b) and 1.3(c) of the Cannons of Professional Conduct. Mr. Loeb, on the other hand, would have violated Rule 5.1(a) and Rule 5.1(b) of the Cannons of Professional Conduct by failing to properly supervise the litigation. Mr. Loeb has placed himself in an untenable situation by undertaking his risky tactic of waiting for everyone else to complete discovery and then "piggy-backing" on the work of diligent counsel.

Plaintiff has attached hereto an excerpt from a second motion filed by defendant (Exhibit No. 17 hereto) in which Mr. Loeb claims defendant is more or less indigent.[7]

---

[6] The District of Columbia Rules of Professional Conduct specifically hold Mr. Loeb responsible for the handling of this case. Rule 5.1 (a) and Rule 5.1 (b) state: "(a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the rules of professional conduct; (b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other Lawful conforms to the Rules of Professional conduct". Rule 1.1(a) requires an attorney to provide competent representation. Rule 1.3(a), 1.3(b) and 1.3(c) require an attorney to act diligently in representing a client.

[7] Plaintiff has documentation and statements from defendant which appear to suggest otherwise. Secondly, defendant and Mr. Loeb's firm appear to be financed by a 'friend' that has financed defendant in the past. It appears that there is a large computer software company in which this 'friend' is a senior executive and

Mr. Loeb, in his memorandum indicates that defendant plans to take depositions of "thirteen or more witnesses". (Memorandum at pg. 6); that these witnesses "live out-of-state" including one "in a different country" (Memorandum at pg. 1); that defense counsel intends to travel to Florida and California to take depositions (Memorandum at pg. 5).

Mr. Loeb, on one hand, claims that defendant is indigent and therefore should be able to avoid paying an expert witness their required reasonable fee; AND here, Mr. Loeb claims that he needs an extension of the discovery period so that defense counsel can travel the United States and a foreign country taking depositions in person. Mr. Loeb is being disingenuous in either one or both of his recent pleadings to this court. Mr. Loeb cannot have it both ways—he cannot obtain additional time to take depositions "on the road" and yet claim his client should not be required to comply with the requirement for reasonable compensation for expert witnesses.

Mr. Loeb has always been "Lead Counsel" in this case. Ms. Fischman's pregnancy was a useful tool to obtain an extra period of time to complete discovery. However, the record (See Exhibits 1 through 19) demonstrates that this case was taken over by Mr. Kerry Hotopp. It is pointed out that as of November 29th, Mr. Hotopp was still employed at Fried, Frank, Harris, Shriver & Jacobson, LLP. There has been NO CHANGE in the Lead Counsel.

II.     DEFENDANT'S CONTENTION ABOUT PLAINTIFF DELAYS IS NOT CONSISTENT WITH THE RECORD.

Defendant seeks to blame plaintiff for alleged delays in discovery that merit the granting of the sought extension. Defendant is seeking to take 13 depositions of

---

may also be a client of Mr. Loeb and his firm. However, this fact point is more appropriately addressed in Plaintiff's Opposition to Defendant's Motion to Strike Expert Witness Reports.

unidentified persons. The Scheduling Order permits only 10 depositions. The record discloses that defendant has plaintiff's expert witness information and reports for almost 6 months but only chose to complain at the virtual completion of discovery. Defendant admits that the witnesses are treating doctors. Treating physicians are not required to submit expert reports. See; <u>Riddick v. Washington Hospital Center</u>, 183 F.R.D. 327, 330 (D. DC. 1998); and more recently, <u>Hildebrand v. Sunbeam Products, Inc. et al.</u>, 396 F.Supp.2d. 1241, 1250 (D. Kan. 2005).

On September 18, 2006 plaintiff provided defendant with the deposition of Anthony B. Wood, the "co-defendant". Plaintiff further offered to provide access to the depositions of Mr. Gillman and Mr. Sylvester. This is not obstruction nor refusal to provide discovery. It is noteworthy that these transcripts were not requested until November 1, 2006 and are not due to be provided until December 14, 2006 (See Exhibit Nos. 10, 12, and 15). Defendant contends that plaintiff refused to voluntarily provide these transcripts. On September 18, 2006 plaintiff provided text copies of deposition transcripts. The parties were discussing a voluntary arrangement to provide access when defendant issued its' voluminous production demand. Plaintiff objected not to the production of the involved information—BUT TO THE FACT THAT DEFENDANT DECLINED TO OFFER COMPENSATION FOR COSTS ASSOCIATED WITH THE PRODUCTION PROCESS.[8] While a document here or there is inconsequential; the demand to review and photocopy **FOR FREE** thousands of pages of material is patently improper. Defendant has now demanded copies of depositions transcripts that have a

---

[8] The issues in these cases are different; the evidence has little overlap and defendant's demands are based upon the premise that all information in Case No. 05cv1278 is relevant to Case No. 05cv1274. That assumption is not correct. The relevant depositions (Wood, Adeboyeku, Gillman and Sylvester) were either provided or offered to defendant over 60 days ago—defendant failed to accept the offer—"NO strings attached"—See Exhibit No. 10.

value of approximately $5,000 dollars. If the involved transcripts contain detrimental information as to defendant—that is the risk that defendant takes when he decides to take a "free ride", not take any depositions himself, and piggy-back on the work of other counsel. Plaintiff has been more than cooperative in this matter.

    III.    DEFENDANT'S LACK OF DILIGENCE IN THE SCHEDULING OF DEPOSITIONS IS UNDERSCORED BY THE FACT THAT DEFENDANT HAS HAD OVER ONE YEAR NOTICE OF THE NEED TO CONDUCT THESE DISCOVERY DEPOSITIONS.

Defendant has already heard the trial testimony of many witnesses that he now apparently wants to depose. Defendant did not identify "who" these 13 deponents were to be. He has had witness statements (he failed to produce all of them to plaintiff however) for at least 8-9 months. He has grand jury testimony. What more does he want? He wants a delay of this case. The question is therefore: WHAT was defendant doing from this announced "investigation" on November 1, 2005 to his motion to extend discovery deadlines on November 20, 2006? The motion submitted by defendant omits any answer to this controlling question. As was noted by the court in <u>Claytor v. Computer Associates International,</u> supra, a movant may NOT blame any failure to complete discovery upon the alleged non-compliance with discovery by the non-moving party. 211 F.R.D. at 667. The trial testimony from defendant's criminal trial also contains the testimony of these individuals (Gillman and Sylvester as example) and has been on file and available to defendant since July 3, 2006. WHERE has defendant been?

Defendant could have taken depositions as permitted by the scheduling order during the period June – through November 2006. He did not do so and made no effort to even schedule any depositions. Any and all discovery could have been performed and

14

completed during the time frame established in the existing scheduling order. This is clear lack of diligence by defendant precludes any finding of good cause.

    IV.    **DEFENDANT HAS LITTLE CONCEPT OF THE REQUIREMENT THAT ATTORNEYS AVOID CREATING UNDUE BURDENS AND CONFLICTS WHICH ADVERSELY EFFECT REPRESENTATION.**

Counsel for Plaintiff informed defendant of the pendency of major proceedings in 2007. It is the responsibility of all attorneys to avoid taking too much work the result of which adversely impacts the quality of their legal representation. Plaintiff will not voluntarily breach the Professional Code of Conduct based upon Mr. Loeb's carelessness nor reckless demands regarding overlapping cases and discovery. Counsel, like the court, have calendars and schedules as well.

## CONCLUSION

Wherefore, in consideration of the above and foregoing, it is hereby respectfully requested that the Court deny defendant's motion to amend the Scheduling Order to Extend the Deadline for the completion of discovery in this case. Further, that the Court enter such other and further Order as the court deems just and appropriate in the circumstances.

Dated: 30 November 2006

                                    Respectfully submitted,

                                    /S/

                            RICK A. RUDE, Esq. #244897
                            Suite 103
                            207 Park Avenue
                            Falls Church, VA. 22046
                            (AC 703) 536-3063 Tele.
                            (AC 703) 536-4841 Fax.
                            Counsel For Plaintiff