UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

    Plaintiff,

v.                                Case No. 1:05CV1274(RCL)

OLAYINKA ADEBOYEKU
And ANTHONY B. WOOD,

    Defendants.

PLAINTIFF'S OPPOSITION MEMORANDUM TO MOTION
OF DEFENDANT TO STRIKE PLAINTIFF'S DESIGNATION
OF EXPERT WITNESSES, OR IN THE ALTERNATIVE, TO COMPEL
PRODUCTION OF REPORTS WITHOUT PAYMENT OF EXPERT FEES

COMES NOW, Plaintiff, by and through his counsel, and submits this Opposition Memorandum to Defendant Olayinka Adeboyeku's Motion to Strike Plaintiff's Designation of Expert Witnesses, or in the Alternative, to compel production of expert reports and for defendant's counsel to depose expert witnesses without payment of a reasonable fee. Plaintiff, in response to defendant's motion, states as follows:

Summary of Opposition

Defendant's motion seeks relief that is contrary to existing law in the District of Columbia. The identified physicians are the doctors that treated plaintiff in relation to the injuries that plaintiff sustained as a result of an assault and battery on June 27, 2004. Defendant's motion admits this fact. Treating physicians are not required to provide expert witness reports when their testimony relates to and arises out of their observations, diagnosis and treatment of patients. Secondly, Plaintiff is submitting herewith a Declaration as to the requested witness fees which reflects that such fees are standard

1

billing rates that are charged and have been paid by plaintiff. Lastly, the report of Stephen J. Wall, M.D. Ph.D. provided Defendant with more than adequate notice and also meets the requirements of Rule 26(a)(2)(B).

In addition to the above, information available to plaintiff reflects that defendant Adeboyeku is NOT indigent but has financial resources. Defendant mis-interpreted Rule 26(b)(4)(C)(i) and (ii), Fed.R.Civ.Proc. 26(b)(4)(C)(i) and 26(b)(4)(C)(ii).

<u>OPPOSITION STATEMENT OF FACTS</u>

**Plaintiff's Local Rule 7(m) Statement**

Defendant, at page 10 of its Memorandum, submits a Local Rule 7(m) 'Certification'. Defendant was provided the involved expert witness reports on June 7, 2006. Defendant did not complain regarding the contents until a few days before the filing of the instant motion. Defendant specifically did not inform plaintiff that any fee schedules were omitted or missing. In addition, counsel for defendant acknowledged that these doctors were treating physicians. Secondly, that counsel was aware that treating physicians are not required to provide expert witness reports—BUT COUNSEL DEMANDED FORMAL REPORTS ANYWAY OR THAT PLAINTIFF AGREE TO WITHDRAW HIS EXPERT WITNESS DESIGNATION.

Statement of Facts

Defendant has requested alternative relief from the court. Plaintiff has therefore provided a separate statement of facts in response to the demand for expert witness reports (Part A) and defendant's claim that he is indigent (Part B).

## PART A

On June 27, 2004 Plaintiff was attacked and seriously injured by two persons. Plaintiff was transported to George Washington University Hospital and was placed in intensive care. Plaintiff was hospitalized for several days and subsequently underwent three (3) reconstructive surgeries. The injuries were the direct and proximate result of the June 27, 2004 attack. Witnesses to the attack identified Anthony B. Wood as one of the assailants. Mr. Wood was located, arrested and charged with Aggravated Assault. Defendant Adeboyeku fled the District of Columbia. It took the Metropolitan Police Department several days to identify Adeboyeku. Defendant was arrested on a fugitive warrant in Montgomery County and returned to the District. He was arraigned on July 14, 2004 and charged with Aggravated Assault. On June 27, 2004 Anthony B. Wood gave a statement to the Metropolitan Police Department that implicated both defendants in the attack. Mr. Wood stated that Adeboyeku had kicked plaintiff in the head, several times, while Wood had plaintiff pinned to the ground. Wood also later stated that he observed Adeboyeku kick plaintiff in the head while plaintiff lay unconscious on the ground.

Defendant, by discovery dated April 19, 2006, requested plaintiff to identify any expert witnesses and provide any summaries or reports. Plaintiff and Defendant discussed the request and reached an agreement on that request. Plaintiff and Defendant exchanged correspondence confirming their understandings of their arrangements. (See Exhibit Nos. 1 and 2 hereto). Counsel for defendant acknowledged that defendant was being provided expert witness reports "from Doctors Wall, Geist, and Shaffer" (Exhibit No. 2, pg. 1).

Plaintiff, pursuant to a Confidentiality Agreement reached by the parties, provided to Defendant these 'reports' on **June 7, 2006**.[1] Plaintiff's June 7th document production included the medical records and doctors' notes for ALL four identified doctors.

On May 15, 2006 Plaintiff served his Rule 26(a)(1) Initial Disclosures (Exhibit No. 4). Plaintiff's Initial Disclosure identified the "PRIMARY MEDICAL CARE PROVIDERS" as (1) Craig E. Geist, M.D., F.A.C.S., (2) Stephen J. Wall, M.D. Ph.D., (3) Benjamin S. Shaffer, M.D., and (4) Juliet Lee, M.D. (Exhibit 4, pg. 3). Plaintiff then identified six (6) additional "SECONDARY MEDICAL PROVIDERS" (Exhibit No. 4, pg. 3-4) and eight (8) additional medical personnel that provided medical services and treatment to plaintiff. Plaintiff's Initial Disclosure states:

> "The Medical personnel will testify to the injuries sustained by plaintiff, their medical services provided as related to those injuries and the nexus between those injuries and the incident which forms the basis of plaintiff's claims".

The Initial Disclosure likewise included the medical records from George Washington University Hospital for June 27-28, 2004 (Exhibit No. 4, pg. 5). Further attached to the Initial Disclosures was an Itemized List of dates, identification of Doctor, the charge and what the charges were for. For Example, the Hospital Bill from George Washington University Hospital for Plaintiff's treatment on June 27-28, 2004 was $16,843.00. A review of the attachment identified "Lee", "Geist", "Wall" and "Shaffer" as treating Plaintiff.

---

[1] Plaintiff has attached hereto and identified as Exhibit No. 3, a redacted version of the first pages of each of these physician's reports and correspondence. Plaintiff provided additional courtesy copies to defendant with the expert witness designation served October 27, 2006. Defendant in patent violation of the Confidentiality Agreement has inserted these documents into the public file. After complaint by Plaintiff, Defendant has represented that they will undertake the removal of these documents. As of this date, Defendant has not taken any such action. Plaintiff will request the Court to order the removal of these documents from the public in the event Defendant fails to do so.

To summarize their professional services and treatment: (1) Dr. Lee was the head of the Emergency Room on June 27, 2004 and was the 'admitting doctor' as well as evaluating his injuries and condition. (2) Dr. Wall is a specialist in the ear, nose and throat; he evaluated and treated plaintiff and performed the surgery on July 6, 2004 to repair the fractured and broken bones in plaintiff's face and reconstruct his nose/cartilage. (3) Dr. Geist evaluated plaintiff, his partner Dr. Jones, also saw plaintiff. Dr. Geist performed the surgery to repair plaintiff's eye socket and surrounding injuries. (4) Dr. Shaffer diagnosed the extent of the injury to plaintiff's shoulder and performed the surgery to repair plaintiff's shoulder.

Defendant, at page 3 of his Memorandum, states: **"Each of these doctors apparently provided Plaintiff with medical care…"** Defendant admits that these doctors were "treating physicians".

## PART B

The below listed facts are relevant to Mr. Loeb's claim that defendant is indigent, unemployed and has no sources of income. Plaintiff does not make the following facts by any reason of pique, pettiness or the like. Simply, plaintiff believes defendant lacks credibility. This is based upon observation of defendant's demeanor, familiarity with actual facts, as well as investigation. Plaintiff presents these facts to the Court and takes the position that the Court can make its own judgment but the Court is permitted to take all reasonable inferences. Mr. Loeb's Memorandum provided no factual support for the claim that defendant is without any financial means. Were that so; they WHY are we here? Why has defendant REFUSED TO DISCLOSE his finances as requested in plaintiff's discovery?

Plaintiff found that defendant used multiple addresses; that he represented cellular telephones as land lines; that he seeks employment "for cash"; that he seems to live well but without any source of income; defendant cannot regularly be 'found'; these are 'flags' that require any representations by defendant be put to close scrutiny. Plaintiff has identified the following facts regarding defendant's circumstances:

1). Counsel for defendant represented that on October 27, 2005 defendant "retained" Mr. Loeb to represent him in this proceeding. (Doc. No. 11-1, pg. 1).

2) Defendant, by Affidavit filed and dated November 1, 2005, stated the following:

Para. 3 – "I contacted ... a family friend who is a lawyer ..." (Doc. No. 11-3, pg. 2).

Para. 5 – "...a family friend put me in touch with my current lawyers who agreed to represent me notwithstanding my limited financial means". (Doc. No. 11-3, pg. 2)

Para. 4 – "...I am married ..." (Doc. No. 11-3, pg. 2)

3). Defendant on November 1, 2005 submitted a Verified Answer to the Complaint and included a demand for a trial by jury. (Doc. No. 20, pg. 4).

4). On November 20, 2006 Mr. Loeb filed a Memorandum in support of a motion to extend the discovery deadlines in this case. The Memorandum is premised upon the need to take 13 depositions through out the United States as well as travel to a foreign country. (Doc. No. 39, Memorandum at pgs. 5-6).

5). On November 7, 2006 Defendant served a subpoena duces tecum via Capital Process Services, Inc. on the registered agent for Dancing Crab at Washington Harbour, LP.

6). On November 20, 2006 Mr. Loeb submitted to this Court that defendant "is currently unemployed and has no source of income" (Defendant's Memorandum at pg. 2, para. 1).

7). Mr. Loeb acknowledges that defendant is married. (Defendant's Memorandum at pg. 2, para. 2).

8). On March 23, 2003 Olayinka Adeboyeku and "Nadia Marilia Isata" obtained a marriage license from the Clerk of the Court, Montgomery County Circuit Court in Rockville, Maryland.

9). Defendant, at the time of his arrest, listed his address as 5073 Bradley Boulevard, Apartment No. 3, Chevy Chase, Maryland 20815. (Exhibit No. 5—District of Columbia Pretrial Services Agency Report, page 1).

10). Defendant, at the time of his arraignment in the Superior Court, submitted to the court, under penalty of perjury, a "Defendant Eligibility" statement. (Exhibit No. 6).

11). On July 14, 2004 defendant notes that he is married, had income and that his spouse had a salary of "42,000 yearly".

12). That in June 2005 when plaintiff sought defendant at the Chevy Chase address, there was no record of him at such a residence.

13). Plaintiff has recently identified a "Nadia M. Isata" residing at 1903 Rosemary Drive, Apartment No. 3, Silver Spring, Maryland 20910. It is believed that this individual is defendant's spouse.

14). Defendant claims to reside in Upper Marlboro, Maryland but is also "married". (See point 7 and 13 above).

15). On July 8, 2004 Defendant was released from the Montgomery County Detention Center on $5,000 bond "co-signed by Mr. David Schweisow". (Exhibit No. 7, Answers number 23-26, and Exhibit 1 to Defendant's Answers to Plaintiff's First Request For Admissions).

16). Mr. Schweisow was a character witness for defendant representing that the relationship between his family and defendant was long standing and close.

17). Mr. Schwiesow is the General Counsel and Vice President of Deltek Systems, Inc. located in Herndon, Virginia. (See Exhibit No. 8; same individual as pictured in Exhibit No. 7, pg. 10).

18). The cellular telephone records of defendant, which were obtained by subpoena, revealed that defendant contacted Mr. Paul Schwiesow and spoke at length within a few minutes of the assault on plaintiff (4 calls between 2:57 AM and 3:11 AM on June 27, 2004).

19). It appears that Mr. Schwiesow acted as defendant's counsel in July 2004. (Exhibit 7, Answers 23-26)

20). Mr. David Schwiesow represented to counsel for Plaintiff that he was acting as counsel for his son in this matter and declined voluntary appearance for a deposition.

21). Defendant listed Paul Schwiesow as a witness with knowledge of the events in defendant's Initial Disclosures.

If we take the question of his actual "home" (where he lives, as one example) we cannot even actually and definitely corroborate and confirm any specific location.[2]

---

[2] Plaintiff has sought to take defendant's deposition for several months. Each time, there is a problem. Most recently, defendant's counsel notified that defendant would refuse to appear for a deposition. This situation will be addressed by separate motion to the court.

The above facts paint a somewhat different picture of defendant and his associates than what Mr. Loeb tells the Court[3]. It is clear that the firm of Fried, Frank, Harris, Shriver & Jacobson, LLP is financing and advancing fees and expenses to defendant. The "13 depositions" and travel are estimated by Counsel for Plaintiff to cost approximately $8,000 - $10,000 dollars to perform. Where will those funds come from? Plaintiff's counsel does business with Capital Process Services as well and is more than aware of the fee that would be charged for a 6:30 AM 'wake up call' summons that was used on November 7th. Mr. Loeb appears to be advancing and absorbing litigation expenses, court and process server fees, including travel but now claims defendant is indigent in an effort to have plaintiff pay the expert fees. Defendant is truly disingenuous.

ARGUMENT

I.  TREATING PHYSICIANS ARE NOT SUBJECT TO THE
    EXPERT WITNESS REPORT REQUIREMENTS

Defendant knowingly mis-interprets Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Defendant acknowledges that the expert witnesses identified by plaintiff on June 7, 2006 and again on October 27, 2006 were and are "treating physicians". The controlling rule and law in the District of Columbia is that treating physicians are NOT subject to the report requirements of Rule 26(a)(2)(A)(B). The Court in _Riddick v. Washington Hospital Center, et al._ 183 F.R.D. 327, 330 (D.DC. 1998), stated as follows:

> "Because the report requirement ONLY applies to experts retained or specifically employed to provide such testimony, however 'a treating physician ... can be deposed or called to testify at trial without any requirement for a written report.' Rule 26, Fed.R.Civ.P., 1993 Advisory Committee Note.

---

[3] The business relationship between Mr. Loeb, Mr. Schweisow, and Deltek Systems remains unclear. However, there is obviously some connection. Mr. Schweisow may also be 'covering' defendant's fees and legal expenses either directly or indirectly. Defendant did not produce the retainer agreement that is required under Rule 1.5(b) of the District of Columbia Rules of Professional Conduct.

....

> 'Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, causesd by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirements of Rule 26(a)(2)(B). (citations omitted)
> 'It is common place for a treating physician during, and as a part of, the Course of treatment ... to consider such things as the cause of the medical condition ... and the extent of disability caused by the condition, if any' (citations omitted)
> 'treating physician may offer expert testimony that plaintiff's injuries stemmed causally from action for which defendant conceded liability. So long as a treating physician acquires the opinions that are the subject of the testimony directly through treatment of the plaintiff, the treating physician **CANNOT BE FORCED TO FILE A WRITTEN REPORT REQUIRED BY RULE 26(a)(2)(B).** (citations omitted)".

This "exception" to the general expert witness report requirements is long standing and controls herein.[4] As was noted above, defendant acknowledged that legal point—but filed this motion to compel witness reports anyway.

The documents provided in June and again in October 2006 were NOT required. The Court may not strike the designation of expert witnesses for failure to comply with a Rule from which these treating physicians are "exempt".

Defendant complains at length regarding the letters and message from Drs. Geist, Shaffer and Lee. Since these documents are not subject to the Rule 26(a)(2)(B) requirements—defendant's complaints are irrelevant and inapplicable. The Report provided by Doctor Wall, on the other hand, is documented, extensively detailed, based upon his medical treatment of plaintiff and provides the informational notice required by

---

[4] See also the rulings and discussion in Hildebrand v. Sunbeam Products, 396 F.Supp.2d. 1241, 1250 (D. Kan. 2005); and more recently, Kirkham v. Societe Air France, 236 F.R.D. 9, 12 (D.DC. 2006) (...a treating physician who testifies solely as to information learned from his actual treatment of a patient is not subject to the expert witness report requirement ...).

10

the Court's Rule. Any contention that Doctor Wall's report is insufficient is without merit. In addition, plaintiff has attached a Declaration of Counsel that includes Doctor Wall's Fee Schedule for the Court's review.

## II. DEFENDANT HAS NOT MET HIS BURDEN OF PROOF TO AVOID THE REQUIREMENT THAT HE PAY REASONABLE EXPERT WITNESS FEES

Defendant has filed motions containing conflicting and contradictory representations. Defendant has filed this motion contending that he unemployed and has no sources from which to pay a reasonable expert witness fee as required by Rule 26(b)(4)(C)(i). Defendant also has requested an extension of discovery to travel through out the United States taking depositions. Such activities are costly—he has no problem finding funds for that activity. Defendant recently objected to a telephone deposition of Mr. James Sylvester based upon a demand that defendant's counsel wants an in-person deposition in California. (See Doc. No. 41, filed 11/28/06).

It is the belief of plaintiff that defendant's counsel is and has been financing defendant's litigation in conjunction with a "family friend" identified as Mr. David Schwiesow. (See Part B facts, nos. 1, 2, 15 – 20). Defendant conveniently omits the information regarding defendant's marital status and therefore "family income". Defendant in November 2005 represented that he lives with his parents in Upper Marlboro, Maryland. However, he is also married and his spouse lives in Silver Spring. This circumstance does raise questions—again none of which were detailed to the court. Likewise, defendant has refused to provide any information regarding his financial situation. Defendant has a history of seeking work "for cash".

11

Defendant, as the proponent of the involved motion has the burden of proof to establish defendant's financial status and further to afford plaintiff the opportunity to examine such status. Defendant's motion contains an unsupported representation. The concept of "manifest injustice" reflects a "stringent standard". Cf. _Gorlikowski v. Tolbert_ 52 F.3d. 1439, 1444 (7th Cir. 1995). This requires an evaluation of the seven factor test for analysis of expert witness fees. Cf. _Fisher Price, Inc. v. Safety 1st, Inc._, 217 F.R.D. 329, 330-331 (D. Del. 2003). In addition, the Court must perform a balancing of interests between the parties. In that analysis the Court "must exercise restraint". 217 F.R.D. at 332.

Mr. Loeb's unsubstantiated claim that defendant is without income is facially contradicted by Mr. Loeb's representation in his companion motion. It is a fundamental concept of the American Justice System that each party "pay their own costs" unless some exception can be applied. The Court in _Fisher Price_ engaged in an analysis of the financial situation of both parties in order to reach a result. Plaintiff, a recent college graduate like defendant, has no greater resources and defendant has not established to the contrary. Family relationships cannot be substituted for fact requirements. Defendant has not met the substantial evidentiary requirements of the "stringent standard" test. Defendant's motion is devoid of any discussion of the seven factors required to be addressed. _Fisher Price v. Safety 1st_, 217 F.R.D. at 333.

III.    DEFENDANT HAS MISCONSTRUED RULES 26(b)(4)(C)(i) & (ii).

Defendant claims that "manifest injustice" results from the requirement that defendant comply with the reasonable fee requirement contained in Rule 26(b)(4)(i). Defendant

demands that he not be required to pay ANY EXPERT WITNESS FEE. Defendant has improperly attempted to parse the involved Rule.

The history and case law under this rule reflects that it was intended to deal with a situation wherein a party would arrange to have an expert witness request an excessive fee as a device to avoid deposition. The Court is given discretion to review that situation and determine a "reasonable fee". Defendant ignored the provisions of part two "(ii)" of the involved Rule. The Rule is in the CONJUNCTIVE using "AND". Under part "(i)" the court is provided the discretion to determine a reasonable fee. If the court concludes, based upon the preponderance of the evidence adduced by the moving party (in this case the defendant) that the sought fee is unreasonable; the under part "(ii)" the court is to do the following:

> "And
> (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court SHALL require the party seeking discovery to pay the other party a fair PORTION of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from experts".

Simply, a party remains required to pay a "fair portion" of expert witness fees and costs. Defendant's contentions that he should be relieved from the payment of any fee is not consistent with the law. Defendant's motion and memorandum lacking any factual information and further the representation is not subject to any form of corroboration. Defendant cites *Reed v. Binder*, infra, for the proposition that he not be obligated to pay any witness fee. A review of that decision reflects that the moving party submitted detailed financial information to the court and the court balanced the financial means of the parties. 165 F.R.D. at 426. Defendant's motion is without any factual support. The motion must be denied.

IV. PLAINTIFF'S EXPERT WITNESS FEE REQUESTS ARE REASONABLE AND ARE STANDARD BILLING RATES

Defendant's motion attempts to make a comparison of the expert witness fees in a case in New Jersey ten years ago as the indication of a reasonable witness fee in the District of Columbia.[5] Plaintiff has attached hereto a Declaration of Counsel. The attachments to the Declaration reflect that the fees being requested are the "standard billing rates". Standard billing rates have been determined to constitute "reasonable fees" under the Rule. Cf. *Mock v. Johnson*, 57 Fed. Rules Serv. 3d. 527 (D. Haw. 2003). The Declaration further reflects that Plaintiff in fact was charged and paid these rates (Dr. Wall Invoice & Fee Schedule, para. 1).

V. DEFENDANT'S COUNSEL MAY BE HELD RESPONSIBLE FOR EXPERT WITNESS FEES INCURRED

Defendant states that he retained Mr. Loeb. The District of Columbia Rules of Professional Conduct impose upon Mr. Loeb the requirement that he have a written retainer agreement with defendant. See. Rule 1.5(b). Mr. Loeb has been advancing litigation expenses—the wake up call process server would have been approximately $100.00 as well as the Jury Demand filing fee and printing fees, etc.

The court in *Jenkins v. General Motors Corporation*, 164 F.R.D. 318 (N.D. NY. 1996), held that where a counsel advanced fees he was jointly and severally liable for expert witness costs. The advancement of litigation costs "manifests an intent to incur, at least jointly, the liabilities" of the client. Simply Mr. Loeb is required to pay the sought expert witness fees. It is HIS decision whether or not he decides to take the depositions of these physicians. If he schedules the depositions—he is jointly responsible for the fees.

---

[5] The case of Reed v. Binder, 165 F.R.D. 424 (D. NJ. 1996) is not only ten years old but the case does reflect the application of part "(ii)" of the Rule noting the 'fair portion' provision. 165 F.R.D. 428, fn. 3.

164 F.R.D. at 320. This is especially true when a comparison is done of his representations regarding "13 depositions" and his claim that defendant is indigent.

## CONCLUSION

Wherefore, in consideration of the above and foregoing, it is hereby respectfully requested that defendant's motion be denied and that the Court enter such other and further Order as the Court deems just and appropriate in the circumstances.

Dated: 1 December 2006

/S/
_____

RICK A. RUDE, Esq. #244897
Suite 103
207 Park Avenue
Falls Church, Virginia 22046
(AC 703) 536-3063 Tele.
(AC 703) 536-4841 Fax.

Counsel For Plaintiff