**PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE EXPERT WITNESS DESIGNATION**

**EXHIBIT NO. 1**

incomplete. I will simply provide a copy of what was provided to me. I would note that there is a duplication of documents between this material and what I was provided on December 15, 2005. On that date I received an insurance policy and part of a lease agreement. A comparison of the December 15, 2005 production and the April 17, 2006 production reflects that the December 15th production was indeed incomplete. In fact, I am of the belief that these documents are still incomplete.

2. That I would object to the interrogatory requesting that I designate expert witnesses as the interrogatory conflicts with the terms of the Scheduling Order. That without waiving the objection, I would provide the expert witness reports which I recently obtained for Drs. Wall, Geist, and Shaffer. Plaintiff will have until December 2006 in which to designate experts.

3. That I would refer defendant to the court records in the criminal proceedings in the District of Columbia and Maryland in regard to the factual basis for the complaint. I advised that the complaint was based upon the information disclosed therein and counsel's own investigation. I indicated that my investigation was covered by attorney work product as well as attorney client privilege.

4. That on June 20, 2004 plaintiff reported to Mr. Robert Puzio, the head of security for the Dancing Crab, the assault upon John Cummings by defendant. A copy of the telephone record will be provided.

5. That plaintiff was under medical care and treatment from June 28, 2004 through approximately the third week of July 2004 as being confined to bed rest, absolutely no activity and utilizing heavy medication for the injuries sustained. That these injuries and the medical surgeries performed to attempt treatment and repair were highly delicate and if proper care was not involved, plaintiff would have lost the use of his right eye on a permanent basis.

6. That in so far as which defendant inflicted which injury, the question is essentially irrelevant as they are jointly responsible under the law. Secondly, that plaintiff received a concussion resulting in a total loss of memory of the assault as well as events from approximately 8-10 PM on June 26th to approximately 12 PM on June 27th when he awoke in the hospital.

7. I further advised you that defendant was a participant and involved in the Badr case in July 2001 as well as defendant's older brother.

8. That I am seeking the telephone records of defendant as cell phones were used as a communication device between the employees at the Dancing Crab; that the

2

defendant made various representations regarding what he knew, who he spoke with and when. These records go directly to his credibility.

9. I further advised you that associates of Mr. Wood and defendant, through associates of Mr. Wood, had direct contact with the plaintiff. That upon learning of the scope of the injuries, including the concussion and loss of memory, these individuals suddenly raised a claim of self defense.

10. Lastly, that the defendant's associates were so aggressive toward plaintiff and his family during the criminal trial that their actions were noted by the MPD and we had to be escorted from the Superior Court. Plaintiff considers defendant, members of his family, Mr. Wood, his associated and members of his extended family, to be highly dangerous to the community. As such, the disclosure of information regarding plaintiff and the other individuals threatened by defendant will be kept at a minimum in this proceeding. Plaintiff is not presently located in the Washington D.C. area but arrangements for appearance for deposition can be made through counsel. The parents of Michael Gillman have taken the same position. Mr. Gillman may be contacted through his father's law firm in Miami, Florida.

11. That on Monday, May 22, 2006 you would advise me as to whether or not defendant was going to 'stand on his objections' as contained in your responses to Plaintiff's First Interrogatories and Document Production Request or whether defendant was in fact going to provide responses and documents. If so, what was going to be provided. We agreed to another telephone conference to be initiated at your convenience.

Based upon our conversation I believe we should be able to undertake a reasonable and congenial working relationship to address the matters raised in this litigation. I remain,

Very truly yours,

Rick A. Rude
Counsel For Plaintiff

RR/mp

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN W. RUDE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>OLAYINKA ADEBOYEKU, *et al.*, )<br>)<br>Defendants. ) | Civil Action No. 1:05-CV-01274 RCL<br>Judge Royce C. Lamberth |

## CONFIDENTIALITY AGREEMENT

This is a Confidentiality Agreement ("Agreement"), effective May 1, 2006, by and between Defendant Olayinka Adeboyeku and Plaintiff Jonathan W. Rude, together with their respective agents, successors, personal representatives, and assigns.

WHEREAS the undersigned parties to *Rude v. Adeboyeku, et al.*, Case No. 1:05-CV-01274 RCL, pending in the United States District Court for District of Columbia (the "Action"), desire to enter into an agreement to protect material entitled to be kept confidential throughout this Action and to facilitate the prompt resolution of disputes over confidentiality;

WHEREAS, the parties have conferred to discuss the coordination and management of discovery in this matter;

WHEREAS, discovery in this matter may entail the production of medical and financial information in which an individual has a legitimate expectation of privacy ("Confidential Information");

15. This Confidentiality Agreement shall remain in full force and effect during and after the termination of this Action, whether by settlement, judgment, or other disposition or conclusion and all appeals therefrom.

By: _____
Attorney for Plaintiff
Date: May 23, 2006

By: _____
Attorney for Defendant
Date: May 19, 06