UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

      Plaintiff,

v.                                  Case No. 1:05CV1274(RCL)

OLAYINKA ADEBOYEKU
And ANTHONY B. WOOD,

      Defendants.

### DECLARATION OF COUNSEL

My name is Rick A. Rude and I am counsel for plaintiff in this proceeding. I have been admitted to practice in the United States District Court for the District of Columbia for 29 years. I have reviewed the Declaration of Mr. Kerry Hotopp. In response I can state as follows:

1. On September 18, 2006 I forwarded to Mr. Hotopp the texts of two depositions and offered him the opportunity to come to my office and review two other depositions transcripts—Mr. James Sylvester and Mr. Michael Gillman.

2. The September 18, 2006 supplemental production and unilateral offer had 'no strings attached'. Mr. Hotopp never took me up on the offer nor requested that we set up any kind of appointment.

3. Around the end of October I had a discussion with Mr. Hotopp the purpose of which was to arrange a mutually agreeable schedule for the completion of discovery. Mr. Hotopp brought up the issue of being provided copies of transcripts and how that might be accomplished.

1

4. I reminded him of the September offer and I believed we could work out something regarding his request. I raised the *question* with him regarding the fact that (1) instead of few documents he was now asking that I voluntarily provide copies of all of the transcripts; that (2) defendant should at least offer or provide some contribution toward the costs and expenses of the request; that (3) since he considered these transcripts to be relevant and material even though he refused to provide detail; that if these transcripts were 'relevant' they should be "usable" in the case.

5. Mr. Hotopp indicated that he could not give me a response but would get back to me about the questions I raised. Instead of getting back to me; I received a Second Document Production Request for "ALL" documents, files, transcripts, pleadings, answers to interrogatories, etc.

6. Mr. Hotopp is mistaken when he stated that I demanded the production of any transcript or document being contingent upon the agreement that such documents would be "admitted" or "admissible" in this case.

7. Mr. Hotopp makes no distinction between the "use" of a document in litigation versus the document's "admissibility". A document may have many uses—i.e. impeachment, without being directly 'admissible'.

8. Plaintiff at no time conditioned compliance with a document production request upon "paying for" depositions. Mr. Hotopp, rather than respond to my questions, simply issued a document demand.

9. Plaintiff's response to Defendant's Second Request For Production of Documents is NOT due for another two weeks. Defendant clearly has "his cart before his horse".

10. Plaintiff responded to Defendant's First Interrogatories and Request For Production of Documents on May 19, 2006. From May 19, 2006 to December 1, 2006, Defendant has not raised, contacted, complained, requested clarification, or requested supplementation of any discovery provided by plaintiff.

11. On November 1, 2006 I received from Mr. Hotopp Defendant's Second Interrogatories that were solely addressed to questions about plaintiff's medical insurance policy, payments under that policy and the like.

12. On November 6, 2006 I received a copy of a Subpeona Duces Tecum issued by Mr. Loeb under Mr. Hotopp's signature that was being served upon the Dancing Crab at Washington Harbour, L.P. for all the documents, pleadings, depositions transcripts, exhibits, etc.

13. On November 8, 2006, by e-mail sent at 9:53 AM, I contacted Mr. Hotopp about Defendant's new discovery and the service of the involved Subpeona.

14. Mr. Hotopp and I discussed these discovery issues at length and we reached an agreement that (1) he would notify me of the return of the service of the Subpeona, (2) plaintiff would respond to defendant's second interrogatories on November 30th, and (3) that plaintiff would provide a response to defendant's second request for production of documents on December 14, 2006.

15. The date of December 14, 2006 was established for plaintiff's responses to defendant's Second Request For Production of Documents due to the extensive

nature of the multiple requests and specifically because of defendant's demand that plaintiff produce copies of medical records from September 2000. These records are not in the possession and control of plaintiff but must be requested from Georgetown University Medical Center Hospital –if they even exist.

16. Mr. Hotopp seemed to understand the scope and nature of our agreement on November 8, 2006.

17. On November 8, 2006 we also agreed to review our files and materials and undertake to "update our respective discovery responses". I specifically confirmed that fact in a message forwarded to Mr. Hotopp at 11:48 AM.

18. On November 8, 2006 I requested Mr. Hotopp to advise me if there was "anything" which "I may have missed in this note or have misunderstood".

19. I received no response from Mr. Hotopp to that request.

20. On November 27, 2006 I spoke with Mr. Hotopp and he confirmed to me that the Dancing Crab had produced voluminous records, including deposition transcripts, medical records, invoices, expert documents, pleadings and responses to discovery.

21. On November 28, 2006 I forwarded a message to Mr. Hotopp again confirming our conversation and his advise regarding the receipt of documents, including the deposition transcript of James Sylvester.

22. Mr. Hotopp and I have been having ongoing conversations regarding defendant's disclosure of documents that were produced to defendant under a May 1, 2006 confidentiality agreement.

23. On November 28, 2006 I forwarded to Mr. Hotopp a message about the breach of the confidentiality agreement as well as confirming our conversation of November 27, 2006. I specifically noted to Mr. Hotopp as follows:

> "As I indicated to you; we can compare the documents produced by Mr. Wyrough with what I have and I have no problem with you coming to my office to review original documents and depositions".

24. I have had many discussions with Mr. Hotopp regarding Case No. 05CV1274 as well as Case No 05CV1278. I have explained to him on several occasions the distinction between negligence claims, intentional torts and the legal reasoning for the separate suits. Mr. Hotopp seemed to understand these concepts.

25. I have discussed with Mr. Hotopp; Mr. Wood's deposition, Mr. Oluwatosin Adeboyeku's deposition, Mr. Wood's police interview video tape, the comments and responses of various deponents, the contents of documents and records which were produced to him.

26. I specifically informed Mr. Hotopp that, based upon my recollection of the depositions, witnesses that were still employees of the Dancing Crab at Washington Harbour all denied have any direct knowledge of the assault and battery. Those individuals included (1) Gregory Casten, (2) David Pera, (3) Robert Puzio, (4) Jonathan Eagleton, (5) Dean A. Cibel.

27. I specifically informed Mr. Hotopp that the following witnesses also denied having any direct knowledge regarding the assault and battery on June 27, 2004— (1) Oluwatosin Adeboyeku, (2) Charles Moran, and (3) Natasha Jones.

28. On September 18, 2006 I specifically informed and Mr. Hotopp clearly understood, that Mr. Wood had provided a video tape statement which implicated

5

Olayinka Adeboyeku in the attack on plaintiff on June 27, 2004 which resulted in Mr. Adeboyeku's subsequent arrest and indictment for (1) aggravated assault (2) felony threats, and (3) obstruction of justice.

29. Mr. Hotopp seemed to concur in that the Metropolitan Police Officers, Mr. Syvester, and the witnesses to the assault and battery were the focus of any discovery in Case No. 05CV1274.

30. Mr. Hotopp has not requested any schedule of dates, nor issued any deposition notice for the deposition of any of the police officers, the witnesses to the assault, or any other lay witness that might have been identified.

Dated: 3 December 2006

Subscribed to and Sworn to under penalty of perjury of the laws of the United States.

_____
RICK A. RUDE, Esq. #244897