UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN W. RUDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-01274 (RCL) |
| ) | |
| OLAYINKA ADEBOYEKU, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
ADEBOYEKU'S MOTION TO EXTEND DISCOVERY DEADLINE**

Mr. Adeboyeku has asked this Court for an additional 120 days to complete discovery because, as explained in his initial memorandum, it is not possible to complete discovery by the current January 1, 2007 deadline. Plaintiff has now challenged this assertion, making two basic arguments: 1) that the undersigned counsel has acted as lead counsel in this matter and in that capacity has behaved in a lackadaisical manner with respect to discovery; and 2) that defense counsel has somehow impermissibly "piggy-backed" their discovery on the discovery of more diligent counsel. Plaintiff's arguments are rife with unsubstantiated allegations and misleading -- if not highly questionable -- statements. In fact, if taken to their logical conclusion, many of Plaintiff's unsupported arguments are thinly veiled accusations that defense counsel have acted unethically and committed a fraud on this Court. This is an astounding assertion, coming from the only lawyer in this case to have been sanctioned by the Court.[1] Moreover, such unsupported allegations are patently false, as the events to date make clear. It is apparent that Defendant has,

---

[1] The Court sanctioned Plaintiff's counsel for his refusal to provide his clients initial disclosures. May 15 Order (Docket No. 32). In a strongly worded opinion, the Court characterized Plaintiff's argument as "ridiculous" and "offensive" and warned Plaintiff that the way he argued raised "a serious question in the Court's mind as to whether plaintiff's counsel should be disqualified from further representation of the plaintiff in this matter." *Id.*

until very recently, been represented by lead counsel, Ms. Wendy Fischman, whose recent and unanticipated departure has caused delays in completing discovery. Moreover, Defendant has been diligent in proceeding with discovery, *inter alia*, issuing 27 separate document requests, 17 interrogatories, and a subpoena *duces tecum*. Defendant has indeed sought documents and deposition testimony obtained by opposing counsel in a case involving many of the same facts, a normal and completely permissible practice, but Defendant has in no way "piggy-backed" his discovery on opposing counsel's discovery.

## ARGUMENT

Local Rule 16.4 allows the Court to modify a discovery schedule "upon a showing of good cause." In decided whether a party has met this burden to modify the schedule, courts have "broad discretion in structuring discovery." *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 426 (D.C. Cir. 1991). Incredibly, the case on which Plaintiff principally relies, *Archer Daniels Midland Company v. Aon Risk Services Inc. of Minnesota*, 187 F.R.D. 578, 581-582 (D. Minn. 1999), is the best example of this discretion in operation and strongly supports the granting of Defendant's Motion.

In *Archer Daniels Midland*, defendant Aon was seeking "sweeping modifications" to discovery deadlines, after having previously sought two more limited extensions of time, one of which had been granted. Discovery had already lasted 14 months when Aon sought these "sweeping modifications." At oral argument on the motion to extend time, Aon's counsel "candidly admit[ed] that it ha[d] only recently given discovery its close attention" and that it "had not conducted discovery with the diligence that is required." *Archer Daniels Midland*, 187 F.R.D. at 580. Aon's counsel presented *no other reason* for failing to proceed with discovery in a diligent manner, a failure that the court described as a "dearth of good cause." *Id.*

2

Nevertheless, despite the absence of good cause, the court asked "whether Aon's enervated interest in discovery. . . should erase the fourteen months of nondiscovery which preceded Aon's apparent epiphany." Evidently, the court thought it should and granted a three month extension on top of the previously extended 14-month discovery period. In so deciding, the court explained that the extension would "serve the interests of justice and will not affront the purposes of Rule 1, Federal Rules of Civil Procedure." *Id*.

In sharp contrast to the defendant in *Archer Daniels Midland*, Defendant Adeboyeku *has* actually shown that his counsel has been diligent, but that nevertheless good cause exists to extend the discovery deadline. As discussed at length in his initial memorandum, he has diligently pursued discovery, issuing 27 separate document requests, 16 interrogatories, and a subpoena *duces tecum*, despite Plaintiff's uncooperativeness and antics aimed at delay and obfuscation. But due to the unexpected departure of lead counsel, the current discovery deadline is not sufficient to complete discovery. Also, unlike defendant in *Archer Daniels Midland*, Defendant Adeboyeku has not previously sought any extensions to the discovery deadline. Thus, the additional time Mr. Adeboyeku currently seeks is entirely justified and completely reasonable. In fact, the only behavior that has been unjustified, unreasonable -- and indeed irrational -- has been that of Plaintiff's counsel in flatly rejecting any consensual enlargement of time, in playing games with discovery, and most recently in implying that *pro bono* defense counsel somehow have behaved improperly or unethically.

Apparently unmindful of the wide latitude that courts have in fashioning discovery deadlines, as exemplified by his principal case, Plaintiff puts forward several erroneous arguments in an attempt to undermine Defendant's showing of good cause. As discussed below, the Court should reject each of these arguments.

3

## I. The Unexpected Departure of Defendant's Day-to-Day Counsel Warrants an Enlargement of Time.

Plaintiff first attempts to challenge the good cause showing by claiming that the departure of Ms. Wendy Fischman, Defendant's one-time lead counsel, did not impact Defendant's discovery plan because she was not, in fact, lead counsel. But as Plaintiff's counsel well knows, the *facts* are otherwise. At all times, both the Court and Plaintiff were well aware that Ms. Fischman was lead counsel in this case and that she had the day-to-day responsibility for this case. In fact, as the parties' Joint Report of Results of Rule 26(f) Conference (Docket No. 22) ("Joint Report") shows, Defendant asked this Court for a longer discovery period specifically because of "*lead defense counsel's maternity leave* during the months of June through October 2006." Joint Report, p. 2 (emphasis added). The Court agreed with Defendant, and in its March 1 Scheduling Order, entered a schedule which attempted to accommodate Ms. Fischman's maternity leave.

Plaintiff is also wrong when he asserts that "[t]he record shows Ms. Fischman 'left' this case as of May 1, 2006" and that "Mr. Hotopp had this case along with Mr. Loeb from May 1st forward." Opposition, p. 10-11. Plaintiff's only support for this is a document request signed by Mr. Kerry Hotopp on May 1. In reality, Ms. Fischman retained control of the case until she unexpectedly changed employment. Indeed, when Ms. Fischman left for her maternity leave on June 14, 2006, Mr. Hotopp sent a letter to Plaintiff, explaining to him that:

> Wendy Fischman, *our lead attorney in the above-captioned case*, is currently out on maternity leave. She does not expect to return to the office until late July [sic].[2] Until she returns to the office, please address all correspondence to me, so that any matters or

---

[2] The letter incorrectly identified Ms. Fischman's planned return date. Ms. Fischman had always planned on taking, and did in fact take, her full maternity leave in which she would return to work in late October, as proffered to the Court in the Joint Report.

4

>       issues can be addressed in the most expeditious and expedient
>       manner possible.

Letter to R. Rude, June 14, 2006 (attached hereto as Exhibit 1) (emphasis added).  Thus, Plaintiff's counsel knew that Ms. Fischman, Defendant's lead counsel, was out on maternity leave and would return in late October to resume her day-to-day responsibilities.

## II.     Plaintiff's Own Actions Have, in Part, Delayed this Case and Caused this Motion To Be Filed.

Plaintiff wholly overlooks his actions which, to a significant degree, delayed the resolution of this case and prompted Defendant's request for additional time to complete discovery.  Plaintiff's tactics started literally with the filing of this case, in which Plaintiff waited until the very last day under his reading of the statute of limitations to file his action in order to foreclose counterclaims by Defendant.  He then obtained a default against Defendant, an unsophisticated and young student of little means.  Motion for Entry of Default (Docket No. 9). When Defendant eventually obtained *pro bono* counsel, Plaintiff adamantly refused to agree to waive the entry of default and consent to additional time to respond.  Although Plaintiff had agreed that the entry of default be vacated against Defendant's former employer in the *Dancing Crab* case, Plaintiff refused to provide the same courtesy to Defendant, although he admitted that he regularly "extends all professional courtesies," a practice he's done for over thirty years.  *See* Defendant's Motion to Vacate (Docket No. 11), p. 2.  When asked why he would not extend the courtesy to Mr. Adeboyeku, Plaintiff's counsel responded that "this [Defendant] is not someone I'm included to extend courtesies to."  *Id.*

When the default was vacated over his strenuous objections, Plaintiff's counsel refused to go along with a schedule that accommodated lead counsel's planned maternity leave.  This forced Defendant to submit a competing schedule, which the Court adopted.

5

Plaintiff's counsel next further delayed matters by refusing to comply with his initial disclosure obligations, despite the Court's clear order that "Initial disclosures shall be due fifteen days after entry of this Scheduling Order." Scheduling Order, March 1, 2006 (Docket No. 23). This required Defendant to file yet another motion, on which Defendant again prevailed and which prompted the Court to sanction Plaintiff's counsel. Plaintiff then filed a motion for reconsideration, impermissibly rearguing the exact points on which he lost the first time around.[3] All of this unnecessary motion practice has kept defense counsel and the Court busy, adding to the cost of, and delays in, this litigation and fostering continued ill will between counsel.

Moreover, in addition to causing in these delays, Plaintiff's counsel has also taken advantage of Defendant's courtesies extended to him. For instance, because Defendant refused to produce copies of deposition transcripts taken in the *Dancing Crab* case except subject to impermissible conditions, Defendant was forced to serve a second set of document requests seeking those transcripts. Shortly after being served with that document request, Plaintiff sought a two-week extension from Defendant. Extending a professional courtesy to Plaintiff, Defendant agreed to a two-week extension, to December 14, without realizing that Plaintiff would not extend the same courtesy to him and agree to the relief requested in Defendant's present Motion. Then, after having secured December 14 as the date on which he would provide the deposition transcripts he had taken in the *Dancing Crab* matter, Plaintiff scheduled the deposition of Mr. Sylvester -- whose transcript in the *Dancing Crab* case Plaintiff had a continuing obligation to

---

[3] That motion is fully briefed and is awaiting decision by the Court.

produce[4] and was specifically requested under Defendant's second set of document requests -- three days *before* he was scheduled to hand over Mr. Sylvester's prior testimony.

### III. Defendant Diligently Engaged in Discovery and Properly Sought Documents from the *Dancing Crab* Case.

Plaintiff's remaining argument, that Defendant has relied wholly on some sort of improper discovery strategy which Plaintiff's counsel labels "piggy-back discovery" -- *i.e.*, planning discovery in this case based on the discovery in the *Dancing Crab* litigation -- is as fallacious as are his other arguments.  While Defendant has indeed sought documents and deposition transcripts from the *Dancing Crab* case, Plaintiff is wrong to say that Defendant's discovery relied exclusively, or even in large part, on such a strategy.  Plaintiff is similarly wrong in implying that seeking documents from a related case is nefarious or improper.

First, an examination of Defendant's discovery clearly shows that Defendant has not adopted a "piggy-back discovery" strategy.  Indeed, Defendant has been actively involved in the discovery process since the Court's March 1 Scheduling Order.  Defendant Adeboyeku provided his initial disclosures on March 16, precisely 15 days after the scheduling order.  Plaintiff refused to provide his initial disclosures, requiring Defendant Adeboyeku to commit not insignificant time in March preparing and filing a Motion to Compel.  This Court granted Defendant's motion and in doing so, took to task Plaintiff's attorney for his "ridiculous" and "offensive" refusal to provide the initial disclosures.  On April 19, 2006, Defendant issued to Plaintiff 15 document requests and 11 interrogatories, which resulted in the production of several hundred pages of

---

[4] As more fully explained in Defendant's Opposition to Plaintiff's Motion for Telephone Deposition (Docket No. 41), Plaintiff has been under a continuing obligation to produce these deposition transcripts pursuant to Defendant's First Request for Production of Documents.  That request sought all documents related to "the facts or circumstances alleged in the Complaint" or to "Mr. Adeboyeku or his co-defendant Anthony Wood in any way."  Plaintiff has utterly ignored this obligation.

material. On May 19, Defendant Adeboyeku drafted and entered into a confidentiality agreement with Plaintiff, which resulted in Plaintiff producing more than 200 pages of medical information concerning Plaintiff's alleged injuries. On June 19, Defendant provided documents and responses to Plaintiff's document request and interrogatories, including a detailed, five-page recitation of the events giving rise to this case.

By this time, lead counsel was on maternity leave. Thus, except for a September 13 answer to Plaintiff's Request for Admissions, very little discovery occurred. Although Ms. Fischman, who was scheduled to return in late October, unexpectedly accepted new employment shortly after her return, Defendant nevertheless continued with his discovery. On October 31, he issued 13 more document requests and 6 additional interrogatories to Plaintiff, forced in part to do so because of Plaintiff's refusal to produce the documents informally. This time, several (but not all) of the requests sought various documents from the *Dancing Crab* discovery. Several days later, Defendant issued a subpoena *duces tecum* to his former employer, the Dancing Crab, seeking 16 separate categories of documents. Again, some (but not all) of the categories sought various documents from the *Dancing Crab* case. The subpoena resulted in production of over a thousand pages of documents.

Thus, it is apparent that Defendant Adeboyeku has been diligent in the discovery process which began shortly after entry of the Court's scheduling order and he continued to be active as his counsel's schedule permitted. To claim that Defendant Adeboyeku "intentionally wait[ed] to engage in discovery," and has improperly "piggy-backed" his discovery in this case on discovery in the *Dancing Crab* matter, is simply false -- and Plaintiff's counsel knows that.

Second, Plaintiff implies that it is somehow wrong to cast a wide net in discovery and to seek discovery from the *Dancing Crab* litigation, a case involving many of the same facts. This

8

is absurd. Defense counsel would be remiss if it did *not* seek discovery taken in the *Dancing Crab* case, since the two cases relate to the same events and involve some of the same witnesses. Because of this close connection, the facts discovered in the *Dancing Crab* case may have substantial bearing on the facts in this case and it is therefore proper to seek such discovery. Moreover, Defendant is entitled to prior sworn testimony of witnesses common to both cases. Defendant's desire to seek *Dancing Crab* discovery is a standard discovery practice, not the nefarious tactic that Plaintiff supposes it to be.

Indeed, Plaintiff chose to file two separate lawsuits related to some of the same events and he had to know that the parties would be interested in discovery across the cases. In fact, Defendant in the *Dancing Crab* case moved to consolidate the two cases, partly for this very reason. Motion to Consolidate (*Dancing Crab* Docket No. 14). But Plaintiff opposed that motion and prevailed. Order Denying Motion to Consolidation (*Dancing Crab* Docket No. 16). Nevertheless, Plaintiff still could have pursued a coordinated discovery plan in the two cases, but again chose not to and made no effort whatsoever to avoid duplicative discovery. Plaintiff, therefore, should not be surprised that Defendant would want to pursue cross-case discovery himself.

Further, and perhaps most troubling, at the same time Plaintiff has worked to keep the cases entirely separate, he has attempted to use the *Dancing Crab* discovery for his benefit in this case. Plaintiff "offered" to let Mr. Adeboyeku inspect certain deposition transcripts taken in the *Dancing Crab* case. When Defendant Adeboyeku attempted to take Defendant up on that "offer," Plaintiff required Defendant to agree that the transcripts could be used in this case, despite the fact that Defendant's counsel was not even present during the examination and did not even have notice of the depositions. Moreover, Plaintiff demanded that Defendant share the

*full costs* of the depositions.  If he wanted to use the *Dancing Crab* depositions in this case, Plaintiff could have attempted to include Defendant Adeboyeku and his counsel in that discovery process.  But Plaintiff declined to do so, instead repeatedly insisting that he intends to retake all discovery in both cases.  *See, e.g.,* Opposition Ex. 10, p 1.  Plaintiff cannot have his cake and eat it too, by keeping the cases separate while demanding to use the *Dancing Crab* discovery here.

      For these reasons, Plaintiff's allegations of some sort of improper "piggy-backing" are flat wrong and disingenuous.

**IV.  Plaintiff's Opposition is Replete With Misstatements and Unsubstantiated Accusations.**

      In an attempt to paint Defendant as being unreasonable, Plaintiff has filled his opposition with misleading statements and unsubstantiated accusations.  Most obvious is Plaintiff's repeated assertion that "defendant has had 13 months to conduct discovery in this proceeding." Opposition, p. 2.  In reality, the Court's Scheduling Order was issued on March 1, 2006, providing the parties with 9 -- not 13 -- months of discovery so far.

      Plaintiff also charges Defendant with undue delay, for allegedly waiting to object to Plaintiff's expert witness reports until "the virtual completion of discovery," despite having the reports for "almost 6 months."  Opposition, p. 13.  Here again, Plaintiff's assertions do not match up with the facts.  While Plaintiff did provide Defendant on June 7 with certain reports that would eventually become his expert report, Plaintiff specifically stated that the reports were *not* his expert reports, instead indicating that the expert reports would be provided "as required by the Court's Scheduling Order."  Plaintiff's Answer's to Defendant's First Interrogatories (attached hereto as Exhibit 2), p. 9.  Plaintiff in fact only designated his experts and produced their reports on October 27, 2006.  *See* Plaintiff's Designation of Expert Witnesses (attached hereto as Exhibit 3).  Defendant timely objected shortly thereafter.  Plaintiff has also accused

Defendant of demanding "to review and photocopy for free thousands of pages of material." Opposition at 13. Defendant has never refused to pay the cost of photocopying the documents he has requested; what he has refused to do is to share the entire costs of Plaintiff's depositions in the *Dancing Crab* litigation.

Plaintiff also repeatedly claims that "defendant is seeking to take 13 depositions of unidentified persons," which is 3 more than the Scheduling Order allows. Opposition, p. 12-13. This completely mischaracterizes Defendant's position. In his initial memorandum in support of his motion, Defendant explained that "the parties" were seeking to depose "roughly a dozen individuals." Memorandum in Support of Motion to Extend Discovery Deadline, p. 5. This included two individuals *Plaintiff seeks to depose*, Mr. Jay Sylvester and Mr. Michael Gillman. *Id*. Defendant then pointed out that he then explained that Defendant, on the other hand, "has a list of seven witnesses *he would like to depose*" and that "Plaintiff's four putative 'expert' witnesses. . . add substantially to the number of people Mr. Adeboyeku has to depose." *Id.* (emphasis added). Thus, Defendant had perhaps 7 fact witnesses he wished to consider deposing, not 13. Moreover, the entire tenor of Defendant's arguments focused on the fact that Defendant could not fully determine whom to depose until Plaintiff provided all the documents sought by Defendant in discovery.

**V.    A Word About the Prior Statements Made By Defendant Anthony Wood.**

Plaintiff makes much ado about the Metropolitan Police Department's interview of Anthony Wood, claiming that Defendant "was apparently banking upon the fact that plaintiff would not learn of nor be able to obtain a copy of the WOOD videotape." Opposition, p. 3. Plaintiff moreover claims that Defendant withheld the video. *Id*. But the fact is that Defendant does not have -- *and never did have possession of the video* -- nor did he have possession of the interview transcript. In fact, Defendant had to obtain a copy of the transcript through the

11

discovery process from Plaintiff himself. And although Plaintiff was required to provide Defendant with copies of both the video and the transcript, Plaintiff has so far only provided a copy of the transcript.

Moreover, although Plaintiff freely characterizes the unsworn transcript of the Wood interview, he neglects to attach it to his brief. Defendant has attached the interview transcript to this reply, and encourages the Court to examine it. *See* Wood Interview Transcript (attached hereto as Exhibit 4). Although the transcript is not entirely clear and contains moments where the discussion is "unintelligible," it actually supports Defendant's case. It describes in detail how Plaintiff Jonathan Rude, *a 280-pound former Georgetown football player*, accosted Mr. Adeboyeku. It details that Plaintiff's friend and football teammate grabbed Mr. Adeboyeku from behind and held him while Plaintiff repeatedly punched Mr. Adeboyeku. It then describes how Mr. Adeboyeku and Plaintiff became involved in a brief but furious exchange of blows. The transcript is also important for what it does not reflect. It does *not* show that Defendant started the fight. It does *not* show that Defendant attacked Plaintiff while being held down by Wood. It does *not* show that Plaintiff was kicked in the head. It does *not* show that Plaintiff ever attempted to avoid or end his confrontation with Mr. Adeboyeku. And it does *not* show that Plaintiff ever cried out for help or that he attempted to flee. In short, it *does not show* that Plaintiff ever took any of the steps that a person who supposedly was being assaulted would take to avoid the altercation and escape injury.

The deposition of Mr. Wood taken by Plaintiff's counsel in the *Dancing Crab* litigation just this past summer is even more clear on the events in question. *See* Excerpt of Wood Deposition (attached hereto as Exhibit 5 ), pp. 78, line 4 to pp. 82, line 20. In just four pages, Mr. Wood makes clear that Mr. Rude and his friend, also a former Georgetown football player,

were the aggressors; that Rude's friend tried to hold Mr. Adeboyeku, who was attacked by Plaintiff; that when Mr. Adeboyeku broke free, he and Plaintiff exchanged blows; that Plaintiff attempted to pull down Defendant's shorts, but was unsuccessful and ended up on the ground with Defendant on top of him; and that Plaintiff immediately jumped up when Mr. Wood pulled Mr. Adeboyeku off of him.  Mr. Wood further testified that Mr. Adeboyeku never kicked Plaintiff.

## **CONCLUSION**

For the reasons set forth above and in his initial memorandum, Mr. Adeboyeku respectfully requests that the Court extend the time permitted for discovery by 120 days, until May 1, 2007, and to modify the dates set forth in the Scheduling Order accordingly.

DATED:  December 6, 2006

/s/ Daniel E. Loeb
Daniel E. Loeb (DC Bar # 386098)
Douglas W. Baruch (DC Bar # 414354)
Kerry Hotopp (DC Bar # 483747)
Fried, Frank, Harris, Shriver & Jacobson, LLP
1001 Pennsylvania Ave., NW, Suite 800
Washington, DC  20004
(202) 639-7000
(202) 639-7003, Fax

*Attorneys for Olayinka Adeboyeku*