UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JONATHAN W. RUDE,** | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action No. 05-01274 (RCL) |
| **OLAYINKA ADEBOYEKU,** *et al.*, | ) |
| **Defendants.** | ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
ADEBOYEKU'S MOTION TO STRIKE "EXPERT" REPORTS**

Plaintiff has produced four expert "reports" that are so inadequate under the applicable federal rule, that he has now as much as admitted that at least three of the reports -- from Drs. Lee, Geist, and Shaffer -- are non-compliant. Instead, Plaintiff has taken a new tack -- that he never was required to produce these reports in the first instance, because the doctors who allegedly wrote them were "treating physicians," exempt from the expert reporting requirement of Rule 26(a)(2)(B). But even a passing examination of each of the reports confirms that none of the doctors actually qualify for this limited exemption. Either the doctors were specifically retained to testify in anticipation of this litigation or they will provide technical and scientific testimony on matters that take them out from under any treating physician exemption. In contrast to these three reports, Plaintiff essentially acknowledges that Dr. Wall does not qualify for the treating physician exemption; instead, he argues that his report provides all the information that the Rule requires. Plaintiff might be right, if the Rule did not require expert witnesses to reference and discuss the documents and information they relied upon in drafting their reports or to sign their reports.

If this Court chooses not to strike Plaintiff's expert reports, or should it afford Plaintiff an opportunity to serve compliant reports, it should then rule that the requirement under Rule 26(b)(4)(C) that Defendant pay to depose Plaintiff's purported experts would act as a manifest injustice, since Defendant cannot afford to pay Plaintiff's expert's fees and would therefore be barred from obtaining discovery with respect to the contents of their reports.  Plaintiff has attempted to subvert this position by innuendo and conjecture, alleging that Defendant can certainly afford to pay the expert fees; but Plaintiff has failed to provide a single shred of factual evidence calling into question Defendant's financial status.  Consequently, the Court should allow Defendant to seek discovery against Plaintiff's experts without payment.[1]

## ARGUMENT

**I.     Plaintiff Has Failed to Submit Compliant Expert Reports for His Designated Expert Witnesses, None of Whom Fall Under the Treating Physician Exemption.**

Fed. R. Civ. P. 26(a)(2)(B) establishes clear and unambiguous requirements for the contents of expert reports.  Plaintiff now has essentially conceded that the "reports" of Drs. Juliet Lee, Craig Geist, and Benjamin Shaffer fall well short of the requirements under Rule 26.  For these three reports, Plaintiff does not even bother to argue that they come anywhere close to meeting the strictures of the rule, because clearly they do not.  Instead, Plaintiff now claims that he need not comply with Rule 26(a)(2)(B), because these individuals somehow are exempted from the expert report requirements as "treating physicians."  Thus, although Plaintiff has *specifically* designated each of these doctors as his "expert witnesses" and at first purported to produce their reports "*as required pursuant to Federal Rule of Civil Procedure 26(a)(2)(B),*" he

---

[1] Defendant believes that four expert witnesses in a case involving a physical altercation is excessive, cumulative, and duplicative.  The fact that Plaintiff has chosen to designate four experts simply acts as a further burden on Defendant.

2

now apparently argues that these letters were not expert reports at all and that he was mistaken in producing them pursuant to the Rule in the first place.[2] *See* Plaintiff's Designation of Expert Witnesses (attached hereto as Exhibit 2), p.1 (emphasis added). Defendant has relied on Plaintiff's production and asked the Court to strike these reports because they do not even come close to meeting the rule's requirements. It is telling indeed that after having produced the reports in purported compliance with the applicable rule and when challenged by Defendant, Plaintiff attempts this "bait and switch." He then goes even further, faulting Defendant for filing a motion he had no choice but to file.

Importantly, while each of these doctors allegedly attended to Plaintiff's injuries, none of them fall under any sort of treating physician exemption. This exemption is a limited one that applies only to doctors who "acquired the opinions that are the subject of the testimony directly through treatment of the Plaintiff" -- the so-called "care and treatment" testimony. *Anthony v. Washington Metro. Area Transit Auth.*, 2005 U.S. Dist. LEXIS 41560, *6 (D.D.C. 2005) (Kay, M.J.). However, the exemption ordinarily does not apply if the doctor's testimony goes beyond this narrow area, and the "opinions were developed close in time to the litigation, at the direction of counsel, or were based in part on reports and treatments provided by other physicians." *Id.* at *7, citing *Riddick v. Washington Hospital Center*, 183 F.R.D. 327, 330-331 (D.D.C. 1998) (Friedman, J.); *see also Kirkham v. Societe Air France*, 236 F.R.D. 9, 13 (D.D.C. 2006) (Bates,

---

[2] In footnote 1 of his Opposition, Plaintiff accuses Defendant of violating the parties' confidentiality agreement by including the expert reports in his public filing. This accusation is utterly without merit. Along with some medical records, Plaintiff originally provided a copy of the doctors' letters on June 7 and designated them "confidential" by way of cover letter. Four and a half months later, Plaintiff provided a second copy of the letters, explaining that they were his "expert witness reports." These were *not* designated confidential and nothing indicated that Plaintiff wished to keep these documents confidential. Therefore, Defendant properly treated Plaintiff's second set of reports as non-confidential. *See* Letter to Mr. Rude, November 28, 2006 (attached hereto as Exhibit 1), p. 2.

J.) ("a treating physician who bases his opinion on the medical records of another physician. . . is required to prepare an expert report").[3]

Moreover, "without an expert report, a treating physician may not testify as to issues of causation, foreseeability, prognosis or permanency." *Anthony*, 2005 U.S. Dist. LEXIS *8, citing *Sowell v. Burlington*, 2004 U.S. Dist. LEXIS 24738, *3 (N.D. Ill. 2004). As the courts in *Anthony* and *Sowell* explain, the reason for this is simple: such testimony requires the physician to testify on opinions derived from "scientific, technical, or other specialized knowledge" outside the purview of jurors. *See* Fed. R. Evid. 702. In fact, a treating physician's opinion on causation, foreseeability, prognosis or permanency necessarily relies on complexities that typically only other experts can understand. Therefore, these opinions should be tested through the normal reporting requirement. Thus, this type of opinion testimony is substantially different from, and in fact goes beyond, the permissible "care and treatment" testimony for treating physicians.

**A.     Drs. Lee, Shaffer, and Geist**

None of Plaintiff's doctors fall within the narrow bounds of the treating physician exemption. Beginning with Dr. Lee, her testimony presumably would try to explain "why I thought the patient had lost consciousness," which is a causation issue that falls outside the exemption. Motion to Strike (Docket No. 40), Exhibit 1, p. 1. Dr. Lee's statement goes on to

---

[3] In *Kirkham*, the court examined five factors that were relevant into the inquiry of whether a treating physician was exempted from the reporting requirement: 1) whether the physician is receiving compensation for time spent preparing for and providing testimony; 2) the date at which the physician began treating plaintiff; 3) whether the physician has prepared an opinion at the request of counsel or in connection with the litigation; 4) whether the physician reviewed the medical records of another care provider or information supplied by counsel in preparing his opinion; 5) whether the physician's opinion is based solely on information learned from the actual treatment and care of plaintiff. Those factors applied here -- to the extent Plaintiff has provided the necessary information to make that application -- again suggest that Plaintiff's expert witnesses do *not* meet the requirements of the treating physician exemption.

explain that her opinion about the loss of consciousness "would rely on witnesses, the report of the EMS workers, my residents' and my physical examination." *Id.* She further explains that she may also rely on a "tertiary survey [that] is performed the morning after admission for all trauma patients." *Id.* Dr. Lee's opinion is therefore based on the reports and treatments of other doctors, medical personal, and other third parties. This too precludes application of the treating physician exemption.

      Dr. Shaffer's report similarly does not qualify for the exemption, since it contains significant statements about causation and prognosis. Indeed, in his report, Dr. Shaffer concludes that "there is no question in my mind that [Plaintiff's] recurrent labral pathology and chondral pathology were a consequence of this traumatic event and leading to recurrent instability." Motion to Strike (Docket No. 40), Exhibit 2, p. 2, ¶ 3. Dr. Shaffer also provides a full paragraph on "[p]rognosis for recovery and permanent injuries." *Id.* at 2, ¶ 5. Further removing the report from the realm of the exemption, Dr. Shaffer obviously formed, and is willing to form, opinions about Plaintiff after Plaintiff's treatment has ended. For instance, the report states that "I could give you a better sense about permanent impairment if I were to re-evaluate [Plaintiff]." *Id.* at 2, ¶ 5. This suggests that Dr. Shaffer's opinions were at the direction of counsel and in anticipation of litigation, which would further undermine the applicability of the exemption.

      The third report, from Dr. Geist, also does not qualify under the treating physician exemption. Dr. Geist's report appears to rely substantially on the records and opinions of other doctors. In fact, Dr. Geist states that he "saw [Plaintiff] for the first time on 6/30/04," after having already recited and drawn conclusions on Plaintiff's pre-June 30th condition in the

preceding three paragraphs.  Motion to Strike (Docket No. 40), Exhibit 4, p. 1.  Also, like the other reports, Dr. Geist's report discusses the Plaintiff's prognosis.  *Id.* at 2.

**B.    Dr. Wall**

While belatedly claiming that three of the reports fall under the treating physician exemption, Plaintiff essentially admits that the remaining report, from Dr. Wall, does not fall within the exemption.  Instead, Plaintiff claims the report "provides the informational notice required by the Court's Rule."  Opposition, p. 10-11.  Plaintiff's approach to the Wall report is understandable, because it is clear that Dr. Wall's opinions were formed in anticipation of litigation.  For instance, Dr. Wall's letter states that he formed his opinion "[a]fter review of the medical records."  Motion to Strike (Docket No. 40), Exhibit 3, p. 3.  Dr. Wall's letter also discusses such items as Plaintiff's supposed position when he was injured  ("the angle of injury would suggest that Mr. Rude was not standing" *Id.* at 4) and what types of blows might allegedly have caused Plaintiff's injuries ("Mr. Rude's injury would be consistent with a more narrow focus of force" *Id.* at 5), again indicating that Dr. Wall formed his opinions for this litigation.  The letter also clearly discusses causation and Plaintiff's prognosis.  *See, e.g.,* pp. 5, 8.  Thus, clearly, the exemption does not apply to Dr. Wall's report.

Instead, Plaintiff argues that Dr. Wall's report is in full compliance with Rule 26(a)(2)(B).  While Plaintiff now has belatedly provided Dr. Wall's fee schedule, Dr. Wall's report still does not meet the requirements of Rule 26(a)(2)(B).  The letter remains unsigned, so it is impossible to tell whether this is indeed the Doctor's report at all.  More importantly, although the report repeatedly mentions various records -- *e.g.*, "records. . . have been reviewed" (*Id.* at 8), "the relevant studies were reviewed," (*Id.* at 2) and "[a]fter review of the medical records," (*Id.* at 3) -- it fails to identify what these records are or what information in those

6

records he relied on and why.[4]  No background information is included concerning the sorts of documents Dr. Wall reviewed before writing his report and he fails to indicate whether he plans to use any exhibits during trial.  Further, the report is replete with various improper legal and other conclusions clearly outside the bounds of Dr. Wall's knowledge and expertise, stating in a conclusory manner that Plaintiff was "assaulted," "attacked form behind by two individuals," and sustained "blows and kicks to the body and the face." *Id.* at 1.  Dr. Wall's report therefore is wholly insufficient and improper under the Rules to qualify as an expert report and should be stricken.

## II.    It Would Constitute Manifest Injustice For Defendant To Be Required To Pay To Depose Plaintiff's Expert Witnesses.

In challenging Defendant's claim that he is unable to pay to depose Plaintiff's expert witnesses, Plaintiff offers innuendo and conjecture, but no facts.  Plaintiff unabashedly tells this Court "[i]t is the belief of plaintiff that defendant's counsel is and has been financing defendant's litigation. . ." Opposition, p. 11.  Of course, Defendant has no "litigation" to finance.  Rather, he is defending himself -- for a second time -- against Plaintiff's efforts to turn an altercation he initiated into an assault for which he seeks $5 million in damages from a student with no resources.  When he first made an appearance in this case, Mr. Adeboyeku submitted a declaration in which he outlined his financial situation.[5]  *See* Motion to Vacate Entry of Default (Docket No. 11), Declaration of Olayinka Adeboyeku.  That declaration detailed that Defendant Adeboyeku is an unemployed student.  *Id., ¶* 4.  Other than a prior athletic scholarship, he has no

---

[4] Moreover, Dr. Wall's Invoice & Fee Schedule indicates that he spent 7 hours reviewing records and preparing his report.  Opposition, Declaration of Counsel, p. 6.  But again, Dr. Wall's report fails to identify these records.

[5] Defendant will of course provide additional information about his financial condition should the Court so direct.

significant financial resources. *Id.* Moreover, Mr. Adeboyeku's parents, who work as a cab driver and a nanny, are not in a situation to assist him financially. *Id.* While he is married, his wife similarly does not have financial resources to assist him. *Id.* Defendant's lack of financial resources is apparent in his counsel. In the prior, criminal case, Defendant was represented by a public defender, because he could not afford to pay an attorney of his own choosing. *Id.,* ¶ 3. In this matter, Mr. Adeboyeku is represented *pro bono*. Beyond the normal *pro bono* representation provided by Defendant's counsel, no one, including counsel or family friends, is assisting him with the costs of this litigation.

     As described more fully in his initial memorandum, it would be virtually impossible for Mr. Adeboyeku, with his limited resources, to shoulder the financial burden he would face if he had to pay to depose Plaintiff's experts. Indeed, Dr. Shaffer charges $2,000 for the first hour of depositions and $1,000 for each additional hour, with preparation fees adding an additional $500 for the first hour and another $250 for every additional hour. Opposition, Declaration of Counsel, p. 5. Dr. Wall charges $2,500 for the first hour and $400 for each subsequent hour, plus presumably $400 per hour for preparation. *Id.* at 6. Because Plaintiff has not bothered to provide either Defendant or this Court with the fees for the remaining two of his designated expert witnesses, there is no way of knowing how much these other expert witnesses will charge. In any event, if Defendant wished to depose just these two expert witnesses for a modest four hours, it would end up costing him at least $8,700 and more likely $11,550 or more.[6] Such amounts simply are beyond Defendant's financial reach.

---

[6] This later amount assumes that a 4-hour deposition would require the same amount of preparation.

In attempting to undermine Defendant's claim of manifest injustice, Plaintiff confuses the issue by claiming that the analysis of manifest injustice requires "an evaluation of the seven factor test for analysis of expert witness fees," citing to *Fisher-Price, Inc. v. Safety 1st, Inc.,* 217 F.R.D. 329, 330-331 (D. Del. 2003). Opposition, p. 12. But *Fisher-Price*'s "seven factor test," assuming it even applies in this District, is aimed at determining the reasonableness of expert witness fees. That portion of the decision is wholly inapplicable here, however, since Defendant is not arguing the reasonableness of the fees of Plaintiff's individual expert witnesses. Rather, Defendant is arguing that regardless of the amount of the Doctors' fees, he is simply unable to afford to depose them. Moreover, four experts in a case of this nature seems excessive, cumulative, and duplicative. And while Defendant is financially barred from deposing each individual expert, it is even more true because of their numbers.

Plaintiff further argues that Defendant must have substantial resources, since he seeks to depose various fact witnesses around the country. But deposing fact witnesses is far different than deposing expert witnesses, whose fees must be paid by the deposing party. Moreover, because Plaintiff has not complied with his discovery obligations, Defendant has not yet determined how many depositions he actually will take, where he will take them, and whether he will attempt to do so without travel. Certainly, the cost of taking these depositions will affect that calculation.

Lastly, Plaintiff argues that the Court must take into account the financial situation of both parties in determining whether the application of Rule 26(b)(4)(B) would create a manifest injustice. This is not so. As the Advisory Committee explained, manifest injustice allows a court to "protect, when necessary and appropriate, the interests of an indigent party." Fed. R. Civ. P. 26, 1970 Advisory Committee Notes. Following the Advisory Committee's suggestion,

the court in *Reed v. Binder*, 165 F.R.D. 424, 427-28 (D.N.J. 1996) looked exclusively to whether plaintiffs were too impoverished to pay the fees charged by defendant's experts. Defendant Adeboyeku has shown that he meets this requirement.

But even if Plaintiff is correct in asserting that the Court should take into account the financial situation of both parties, Plaintiff has provided no evidence that he is similarly situated as Defendant. Indeed, although Plaintiff states he is "a recent college graduate like defendant [who] has no greater resources," Plaintiff has included no affidavit discussing his employment or financial status. In fact, Plaintiff appears to be well funded. Plaintiff's counsel's own declaration shows that Plaintiff has paid $2,800 for the report of Dr. Wall. Presumably, a similar amount has been paid for the other reports. It is simply unbelievable that Plaintiff is "has no greater resources" than Defendant and yet has paid for these expert reports and has, in any event, made no mention of his employment status.

## **CONCLUSION**

For the reasons set forth above and in his initial memorandum, Defendant Adeboyeku respectfully requests that the Court strike the "expert" reports of Drs. Juliet Lee, Benjamin S. Shaffer, Stephen J. Wall, and Craig E. Geist and bar those four individuals from testifying at the trial in this case, or in the alternative, order that reports complaint with Rule 26(a)(2)(B) be produced and thereafter to allow Defendant Adeboyeku to depose these experts without payment.

DATED: December 6, 2006                /s/ Daniel E. Loeb
                                                     Daniel E. Loeb (DC Bar # 386098)
                                                     Douglas W. Baruch (DC Bar # 414354)
                                                     Kerry Hotopp (DC Bar # 483747)
                                                     Fried, Frank, Harris, Shriver & Jacobson, LLP
                                                     1001 Pennsylvania Ave., NW, Suite 800
                                                     Washington, DC  20004
                                                     (202) 639-7000
                                                     (202) 639-7003, Fax

                                                     *Attorneys for Olayinka Adeboyeku*

282355