UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

    Plaintiff,

v.       Case No. 05cv1274(RCL)

OLAYINKA ADEBOYEKU,
A/k/a "YINKA" And
ANTHONY B. WOOD,
A/k/a WILLIE JOYNER, JR.,

    Defendants.

PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff, by and through his counsel, and submits this Memorandum of Points and Authorities In Support of Plaintiff's Motion For Summary Judgment as to defendant Anthony B. Wood.

Introduction

Plaintiff is seeking summary judgment as to defendant Anthony B. Wood as the evidence adduced more than supports the averments of the complaint. The complaint filed June 24, 2005 presented a claim for common law assault, battery, intentional infliction of emotional distress and gross and wanton behavior in violation of the laws of the District of Columbia. Plaintiff seeks compensatory and the imposition of punitive damages. Plaintiff, a student at Georgetown University at the time of the underlying incident, received serious injuries after being attacked by the defendants, Anthony B. Wood ("Wood") and Olayinka Adeboyeku ("Yinka" or "Adeboyeku").

1

Wood and Adeboyeku were employees of The Dancing Crab at Washington Harbour, L.P. t/a Tony & Joe's Seafood Place located at the Washington Harbour Complex, 3000 K Street, N.W., Washington, D.C. at the time of the incident.

## STATEMENT OF FACTS

Plaintiff has submitted herewith a Statement of Material Facts in Support of Motion For Partial Summary Judgment. Such facts are incorporated herein as if set forth in full. Plaintiff has attached to the Statement of Material Facts documents, deposition excerpts and exhibits, pleadings and relevant transcript excerpts that pertain to the events of June 27, 2004.[1]

The attachments are designated numbers 1 through 8. References in this Memorandum, where necessary, are to the points as identified in the Material Statement of Facts (identified hereinafter as "MSF ___").

On June 27, 2004 at approximately 1:45 A.M. plaintiff entered the main restaurant and bar area of the Dancing Crab (MSF 5) Plaintiff was as the Dancing Crab to provide Michael Gillman a ride home (MFS 5). The Dancing Crab conducted business as a restaurant, bar and dining establishment at the Washington Harbour Complex. (MFS 1). The Complex is located at 3000-3050 K Street, N.W., Washington, D.C. (MFS 1). Olayinka Adeboyeku and Anthony B. Wood were employees of the Dancing Crab on June 27, 2004 (MFS 2,3,4). Wood has an extensive criminal record including serious felonies which was generally known to the managers of the Dancing Crab. Wood

---

[1] Plaintiff has attached the documents and materials listed on Plaintiff's Statement of Material Facts. Attachment No. 1 is Plaintiff's First Request For Admissions to Defendant Anthony B. Wood. Defendant's Responses were due on September 25, 2006, defendant having obtained an extension of time in which to answer. Defendant Wood did not respond and pursuant to Rule 36(b), Fed.R.Civ.Proc. 36(b), the facts set forth in Attachment No. 1 are deemed "conclusively established" in regard to Wood.

observed Plaintiff standing in the main inside bar are of Tony & Joe's Seafood Place. (MFS 6).

Officers Robert Owen and Glenn Luckett were present in the main bar area of the Dancing Crab along with plaintiff while Yinka, Wood and Yinka's brother Oluwatosin Adeboyeku stood outside the main entrance/exit to the Dancing Crab. (MFS 10). Yinka was acting in a very angry manner, banging and pulling on the doors saying that he was going to fight plaintiff. (MFS 11). Officers Robert Owen and Glenn Luckett were off-duty and worked for the Washington Harbour Complex providing security services to the Complex.

Robert Puzio, a manager for the Dancing Crab, approached James Sylvester and asked Sylvester to ask plaintiff to leave as Yinka was very angry with plaintiff (MFS 7). Yinka was upset and furious that Plaintiff was at Tony & Joe's Seafood Place. (MFS 11). Wood approached Officers Owen and Luckett and stated there was going to be a 'fight' between two bouncers meaning Plaintiff and Yinka. (MFS 12). Wood requested that Officers Owen and Luckett "look the other way" while the proposed fight occurred. (MFS 13). Plaintiff had a conversation inside the main bar area of the Dancing Crab with Officer Owen in which plaintiff indicated that he did not have a problem with Yinka and that he was willing to speak with Yinka (MFS 8). Plaintiff specifically stated that he did not want to fight Yinka as he had no quarrel with him (MFS 9). Officer Owen told plaintiff that it would be better not to even see Yinka (MFS 14). Officer Owen took plaintiff, Michael Gillman and two individuals out a side entrance to avoid Yinka and any incident. (MFS 17). Officer Owen, plaintiff and these individuals then walked past the Sequoia restaurant on the boardwalk toward 30th Street and toward K Street, N.W. (MFS 18).

Wood and Yinka observed Officer Owen walking Plaintiff and other individuals toward a side/back exit/entrance of Tony & Joe's Seafood Place. (MFS 15). Yinka began to follow Officer Owen and plaintiff as they left the side entrance and Yinka began screaming at them, throwing tables and chairs and banging on the outdoor furniture. (MFS 16). Officer Owen turned to address the ruckus that Yinka was creating while plaintiff, Gillman and the other two individuals continued walking up 30th Street. Yinka and Wood then turned and cut through the restaurant and main bar area of the Dancing Crab at which time Yinka told James Sylvester that he was going to "knock Jon Rude out" and then he was going to come back and knock out Sylvester. (MFS 19). Yinka and Wood exited the main entrance of the Dancing Crab and ran into the garage of the Complex. (MFS 20). Yinka and Wood went to the parking garage area for the purpose of intercepting the departure of Plaintiff from the Complex. (MFS 21). Yinka and Wood the left the garage area and ran up the main steps of the Harbour Complex leading toward K Street, N.W. (MFS 22). Yinka and Wood spotted plaintiff, Gillman and two other persons walking away from the Complex and down K Street, N.W. (MFS 23). Yinka ran after plaintiff, Gillman and these individuals and caught up to them (MFS 24). Yinka then lunged at plaintiff striking plaintiff in the back of the head causing plaintiff to fall (MFS 25, 26). Gillman then grabbed Yinka. (MFS 32). Wood then tackled plaintiff. (MFS 27). Wood tackled Plaintiff on a cement sidewalk. (MFS 28). Wood on June 27, 2004 was approximately 5'10' to 6' tall and weighed 260 pounds. (MFS 29). As Wood lay on top of Plaintiff on the sidewalk, Yinka attempted to kick Plaintiff in the head. (MFS 30). Wood represented that he attempted to 'block' Yinka's kick using his "arm". (MFS 31). Wood then got off Plaintiff and Plaintiff was again attacked by Yinka. Yinka then was on top of plaintiff on the

4

sidewalk and striking plaintiff in the head and hitting him in the face such that plaintiff head was bouncing off the cement sidewalk (MFS 35).[2] Yinka was holding Plaintiff's neck and striking Plaintiff in the head while Plaintiff was laying on his back with his arms at his sides making no effort to defend himself. (MFS 33, 34). Wood prevented Michael Gillman from stopping the alleged altercation. (MFS 36). When Wood saw what Yinka was doing, he pulled Yinka off Plaintiff and Yinka again kicked plaintiff in the head. (MFS 37). Officer Edwin Kennedy, who was off-duty and across the street from the scene of the attack observed Yinka striking Plaintiff in the head with severe blows at least five or six times while Plaintiff lay unconscious on the sidewalk. (MFS 38). Yinka and Wood then returned to the Dancing Crab at Washington Harbour and went inside to an employee meeting (MFS 39). Plaintiff, from the time that he walked into the Dancing Crab until the unprovoked attack, did not speak to nor communicate in any way with Wood, Yinka nor Oluwatosin Adeboyeku. (MFS 40). Wood was arrested by the police on June 27, 2004 at the restaurant facilities of the Dancing Crab and charged with aggravated assault on plaintiff (MFS 41). Yinka fled to Maryland and was arrested on July 8, 2004 as a fugitive from the District of Columbia. (MFS 42). Yinka was returned to the District of Columbia and charged with aggravated assault on plaintiff (MFS 43). Yinka was indicted on November 2, 2004 on six felony charges, including Aggravated Assault, Felony threats, Assault With a Deadly Weapon-Shod Foot, and Obstruction of Justice. Plaintiff was seriously injured in the attack sustaining a concussion, multiple facial fractures, broken eye socket, cuts, abrasions and contusions and a separated

---

[2] This portion of the involved brutal attack was witnessed by another off duty police officer. That officer, at the subsequent criminal trial testified that Yinka hit plaintiff in the head approximately 5 times and these were some of the hardest hits he had ever seen or heard. This is a relevant fact point to the aggravated nature of the assault. (Att. No. 6).

shoulder all of which were a direct result of the June 27, 2004 attack by Wood and Yinka. (MFS 45). Plaintiff incurred permanent injury to the his face as a result of the attack. (MFS 46). Plaintiff incurred a total of $73,600.20 in medical and related expenses as a direct result of the June 27, 2004 attack by Wood and Yinka. (MFS 47).

## ARGUMENT

### Summary of Argument

Plaintiff's complaint is premised upon joint and several liability of Wood and Yinka. The facts show that Plaintiff was first attacked by Yinka; then attacked by Wood; and then attacked by Yinka again. Assault and Battery are intentional torts. Wood has acknowledged that defendants followed Plaintiff from the Washington Harbour Complex. Wood has further provided admissions against interest and an eyewitness account of an aggravated assault and assault with a deadly weapon. Wood participated in the June 27, 2004 attack by tackling Plaintiff to a cement sidewalk[3] as well as by preventing another witness from intervening and stopping any further injury to Plaintiff. The undisputable evidence of record supports a finding that Wood committed a battery upon Plaintiff. Plaintiff by this motion is seeking an Order finding that the battery occurred and that Wood is liable for Plaintiff's medical expenses incurred as a direct consequent of the involved attack.

### THE STANDARD FOR SUMMARY JUDGMENT

This Court in *Demar v. PA Consulting Group, Inc.*, Case No. 04-00826 (RCL) (D.DC.), Memorandum Opinion dated June 30, 2006, set forth this Court's legal standard for a summary judgment motion. The court noted as follows:

---

[3] Any reasonable individual would foresee that there is a high likelihood of injury when a 260 pound man tackles another man onto cement. Further, it is highly foreseeable that such an act would therefore involve an "intentional" injury.

> "Summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law'. Fed.R.Civ.P. 56. In determining whether there is a genuine issue of material fact, the Court views the facts and all reasonable inferences to be drawn from them, in the light most favorable to the plaintiff, as the non-movant. (citation omitted). Plaintiff must respond to the summary judgment motion by going 'beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial (citation omitted). It is not enough for the plaintiff to point to any alleged factual dispute; rather, she must point to a genuine issue of material fact that might affect the outcome of the suit under the governing substantive law. (citation omitted). The court must not weigh the evidence, Rather, the court must determine whether enough evidence exists to enable a reasonable fact finder to find in favor of the plaintiff."

Defendant Wood has the burden to establish the existence of "material facts" necessary to a "genuine issue". The Supreme Court, in *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d. 202, stated:

> "Substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted".

The Honorable Judge Gladys Kessler, in a recent Memorandum Opinion in *Essex Insurance Co., v. Associates For Renewal In Education, et al.*, (Case No. 04cv1460(GK)), filed August 30, 3006, Memo. at pgs. 7-8), explicitly cited this requirement and further noted that the non-moving party has the "affirmative duty" to provide "enough" evidence that a reasonable jury could return a verdict in its favor…that there "must be" a showing of "specific facts" to support an alleged genuine issue. Judge Kessler, quoting *Anderson* concluded by noting that the court must evaluate the evidence presented and if the evidence presented is "so one-sided" then the moving party "must prevail as a matter of law". *Ibid.*

This same standard applies to affirmative defenses raised by a defendant. Defendant has the burden of proof as to these defenses. As this Court has noted, if an essential element of a claim (or defense) is missing; then judgment must be entered for the party seeking summary judgment. Cf. *Brisbin v. Washington Sports And Entertainment*, Case No. 04-0643 (RCL), Memorandum Order dated February 21, 2006, at page 4 (the moving party is successful if the opposing party fails to make a showing of an element essential to that party's case and on which that party has the burden of proof). Defendant has the burden of proof as to the affirmative defenses he raised—not only as to the alleged factual basis, but the legal sufficiency as well. If a defense is legally insufficient, then the facts become irrelevant. The involved affirmative defenses fail on both grounds.

I. PLAINTIFF HAS ESTABLISHED THAT WOOD ENGAGED IN A COMMON LAW ASSAULT AND BATTERY DURING WHICH PLAINTIFF WAS SERIOUSLY INJURED.

The Complaint alleges a common law assault and battery. (See; Doc. #1, para. 8-15). Wood denied the averments of the complaint and raised five defenses (See; Doc. 8, pg. 1). These defenses will be separately addressed in Part II below. Wood has admitted to a battery of plaintiff. (See the discussion at pages 2-6). Wood has admitted to tackling Plaintiff on a cement sidewalk. (MFS 27-28). Wood admitted to accompanying Olayinka Adeboyeku in the pursuit of Plaintiff as Plaintiff left Tony & Joe's Seafood Place. (MFS 15,16,19,20,21,22,27). Wood admitted to the fact that Olayinka Adeboyeku kicked Plaintiff in the face and the head.[4] This is eyewitness testimony to the commission of a felony under the laws of the District of Columbia.

---

[4] The trial testimony of Michael Gillman also described Yinka Kicking Plaintiff in the head while Wood was preventing Gillman from intervening and stopping the attack. The number of times that Plaintiff may have been kicked is subsumed into the fact that Wood admitted to the "kicking" of Plaintiff. Kicking

8

Wood admitted, both in his deposition testimony, and by way of admission, that he tackled Plaintiff. This constitutes a battery. *Jackson v. District of Columbia*, 412 A.2d. 948, 955 (App.D.C. 1980) (..."a battery is an intentional act that causes a harmful or offensive bodily contact"). See also: *Etheredge v. District of Columbia*, 635 A.2d. 908, 916 (App.D.C. 1993) (police officer shot plaintiff). The performance of the act meets the basic requirement of "intent". There can be no dispute, Wood not only participated in the pursuit of Plaintiff by Yinka, but Wood further participated in the attack. It has been further established that Wood had advance knowledge of Yinka's intentions to engage in a fight. (MFS 12,13). Wood went along with Yinka in this inappropriate undertaking. Wood also admitted that he kept Michael Gillman from intervening in the attack. (MFS 36).

Plaintiff has submitted to the Court a Statement which briefly details the injuries sustained as attached an itemized summary of medical expenses incurred as a direct and proximate result of the attack. The underlying invoices and records have been produced and made available for review. Wood has admitted that these injuries were the result of the attack on June 27, 2004. (MFS 45). Plaintiff lost over six months of his life due to the injuries sustained and the time needed for recovery. Plaintiff has sustained permanent injury to his face. The evidence show medical expenses in the amount of $73,600.29 which are undisputed. (MFS 47). Wood has shown himself to Plaintiff as being fundamentally 'judgment proof'. However, such a financial condition is most certainly not to be employed as a 'shield' from liability and personal responsibilities. Were that situation to be; the basic tenets of tort and personal injury law would cease to exist.

---

someone with a "shod foot" is assault with a deadly weapon. Medlin v. United States, 207 F.2d. 33 (U.S.App.D.C. 1953) and a felony.

9

Plaintiff, with the recognition of the above, is seeking an award from Wood equal to Plaintiff's medical expenses. These expenses are liquidated amounts and are recoverable by way of summary judgment. Cf. *Hudson v. Lazarus*, 217 F.2d. 344, 346-47 (U.S.App.D.C. 1954).

Yinka fled to Maryland and was arrested as a fugitive about 10 days after the attack. This evidence of flight is itself admissible. Cf. *Williamson v. United States*, 445 A.2d. 975, 981 (App.D.C. 1982)("It is universally conceded that an accused's flight or disappearance is admissible as evidence of consciousness of guilt".) Wood while not finally indicted, did demand immunity. (MFS 44). Such a demand by Wood is also evidence of culpability in regard to the attack on Plaintiff.

II. WOOD AS A JOINT TORTFEASOR CAN BE HELD LIABLE FOR THE ACTIONS OF HIS CO-DEFENDANT, YINKA.

Wood and Yinka engaged in a battery on Plaintiff. A battery is an intentional tort. Cf. *State Farm Mutual Automobile Insurance Co. v. Hill*, 775 A.2d. 476, 481-82 (Md.App. 2001). The Maryland Court further cited an earlier case wherein the Court held that being "kicked .. in the face" was an intentional tort. *Ibid.* Thusly, even though Wood did not kick Plaintiff himself, he is liable for Yinka's actions as a joint tortfeasor. Cf. *National Health Laboratories v. Ahmadi*, 596 A.2d. 555, 557 (App.D.C. 1991) ("when two tortfeasors jointly contribute to harm to a plaintiff both are potentially liable to the plaintiff for the entire harm"). See also; *Faison v. Nationwide Mortgage Corporation*, 839 F.2d. 680, 685-686 (U.S.App.D.C. 1988) citing *Leiken v. Wilson*, 445 A.2d. 993, 999 (App.D.C. 1982). See Restatement Second, Torts, Section 12—Intentional Tortfeasors (Joint and Several Liability for a tort which requires "intent").

III. DEFENDANT'S AFFIRMATIVE DEFENSES ARE INAPPLICABLE.

Wood raised five defenses. Three of these defenses (First – Failure to state a Claim; Second—time barred) are inconsequential. The claim clearly states a case in diversity. Secondly, the complaint was filed within one year of the underlying incident—June 27, 2004. The complaint is timely. The Fourth defense is a claim of lack of jurisdiction. Complete diversity exists—Plaintiff is a resident of Virginia, defendants are residents of Maryland and the District of Columbia respectively. Plaintiff is entitled to summary judgment on Wood's First, Second and Fourth Defenses.

### A. THE DEFENSE OF RES JUDICATA/COLLATERAL ESTOPPEL HAS NOT APPLICATION TO WOOD AND WOULD NOT BE AVAILABLE UNDER ANY CIRCUMSTANCES.

Wood has not cited Plaintiff to any prior litigation between Plaintiff and Wood. Simply, there is no such prior litigation. These legal doctrines require that there be other litigation and that the "parties" or their "privies" be the same. See; *Montana v. United States*, 440 U.S. 147, 153-154 (1979); *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Parklane Hosiery Co. v. Shore* 439 U.S. 322, 326 (1979).

The criminal proceedings against Olayinka Adeboyeku in the Superior Court, *United States v. Adeboyeku*, Case Nos. F-4460-04 and 4895-04, do not provide Wood any relief. It is well established that criminal proceeding do not bar subsequent civil proceedings involving the same matters. Cf. *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235, 93 S.Ct. 489, 34 LEd.2d. 438, 442 (1972)(acquittal on a criminal proceeding is no bar to civil proceeding). Plaintiff is entitled to summary judgment on Wood's Third Defense.

B. THE EQUITABLE DOCTRINE OF UNCLEAN HANDS IS
INAPPLICABLE TO ACTIONS FOR DAMAGES UNDER
THE LAWS OF THE DISTRICT OF COLUMBIA.

Wood's Fifth Defense is alleged "unclean hands". The District of Columbia Court of Appeals has specifically held that the doctrine of unclean hands "has no applicability in an action for damages". *Truitt v. Miller*, 407 A.2d. 1073, 1080 (App.D.C. 1979). The *Truitt* decision was cited with approval by the Federal District Court in *Johns v. Rozet* 141 F.R.D. 211, 220) (D.DC. 1992). Wood's Fifth Defense is invalid as a matter of law. Plaintiff is entitled to summary judgment on the Fifth Defense.

## CONCLUSION

The facts of this case are quite clear. Two individuals pursued and attacked Plaintiff. These individuals (Wood and Adeboeyku) were arrested and charged. Wood has provided testimony which implicates him as a participant in an assault and battery perpetrated on Plaintiff. Wood is found to be of limited means. The limitations of financial resources with which to pay any civil judgment should NOT constitute a "free pass" to engage in such criminal and tortuous conduct. Were that to be the case, there would be no consequences for defendants' conduct.

Plaintiff is seeking an award and judgment to be imposed in a liquidated amount equal to the medical expenses incurred. It is the belief of Plaintiff that such an award amount is appropriate to Wood's financial condition.

Accordingly, it is hereby respectfully requested that the Court favorably grant Plaintiff's motion for summary judgment as to defendant Anthony B. Wood and in the amount of $73,600.00 as an award of compensation from him.

                                      Respectfully submitted,

                                      /S/
                            RICK A. RUDE, Esq. #244897
                            Suite 103
                            207 Park Avenue
                            Falls Church, VA. 22046
                            (AC 703) 536-3063 Tele.
                            (AC 703) 536-4841 Fax.

                            Counsel For Plaintiff

Dated: 1 February 2007