CASE NO. 05CV1274(RCL)
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
# ATTACHMENT NO. 6

```
 1              SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

 2                           CRIMINAL DIVISION

 3      ------------------------------x
                                      :
 4      UNITED STATES OF AMERICA      :
                                      :
 5              v.                    : Criminal Action No.:
                                      :
 6      OLAYINKA ADEBOYEKU,           :      F-4460-04
                                      :
 7                      Defendant.    :
                                      :
 8      ------------------------------x

 9                                         Washington, D.C.
                                           Tuesday, March 8, 2005
10
              The above-entitled action came on for a jury trial
11      before the HONORABLE THOMAS MOTLEY, Associate Judge, in
        Courtroom Number 221.
12

13              THIS TRANSCRIPT REPRESENTS THE PRODUCT
                OF AN OFFICIAL REPORTER, ENGAGED BY THE
14              COURT, WHO HAS PERSONALLY CERTIFIED THAT
                IT REPRESENTS THE RECORDS OF TESTIMONY
15              AND PROCEEDINGS OF THE CASE AS RECORDED.

16                      APPEARANCES:

17                      On behalf of the Government:

18                      JONATHAN W. HARAY, Esquire
                        Assistant United States Attorney
19                      Washington, D.C.

20                      On behalf of the Defendant:

21                      REGINALD WILLIAMSON, Esquire
                        Public Defender Service
22                      Washington, D.C.

23

24
        KATHY E. JACKSON                    Telephone (202) 879-1064
25      Official Court Reporter

                                                                 196
```

```
 1    the voluntariness of the move was brought into question.
 2            THE COURT:  All right.  Objection is overruled.
 3    You may answer the question.
 4            BY MR. HARAY:
 5       Q.   What part of Mr. Rude's body hit the car?
 6       A.   It was his stomach and chest area.
 7            MR. HARAY:  Nothing further.
 8            THE COURT:  You may step down.
 9            (Witness excused.)
10            THE COURT:  Next witness, please.
11    Thereupon,
12                         EDWIN KENNEDY,
13    having been called as a witness by the government, and after
14    having been first duly sworn by the Deputy Clerk, was
15    examined and testified as follows:
16            THE COURT:  Sir, if you could tell us your name,
17    please?
18            THE WITNESS:  Officer Edwin Kennedy.
19    K-E-N-N-E-D-Y.
20            THE COURT:  Counsel, you may proceed.
21            MR. HARAY:  Thank you, Your Honor.
22                       DIRECT EXAMINATION
23       BY MR. HARAY::
24       Q.   Good morning, sir.
25       A.   Good morning.
```

```
 1      Q.   Where do you work?
 2      A.   Metropolitan Police Department.
 3      Q.   What's your rank?
 4      A.   Officer.
 5      Q.   How long have you been a police officer?
 6      A.   Three and a half years.
 7      Q.   I want to ask you about the early morning hours of
 8 June 27, 2004. Do you remember that day?
 9      A.   Yes, I do.
10      Q.   Do you know where you were sometime in the early
11 hours after midnight?
12      A.   Yes. I was in Georgetown outside the movie
13 theatre.
14      Q.   Were you on duty or off duty?
15      A.   Off duty. I was working part time.
16      Q.   What do you mean working part time? Explain to me
17 what kind of work you were doing.
18      A.   That evening, I was taking care of a tour bus,
19 making sure it wasn't impeding traffic.
20      Q.   Where were you positioned to do that?
21      A.   Standing in front of the movie theatre on the
22 sidewalk.
23      Q.   Do you know specifically what address you were at?
24      A.   I know it's the 30000 block of K Street, somewhere
25 in there.
```

1   was over.  But I had never met him before then.

2       Q.   Tell us what you saw?

3       A.   They were locked up kind of grappling.  Then I saw

4   the one individual punch the complainant.  He ended up going

5   to the ground.

6       Q.   What happened after that man went to the ground?

7       A.   After he went to the ground, the other individual

8   got on top of him like kneeling over him and just started

9   punching him to the face.  At that time, I was like I got to

10  do something.  I was already on the phone, 911, just saying

11  that there was a fight.  But the way he was getting punched,

12  I had to cross the street and try to intervene in the fight.

13      Q.   What were you wearing?

14      A.   Civilian clothes.  A pair of slacks and a shirt.

15      Q.   And when the complainant went to the ground, what

16  position was the body in?

17      A.   He was laying on the ground.  He wasn't like

18  trying to defend himself.  His arms were just at his side.

19      Q.   Which way was he facing?

20      A.   His feet were towards the roadway, like towards

21  me.

22      Q.   I mean --

23      A.   He was on his back.

24      Q.   And while he was in that position, how many times

25  did you see him get hit?

236

1  A. I saw at least five to six punches. But I was
2 trying to cross the roadway and not get hit by cars at the
3 same time. So I was watching, checking the traffic, trying
4 to cross.
5  Q. Did you see if --
6  THE COURT: Counsel, slow down a little bit.
7 Thank you.
8  MR. HARAY: Yes, sir.
9  BY MR. HARAY::
10  Q. Where did those punches land on the complainant?
11  A. They were all head shots.
12  Q. Were you able --
13  A. They were pretty intense looking.
14  THE COURT: Let him finish his answer, counsel.
15  MR. HARAY: I thought he had finish. I apologize.
16  BY MR. HARAY::
17  Q. Please finish your answer.
18  A. They were all head shots. These two guys where
19 big guys. And they were pretty intense looking. And that's
20 why I got to get across the street before the guy who was
21 getting punched got seriously hurt. That's why I was trying
22 to get across.
23  Q. Could you tell how hard the punches were?
24  MR. WILLIAMSON: Objection, Your Honor. Calls for
25 speculation.

237

```
 1             THE COURT:  Overruled.
 2             THE WITNESS:  They were probably some of the
 3   hardest punches I have seen.  I mean, he was laying there
 4   defenseless.  He wasn't trying to protect his face, protect
 5   himself.  And he was just coming all the way from the top,
 6   just laying it all on his head, as I'm crossing the street,
 7   with his fist.  And his head is laying on the concrete.
 8             MR. HARAY:  Nothing further.
 9             THE COURT:  Cross-examination.
10                        CROSS-EXAMINATION
11   BY MR. WILLIAMSON::
12       Q.    Officer Kennedy, good morning.
13       A.    Good morning.
14       Q.    Officer Kennedy, what district do you work?
15       A.    I'm assigned to seventh district.  I'm currently
16   detailed to the major narcotics branch.
17       Q.    How long have you been on the police force?
18       A.    Little over three and a half years.
19       Q.    And had you worked in law enforcement prior to
20   that?
21       A.    No, I hadn't.
22       Q.    And you're a sworn member of the Metropolitan
23   Police Department; right?
24       A.    Yes.
25       Q.    And as a sworn member, you have received training;
```

1          MR. WILLIAMSON:  Yes, sir.

2          THE COURT:  Because that was the question that was
3   outstanding.  All right.

4          BY MR. WILLIAMSON::

5      Q.   In your mind there was a crime going on; right?

6      A.   Yes, sir.

7      Q.   Because that's what you had perceived at that
8   moment; right?

9      A.   Yes.

10     Q.   Based upon being a law enforcement officer; right?

11     A.   Yes.

12     Q.   Based upon your experience; right?

13     A.   Yes.

14         MR. WILLIAMSON:  Court's indulgence, please.

15         BY MR. WILLIAMSON::

16     Q.   Now, at some point, Officer Kennedy, it's your
17  testimony that you do go across the street; right?

18     A.   Yes.

19     Q.   And when you go across the street, the people that
20  you are looking at, they are still there; right?

21     A.   By the time I made it across, the individual who
22  was punching the guy on the ground was walking away.

23     Q.   Okay.  Was walking away as you were going across
24  the street; is that right?

25     A.   By the time I got across the street, yes.

1   the street as well; right?

2   A.   When I got across the street, the guy who was beat

3   up was being helped up by his friends.  And everybody else

4   had walked away.

5   Q.   You don't say anything to the guys who were in the

6   group with the guy who was, according to your testimony,

7   beating up the other guy; is that correct?

8       MR. HARAY:  Objection, Your Honor.

9       THE COURT:  Sustained.  Ambiguous, counsel.

10      BY MR. WILLIAMSON::

11  Q.   You don't say anything -- you've identified --

12  well, let me put it this way.  The person who was in the

13  group who was on top of the guy, is he in group one or group

14  two?

15  A.   The guy who was on top of --

16  Q.   The other guy, yes.

17  A.   He was in the group that came up from behind?

18  Q.   Is that group one or group two?

19  A.   Well, according to -- yeah, group two.

20  Q.   You don't yell anything to anybody else in that

21  group; right?

22  A.   No.  They were already gone.

23  Q.   You don't yell anything to anybody else in that

24  group; right?

25  A.   I didn't yell anything.

249

1     A.   Deadly force situations, imminent danger of death
2  or serious bodily injury.
3     Q.   Why was it that you couldn't chase after the
4  people that fled?
5     A.   I had just recently dislocated my shoulder.
6     Q.   You recently as of today?
7     A.   No, before that, before the incident, I had
8  dislocated within the last month, and I had no strength.
9  And I couldn't run or do anything with my arm, left arm.
10         MR. HARAY:  Nothing further.
11         THE COURT:  You may step down.
12         (Witness excused.)
13         THE COURT:  Ladies and gentlemen, it's time for
14  our morning break while it's still morning.
15         Ladies and gentlemen, I'm going to ask you to take
16  ten minutes.  It's really five minutes, but should last no
17  longer than ten minutes.  Ladies and gentlemen, don't
18  discuss this case in any way, shape or form.  Thank you.
19         (Jury excused at 11:50 a.m.)
20         THE COURT:  How many additional witnesses do you
21  have, counsel?
22         MR. HARAY:  I believe four.  And there may be one
23  fifth short one, very short one.  Oh, I'm sorry.  Plus the
24  doctor.
25         THE COURT:  Counsel, you should give some serious

258