## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

      Plaintiff,

    v.                          Case No. 05cv1274(RCL)

OLAYINKA ADEBOYEKU,
A/k/a "YINKA" and
ANTHONY B. WOOD,
A/k/a WILLIE JOYNER, JR.,

      Defendants.

### PLAINTIFF'S REPLY MEMORANDUM TO
### OPPOSITION OF DEFENDANT ANTHONY B. WOOD
### TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff, by and through his counsel, and submits this Reply

Memorandum to the Opposition Memorandum of Defendant Anthony B. Wood to

Plaintiff's Motion For Summary Judgment. Plaintiff, in reply states as follows.

### Introduction

Plaintiff submitted to the court a motion for summary judgment as to defendant

Anthony B. Wood ("Wood"). Plaintiff sought judgment on the basis that Wood had

admitted, by way of (1) deposition testimony, (2) a June 27, 2004 Statement during a

police interview, and (3) by Rule 36 Admissions that Wood had committed a battery on

plaintiff. Plaintiff submitted a sworn affidavit as to the nature of the injuries sustained

and the medical expenses incurred.

Plaintiff submitted to the court a series of 8 Attachments which included Wood's

police interview transcript[1] as well as excerpts from Wood's Deposition.[2] Plaintiff further

---

[1] The June 27, 2004 Interview is identified as "Attachment No. 2" to Plaintiff's Memorandum of Points and
Authorities in Support of Plaintiff's Motion For Summary Judgment. Wood has submitted portions of this

1

submitted Plaintiff's First Request For Admissions to Defendant Wood. Many of the

Admission Requests were based upon Wood's deposition testimony as well as facts

adduced in the discovery process.[3]

## SUMMARY OF REPLY

Wood has presented the court with a series of legal questions rather than questions

fact. Wood has submitted an Opposition Memorandum as well as a Statement of Material

Facts As To Which There Is A Genuine Issue.[4]  Wood submits a list of 5 material facts

that Wood contends preclude summary judgment.[5]  Wood's material facts and associated

'inferences' are premised upon an incorrect view of the elements of civil battery (Wood

Opp. Memo. pg. 12, fact no. 1). Wood miscomprehends the scope of joint and several

liability in order to establish material facts on apportionment of liability for damages

(Wood Opp. Memo. pg. 13-14, fact nos. 3, 4, 5). Lastly, Wood presents a fact issue

regarding the claim of emotional distress but such claim is not the basis of Plaintiff's

Motion For Summary Judgment. (Wood Opp. Memo. pg. 13, fact no. 2).

Plaintiff is entitled to summary judgment on his claim of battery. Wood admits to

tackling Plaintiff on a cement sidewalk. This admission is contained in Wood's

deposition testimony, the Admissions, and in Wood's Opposition Memorandum (Wood

Opp. Memo at pgs. 2, 3 footnote 1, pgs. 6, 7). The burden therefore shifts to Wood to

---

Interview transcript identified as "Exhibit C" to Wood's Opposition Memorandum. Wood has clearly
waived any objection to the admissibility of the transcript or the underlying videotape from which the
transcript was prepared. This prior Statement is fully admissible in any event. Cf. Nelson v. O'Neil, (1971)
402 U.S. 622; in accord, Dutton v. Evans, (1970) 400 U.S. 74.
[2] Wood's deposition excerpts are identified as "Attachment No. 3" to Plaintiff's Memorandum of Points
and Authorities in Support of Plaintiff's Motion For Summary Judgment.
[3] Plaintiff's First Admissions To Defendant Wood were identified as "Attachment No. 1" to Plaintiff's
Memorandum of Points and Authorities in Support of Plaintiff's Motion For Summary Judgment.
[4] Document #55 hereinafter referenced as "Wood Opp. Memo pg. ---". Wood Statement of Material Facts
in Dispute is contained at the end of the Opposition Memorandum, pgs. 12-15.
[5] Wood attaches four exhibits to his Opposition Memorandum (Ex. A – D). Exhibit A contains 6 subparts
(A-1 thru A-6). Wood by submitting this material permits the Court to consider this information in ruling
on Plaintiff's Motion For Summary Judgment.

show that he has an Affirmative Defense for his actions. Wood has made the following

legal errors:

1) **Wood erred as to the elements necessary to establish a battery under District of Columbia law.**

2) **Wood erred in regard to joint tortfeasor liability pursuant to the "Single Injury Rule".**

3) **Wood is not entitled to claim 'defense of others' under District of Columbia law nor under the Rules of this Court.**

Plaintiff established that he was injured as a result of this Tag-Team attack. Plaintiff

further established his medical expenses in a liquidated amount susceptible for summary

judgment.

## STATEMENT OF FACTS IN REPLY

Plaintiff submitted a Statement of Material Facts In Support of Motion For Summary

Judgment. The Statement contained 47 facts that were annotated to the Attachments. A

review of the annotations reflects that the fact points were not only based upon an

unanswered Request For Admissions (Attachment No. 1) but likewise upon Wood's

Interview Statement and Deposition testimony[6] (Attachment Nos. 2, 3). Plaintiff also

provided a sworn affidavit, uncontested trial testimony of Officer Robert Owen, and an

excerpt from the deposition of James Sylvester. Wood does not contest these facts but

instead argues that conflicting inferences may be drawn from the facts and thereby

precluding summary judgment.

### Uncontested Facts

Wood does not contest that (1) he was present with Olayinka Adeboyeku outside of

Tony & Joe's Seafood Place and that Adeboyeku was upset; (2) he accompanied and was

---

[6] Plaintiff's Statement of Material Facts Numbers 2, 4, 10, 16, 17, 20, 22, 23, 24, 25, 26, 27, 30, 31, 35, 37, 39.

present with Adeboyeku when Adeboyeku followed Officer Owen and Plaintiff out onto the Board walk area at the Washington Harbor Complex; (3) Adeboyeku was furious and was tipping over furniture on the Board walk;[7] (4) Wood accompanied Adeboyeku when they went to the garage area of Washington Harbor Complex; (5) while at the exit door to the garage area Wood stated "I told Adeboyeku that if you go out this door are going to get into trouble";[8] (6) Wood was running behind Adeboyeku when Adeboyeku ran out of the Washington Harbor Complex; (7) Adeboyeku followed Plaintiff onto K Street, N.W. and attacked Plaintiff from behind hitting Plaintiff in the back of the head;[9] (8) Wood followed after Adeboyeku onto K Street; (9) Wood intervened between Michael Gillman and Adeboyeku;[10] (10) Plaintiff was lying on the sidewalk at the time Wood forced Gillman to let go of Adeboyeku;[11](11) Wood had tackled Plaintiff onto a cement sidewalk;[12] (12) Adeboyeku attacked Plaintiff after Wood obtained his release from Gillman, (13) Adeboyeku kicked Plaintiff in the head several times.[13] (14) the amount of time from the moment that Adeboyeku attacked Plaintiff until Adeboyeku and Wood left the area on K Street, N.W. after the attack was approximately one (1) minute—**60 seconds**.[14] (15) Wood demanded and obtained immunity from criminal prosecution as a

---

[7] This fact is contained in Wood's Interview Statement, Attachment No. 2, pg. 4, lines 11-16.

[8] This statement is based upon Wood's Answers to Interrogatories. See Wood Opp. Memo. Exhibit D, pg. 1, Answer to Interrogatory 8.

[9] This fact is contained in Wood's Deposition testimony and corroborated by Michael Gillman. See Wood Opp. Memo. Exhibit A-1, Tr. Pgs. 133-137.

[10] This fact is contained in Wood Opp. Memo. Exhibit A-2, Tr. Pgs. 46, Exhibit A-3, tr. Pgs. 146-47, Exhibit A-4, tr. Pgs. 186, 189-90.

[11] Wood Opp. Memo., Exhibit A-1, tr. Pgs. 143, 146-47, Exhibit A-2, Tr. Pg. 47-48

[12] This fact is contained in Wood's Deposition Testimony, Admission Numbers 27 and 28, and admitted in Wood's Opposition Memorandum at pages 2, 3, footnote 1, 6 and 7.

[13] This fact is contained in Wood's Interview Statement, Attachment No. 2, pg. 7 lines 5-23 and pg. 10, lines 6-10; See also; Wood Opp. Memo. Exhibit A-1, Tr. Pgs. 143-146, Exhibit A-2, Tr. Pgs. 50, Exhibit C pg. 7, 10.

[14] This fact is contained in Wood Opp. Memo. Exhibit A-1, Tr. Pg. 147, lines 18-20.

condition to his appearance and testimony in the criminal trial of Adeboyeku for his

participation in the attack on Plaintiff. (MFS No. 44, Attachment No. 1, Exhibit 4).[15]

Plaintiff submitted to the Court an Affidavit containing a listing of and description of

his injuries and the medical expenses incurred as a result of the attack on June 27, 2004.

Wood does not dispute that these injuries were incurred nor does Wood dispute the

amount of the medical expenses. Wood contends instead that the injuries were inflicted

by Adeboyeku (Wood Opp. Memo. at page 1; Statement of Material Facts para. 4, 5

contained at pages 13-14 of Wood Opposition Memorandum).

## REPLY ARGUMENT

I.      STANDARD FOR SUMMARY JUDGMENT.

Plaintiff's Memorandum contains a discussion of the Court's standards under Rule 56

of the Federal Rules of Civil Procedure for the entry of summary judgment. Plaintiff has

provided the Court with citations to recent decisions of the District Court. (Plaintiff's

Memorandum at pages 6-8). That discussion is incorporated herein.

The United States Supreme Court stated that "one of the principal purposes" of

Fed.R.Civ.Proc. 56(c) was to "isolate and dispose of factually unsupported claims or

defenses" and that the rule "should be interpreted in a way to allows it to accomplish this

purpose". _Celotex Corp. v. Catrett_, **(1986)** 477 U.S. 323-24; Cf. _Matsushita Electric_

_Industrial Co., Ltd. v. Zenith Radio Corporation_, **(1986)** 475 U.S. 574, 587 ("purpose of

summary judgment is to 'pierce the pleadings and to assess the proof in order to see

whether there is a genuine need for trial' "). In _Matsushita_ the Court stated that "Where

the record taken as a whole could not lead a rational trier of fact to find for the

---

[15] Wood carries this Admission and the Immunity Letter forward in his proposed amended Answers to Plaintiff's First Request For Admissions. See Docket Entry Doc. No. 56-3, pg 12, nos. 48 and 50.

nonmoving party there is no 'genuine issue for trial'). *Ibid.* This Court in a recent decision noted that "The presence of disputed facts by itself is insufficient to defeat summary judgment" and that an "issue of material fact qualifies as genuine ONLY IF there is evidence on which a jury could base a verdict for the non-moving party". *Brisbin v. Washington Sports And Entertainment, Ltd.*, Case No. 04-0643 (RCL), Memorandum Opinion at page 4, (February 21, 2006).

The nonmoving party has a burden to identify 'specific facts' that establish a genuine dispute as to a "material fact". The evidentiary burden is that of the "substantial evidence" standard. *State Farm Life Insurance Co. v. Gutterman*, 896 F.2d. 116, 118 (5th Cir. 1990). This substantial evidence standard may not be met solely on the basis of inferences without independent evidence to support such inferences. 896 F.2d. at 119 n. 3. The scope of inferences permitted is delimited by the controlling law. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation*, 475 U.S. 588. The Courts are not required to make any or all conceivable inferences but only those that are "reasonable" and justifiable on the record evidence. *Spring v. Sheboygan Area School District*, 865 F.2d. 883, 886 (7th Cir. 1989). A proposed factual inference which is not relevant, not supported by record evidence, or not in accordance with the substantive law of the case cannot be employed to preclude summary judgment. Cf. *Anderson v. Liberty Lobby, Inc.* **(1986)** 477 U.S. 242, 255 (nonmoving party only entitled to "justifiable inferences"). A "justified factual inference" cannot preclude summary judgment when the alleged inference involves an affirmative defense that was waived. A jury cannot base a verdict on a waived affirmative defense.

6

This court, in a recent decision on summary disposition noted that a party is also entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof". *Brisbin v. Washington Sports and Entertainment*, supra. This includes the case where the party is obligated to provide expert testimony. See; *Wilson v. Prudential Financial*, U.S. D.D.C. Case No. 03-2313 (RMU), Memorandum Opinion at pages 4-5, 7-8 (March 1, 2007). Wood, in order to avoid plaintiff's damage claim, had the burden to provide expert medical witness testimony. That testimony would be essential to support Wood's contention that he did not cause any of Plaintiff's injuries. Cf. *Wilson v. Prudential Financial*, Memorandum at pg. 7 (Judge Urbina). Wood has not met this burden/element of his defense.

## II.    WOOD HAS ADMITTED TO THE BATTERY OF PLAINTIFF NO SEPARATE PROOF OF SPECIFIC INTENT IS REQUIRED.

Wood has admitted that he tackled Plaintiff on a cement sidewalk. (MFS No. 27, 28; Wood Opp. Memo. at pgs. 2, 3, fn. 1, 6, 7). Wood states: "the purported admissions, the most they establish as operative material facts is that Wood tackled plaintiff to the sidewalk", "Wood's tackling of plaintiff may be excused", plaintiff claims Wood committed an battery by "2) tackling the plaintiff". Wood weighed approximately 260 pounds and was 6 feet tall. (MFS 29).

Plaintiff cited Supreme Court precedent and a recent decision of the District Court by Judge Gladys Kessler for the point that "material facts" are determined by application of the substantive law. (Plaintiff's Memorandum in Support of Motion For Summary Judgment, at page 7). Factual disputes that are "unnecessary" are not counted but to be ignored.

7

Plaintiff's complaint described consecutive acts of wanton violence alleging that defendants engaged in a "Tag Team" assault and battery. (Doc. #1, pg. 2, para. 8). Simply, plaintiff was attacked by Adeboyeku, then by defendant Wood, and then again by Adeboyeku. The entire incident lasted a minute or less from beginning to end. Whether defendants acted pursuant to a conspiracy (in concert) or independently (concurrently) is not relevant to the disposition of this motion for summary judgment. Each defendant engaged in a battery on Plaintiff.

. The District Court in *Rogers v. Loews L'Enfant Plaza Hotel*, 526 F.Supp. 523 (D.D.C. 1981) defined a battery as follows:

> **"To constitute the tort of battery, a defendant can be found liable for any**
> **physical contact with the plaintiff which is offensive or insulting, as**
> **well as physically harmful. Of primary importance in such a cause**
> **of action is the absence of consent to the contact on the part of the**
> **plaintiff, rather than the hostile intent of the defendant, although**
> **intent is required. The intent however is ONLY THE INTENT 'TO**
> **BRING ABOUT SUCH A CONTACT'"**
> (526 F.Supp. at 529, emphasis added).

Plaintiff has attached hereto and identified as Attachment No. 9 a copy of the District of Columbia Civil Jury Instructions 19-3 "Battery", 19-5 "Assault And/Or Battery— Excessive Force In Doing Lawful Act" and 19-6 "Assault And Battery—Affirmative Defenses".[16]

The courts in the evaluation of cases is permitted to employ its own common sense and pierce the pleadings to determine whether there are any genuine fact disputes that require trial. Whether or not a fact is "material" depends upon the elements set forth in the jury instruction (19-3) and as interpreted by Judge Green in her 1981 decision in *Rogers v. Loews L'Enfant Plaza Hotel*, supra.

---

[16] Plaintiff, for the convenience of the court, is continuing the Attachment Numbering as utilized in Plaintiff's Opening Memorandum in Support of Plaintiff's Motion For Summary Judgment.

Wood argues that a material factual dispute exists as to whether or not a reasonable person could find Wood's involvement was "de minimus" and not an "intentional" assault and battery. Wood incorrectly then argues that:

> "A fair reading of the plaintiff's exhibits in support of his Statement of Material Facts are inconclusive of intent, a **critical element** of each of his theories of recovery." (Wood Opp. Memo. at pg. 6).

Wood's argues that proof of a separate specific hostile intent must be shown by Plaintiff to establish a prima facie case of civil battery. Wood is incorrect as a matter of law. There is no requirement of proof of separate and distinct 'specific intent to injure' to make out a prima facie case. Wood misstates the 'intent' component of a battery claim. The "intent", as noted by Judge Green, is to "bring about the contact" and therefore the "intent" is subsumed by the doing of the act itself. There is no requirement of proof of a separate "hostile intent". Wood is simply wrong on the law.

Wood did not accidentally stumble and fall on plaintiff. To the contrary, Wood has admitted to intentionally tackling of Plaintiff on a cement sidewalk. That is certainly an offensive and physically harmful touching. It is, by all reason, an act that any reasonable person would foresee as having a very high likelihood of injury to the person being tackled. Wood, a 260 pound heavy built and muscular man, admits tackling plaintiff. Wood stated in his police interview that Wood was "on top of plaintiff" while plaintiff lay on his back. Simple physics and common experience would foretell that plaintiff would have hit his head and shoulders on the sidewalk. Plaintiff's undisputed affidavit notes plaintiff suffered a separated shoulder and multiple injuries to his head, including cuts to the back of his head and a concussion. (Rude Affidavit at para. 2).

Wood argues that he is entitled to the reasonable "inference" that Wood's actions could be interpreted in more than one way and accordingly a dispute of a material fact— ie. Wood's "intent" precludes summary judgment. Wood, at noted above, has misapplied the level and nature of the "intent" required. Wood does not dispute that he intended to and did tackle plaintiff. Wood, in his post-discovery/post-dispositive motion to withdraw and present "amended admissions" continues this key fact admission.[17] Wood "intended" to and did tackle plaintiff—that establishes the elements of a civil battery. The law now shifts the burden to Wood to establish an affirmative defense to Plaintiff's prima facie case.

### III.    WOOD IS BOUND BY HIS DEPOSITION TESTIMONY, BY HIS POLICE INTERVIEW STATEMENT AND HIS ADMISSIONS.

Wood does not dispute Plaintiff's Statement of Material Facts choosing instead to contend that the facts permit more than one "inference". Wood contends that Plaintiff's view of the facts is "legally naïve" and that the evidence is "in equipoise as to whether the tackling of plaintiff was unlawful and intentional or reasonably perceived as a defense of another". (Wood Opp. Memo. at pg. 7). Wood's predicate of separate specific hostile intent has been shown to be incorrect as a matter of law.

Wood did not raise self defense nor defense of another as an affirmative defense in this case. (See Docket Entry Doc. No. 8, pg. 1). Pursuant to Fed.R.Civ.Proc. 8(c) such affirmative defense has been waived. See; *Harris v. Secretary, U.S. Department of Veterans Affairs*, 126 F.3d. 339, 343 (U.S.App.D.C. 1997) ("a party's failure to plead an affirmative defense results in waiver of that defense"). The alleged "alternative"

---

[17] See Docket Entry Document Number 56-3, page 8, Admission Request 31. "That on June 27, 2004 in the 3100 block of K Street, N.W., Wood did tackle plaintiff." Wood's Response: "Subject to, and without waiving, those objections set forth in Defendant's General Objections above, this statement is ADMITTED".

inference is not "justifiable" as it has no legal efficacy or foundation. Wood's argument confuses plaintiff's burden of proof with Wood's burden to establish an affirmative defense— which he did not raise in the first place. A jury cannot find for Wood based upon a waived affirmative defense.

Plaintiff has submitted to the court Wood's prior Statements and his Deposition testimony. Plaintiff on August 3, 2006 served Wood with Plaintiff's First Request For Admissions. Wood failed to answer this Admissions Request. On September 18, 2006 Wood's counsel was provided with an extension of time to September 25, 2006 in which to answer Plaintiff's First Request For Admissions. Wood did not provide any answers pursuant to the extension request. Plaintiff's First Request For Admissions therefore became established pursuant to Fed.R.Civ.Proc. 36(a). Plaintiff, and the court, is entitled to rely upon the contents of the unanswered admissions. Cf. *Rainbolt v. Johnson*, 669 F.2d. 767, 768 (U.S.App.D.C. 1981)("party securing admissions is entitled to rely on their binding effect"); *Chicago District Council of Carpenters Pension Fund v. P.M.Q.T., Inc., et al.*, 169 F.R.D. 336, 341 (N.D. Ill. 1996)(party opposing Rule 56 summary judgment not permitted to contest a matter conclusively established under Rule 36(a) as "the purpose of the rule (Rule 36) would be defeated"); *McNeil v. AT & T Universal Card*, 192 F.R.D. 492, 494 (E.D. Pa. 2000)(Rule 56 summary judgment may be based upon unanswered Rule 36 Admissions request, "admissions are conclusively binding …and carry more weight than a witness statement, deposition testimony, or interrogatories, because once made, admissions cannot be countered by other evidence").

Wood likewise may not dispute his own deposition testimony—either directly or through the use of other witness statements. Wood is bound to his own deposition

11

testimony. See; *Halperin v. Abacus Technology*, 128 F.3d. 191, 198 (4th Cir. 1997)(a

party may not create a material question of fact by contradicting their prior testimony);

*Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d. 970, 975 (4th Cir. 1990); *Barwick v.

Celotex Corporation*, 736 F.2d. 946, 960 (4th Cir. 1984). This rule is intended to preclude

"sham issues of fact". 128 F.3d. at 198. This rule likewise extends to party statements

against interest such as those contained in Wood's Police Interview.

Wood has submitted clipped trial testimony excerpts to establish that the injuries to

Plaintiff were caused by Adeboyeku—not Wood. This appears to be part and parcel of

the traditional "the other guy did it" defense. Wood may not clutter or muddy the record

in an effort to avoid imposition of summary judgment in this case. The trial testimony

does reflect that Adeboyeku attacked Plaintiff and that Wood participated by his own

judicial admission here to "make sure it was a fair fight".

IV.    WOOD IS LIABLE FOR PLAINTIFF'S INJURIES UNDER THE
THE JOINT TORTFEASOR 'SINGLE INJURY RULE'.

Wood seeks to avoid summary judgment contending that Plaintiff's injuries were the

result of a "fight between plaintiff and co-defendant" Adeboyeku. (Wood Opp. Memo. at

pg. 13 fact point 3, 4 and pg. 14, fact point 5). Wood has construed plaintiff's claim as

that defendants "generally acted in concert" causing plaintiff's injuries. (Wood Motion at

page 1, para. 1). This contention ignores the fact that whether or not defendants acted in

concert, or concurrently, both are held jointly and severally liable for the total damages.

Wood did not dispute the contents of Plaintiff's affidavit as to the nature of his

injuries. Plaintiff sustained multiple injuries to his face, shoulder and incurred permanent

injuries. Plaintiff would be entitled to substantial damages for pain and suffering, future

medical were this matter to proceed to trial. Plaintiff, with the recognition that Wood is

12

insolvent, seeks a summary disposition on a liquidated amount—the medical expenses incurred.

Plaintiff has alleged consecutive acts of violence. Whether they occurred pursuant to a conspiracy (in concert) by Wood and Adeboyeku or whether they resulted from "concurrent" acts of violence is not determinative of Wood's liability for the full extent of Plaintiff's injuries. The District of Columbia utilizes what is known as the "Single Injury Rule". This Rule is simply that if two or more tortfeasors, whether acting in concert or in a consecutive manner, produce a 'single injury' the plaintiff may sue each one for the full amount of the damage and hold the defendants severally liable". *Leiken v. Wilson*, 445 A.2d. 993, 999 (D.C.App. 1982).

This Single Injury Rule is of long standing in both the State and Federal Courts. The Supreme Court articulated the history and application of this rule on apportionment of damages in *Edmonds v. Compagnie Generale Transatlantique*, **(1979)** 443 U.S. 256, 260 fn. 8, 99 S.Ct. 2753, 61 L.Ed.2d. 521, 527. (an injured party is permitted to sue a tortfeasor for the full amount of damages for an 'indivisible injury'); *W. Prosser, Law of Torts*, (1941), Chp. 21, Sec. 109, pgs. 1092-93.

Plaintiff stated that he incurred multiple facial fractures, a broken eye socket, a dislocated shoulder, a concussion, numerous contusions, cuts and bruises on his body. The evidence reflects that the attack on plaintiff by defendants lasted "less than a minute"(see page 4 infra). Wood has taken the position that plaintiff was not injured by Wood and that all injuries were caused by Adeboyeku. Wood's position is that Plaintiff has not established that his injuries were caused by Wood—i.e. "de minimus" and "not intentional". (Wood Opp. Memo. at pg. 6). The fact that the attack by both defendants

13

lasted occurred so quickly and that Wood demanded immunity is fertile ground for an

adverse inference that Wood and Adeboyeku did act in concert[18]. The court however

need not reach this point to dispose of this motion in favor of Plaintiff.

The law does not require a plaintiff to identify "which defendant caused which injury"

when the injuries are not clearly 'divisible'. The Court of Appeals of Maryland in a 2005

decision discussed joint and several liability of multiple tortfeasors and the application of

the single injury rule. *Consumer Protection Division v. Morgan, et al.*, 387 Md. 125, 874

A.2d. 919, 950-953 (MD. 2005). The Court stated as follows:

> "Under the 'single indivisible injury rule' or 'single injury rule' the necessary
> condition for concurrent tortfeasors to be held jointly and severally liable
> is that the caused a single injury incapable of apportionment. See Edmonds
> v. Compagnie Generale Transatlantique, 443 U.S. 256, 260, 99 S.Ct. 2753,
> 2756, 61 L.Ed.2d. 521 (1979) (quotation omitted); Mitchell v. Gilson, 233
> Ga. 453, 211 S.E.2d. 744, 745 (1975) (upholding the lower court's holding
> That concurrent tortfeasors were jointly and severally liable when they
> produced a single indivisible injury and the resulting damages lacked a
> Rational basis for apportionment); Ruud v. Grimm, 252 Iowa 1266, 110 N.W.2d.
> 321, 324 (1961) (consecutive acts of negligence closely related in point of
> time, and cause damage to another under circumstances where the damage is
> indivisible – the negligent actors are jointly and severally liable); Palleschi v.
> Palleschi, 704 A.2d. 383, 385 n.3 (Me. 1998) (when joint tortfeasors cause
> a single injury that is incapable of apportionment, each actor is liable for the
> full amount of the damages); D&W Jones, Inc. v. Collier, 372 So.2d. 288, 294
> (Miss. 1979) (quotation omitted); Azure v. City of Billings, 182 Mont. 234, 596
> Pac.2d. 460, 469-71 (1979) (quotation omitted); Landers v. East Texas Salt
> Water Disposal Co., 151 Tex. 251, 248 S.W.2d. 731, 734 (1952) (where two
> or more wrong-doers join to produce an indivisible injury – all of the
> Wrongdoers will be held jointly and severally liable)."

Plaintiff has incurred multiple injuries which are not capable of apportionment between

Wood and Adeboyeku. These injuries were incurred in less than a minute and inflicted by

both of these individuals. Wood has no legal ability to disclaim liability for any injuries

he may have caused nor those caused by Adeboyeku. The Honorable Judge Cathell

---

[18] Adverse inference of liability permitted when a witness asserts Fifth Amendment immunity in a civil case. See; State Farm Life Insurance v. Gutterman, 896 F.2d. at 119.

explained the underlying rationale for the single injury rule and holding all defendants

jointly and severally liable. Judge Cathell, in *Morgan* explained that it is actually a

process of "shifting the burden" from plaintiff to defendants. Judge Cathell stated:

> "An indivisible injury is required, because the rationale for holding con-
> current tortfeasors jointly and severally liable is premised upon the
> indivisibility of liability. As Judge Learned Hand explained in Naviga-
> zione Libera Triestina Societa Anonima v. Newtown Creek Towing Co.,
> 98 F.2d. 694 (2nd Cir. 1938), in cases with indivisible injuries, if the
> plaintiff had the impossible burden of proving each concurrent tort-
> feasor's share of liability, then the plaintiff would not be able to re-
> cover any damages. Id. At 697. This **'ABSURD RESULT'** is solved
> by **SHIFTING THE BURDEN OF APPORTIONING LIALIBITY
> TO THE DEFENDANTS THROUGH JOINT AND SEVERAL
> LIABILITY.** (874 A.2d. at 951)
> . . . .
> Concurrent tortfeasors are not responsible for each other's actions,
> because concurrent tortfeasors do not act in concert. Instead, con-
> current tortfeasors are held jointly and severally liable to prevent
> the 'absurd result' articulated by Hand, Prosser, and Wigmore that
> would follow from burdening plaintiffs with apportioning damages
> in cases of indivisible injury. This result is not considered unjust
> as each concurrent tortfeasor caused the harm."
> (874 A.2d. at 953).

Plaintiff suffered multiple injuries as a result of the attacks by Wood and Adeboyku. The

approach taken by Wood is that plaintiff must prove which defendant inflicted which

injury. That is an "impossible burden" and not required. Plaintiff's injuries are impossible

of division/apportionment. Plaintiff is entitled to pursue either Wood or Adeboyeku for

the full extent of Plaintiff's injuries.

Under the Single Injury Rule, the burden is shifted to Wood to show which injuries

were caused by which defendant.  This requires Wood to provide EXPERT MEDICAL

TESTIMONY.  Wood has not identified an expert witness nor proffered any form of

medical testimony. The Scheduling Order now precludes such expert designation. Judge

Urbina in a recent decision noted that the failure to proffer required expert testimony

resulted in the failure of an "essential element". *Wilson v. Prudential Financial,* supra, at page 1 (March 1, 2007). Judge Urbina granted the movant's motion for summary judgment.

Wood may not now deny that he has full liability for all of the involved injuries and it is not relevant "which defendant" inflicted "which" of the multiple injuries. Plaintiff has established the elements of a civil battery and Wood may be held liable for all of the involved damages.

V.    WOOD IS NOT ENTITLED TO CLAIM DEFENSE OF ANOTHER<br/>NOR 'SELF DEFENSE' UNDER THE FACTS OF THIS CASE.

Wood seeks to avoid summary judgment contending that although the basic facts are not disputed, the facts are capable of differing inferences. Wood's inference is to his 'motivation". This is a question of specific "intent" which is unnecessary to the 'general intent' required by the law. (See the discussion at pages 7-9 infra).

Wood argues that "A reasonable inference in this case can be made that Wood's tackling of plaintiff may be excused because he was entitled to use force in an amount reasonably necessary to carry out the lawful act of ending a fight". (Wood Opp. Memo. at pg. 6). Wood further argues that "...an objective reading of the plaintiff's own submissions support a reasonable inference of Wood's claim of intervention to stop the fight or reasonable belief that Yinka was being attacked by the group (defense of another) but an inference that he did not act intentionally as required under the substantive law..." (Wood Opp. Memo. at page 6) Lastly Wood argues that a genuine issue exists are to "whether Wood was attempting to prevent a fight between plaintiff and Yinka .. It is also reasonable to conclude that Wood intervened to prevent what he reasonably believed to be a gang attack on Yinka, i.e. defense of another". (Wood Opp. Memo at pg. 3 n.1).

16

Wood contentions are that (1) he was acting to 'end a fight' and (2) he was acting in defense of another. The cases cited by Wood are inapposite. *Mattocks v. Bell*, 194 A.2d. 307 (App.D.C. 1963) involved a claim of self-defense. A dentist slapped a patient as the patient was biting the dentist's finger. 194 A.2d. at 308. *Johnson v. Jackson*, 178 A.2d. 327 (App.D.C. 1962) also involved a claim of self-defense. 178 A.2d. 308. Neither decision supports Wood's legal argument. Wood's contentions are contrary to the evidentiary facts.

The basic facts include that (1) Wood accompanied Adeboyeku (i) in front of Tony & Joes Seafood Place, (ii) out onto the Boardwalk, (iii) to the Harbor Complex garage, (iv) out of the garage and up to K Street, (2) Wood knew Adeboyeku was upset or out of control based upon Wood's description of Adeboyeku provided in Wood's Police Interview, (3) Wood was present and heard Adeboyeku threaten James Sylvester as well as announce his intentions to attack Plaintiff[19] (4) Wood warned Adeboyeku that he was going to get into trouble if he went out of the Harbor Complex and after Plaintiff[20] (5) Wood and Adeboyeku went out of the Harbor Complex to K Street and Wood saw Adeboyeku run after, catch up to and attack plaintiff from behind.[21] (6) Plaintiff had earlier refused to become involved in a fight with Adeboyeku and was walking away from the Harbor Complex when Plaintiff was attacked[22] (7) Wood had previously asked the Washington Harbor Complex security personnel to look the other way and allow a

---

[19] See Plaintiff's Memorandum in Support of Motion For Summary Judgment, Attachment No. 4, Trs. James Sylvester, pg. 34 line 1 to pg 35 line 3).
[20] See Wood Opp. Memo. Exhibit D, pg. 1 "I told Adeboyeku that if you go out this door you are going to get into trouble".
[21] See Plaintiff's Memorandum in Support of Motion For Summary Judgment, Attachment No. 3, Wood Dep. Tr. Pg. 106; Wood Opp. Memo. Exhibit A-1, Tr. Pgs. 133-137
[22] See Plaintiff's Memorandum in Support of Motion For Summary Judgment, Attachment No. 2, pg. 14 Wood Police Interview "they were all walking together away from the Washington Harbor".

fight, and (8) after Wood intervened with Gillman, Wood announced that it "was going to be a fair fight".

Does the above statement facts support an inference that Wood was trying to "stop of fight" or more specifically Wood was making sure that an altercation occurred. The facts as established, and admitted by Wood, are that Adeboyeku attacked and injured Plaintiff. Mr. Gillman intervened to stop that attack. Wood not only attacked Plaintiff but then intervened between Gillman and Adeboyeku to make sure that an altercation occurred.

Wood clearly knew Adeboyeku's intentions and why Adeboyeku followed Plaintiff from the Harbor Complex. Wood, being the large size man that he was, could have stopped Adeboyeku but instead he appears to have "come along" with Adeboyeku. Wood's actions are not consistent with "breaking up or stopping a fight"—you do not tackle someone to a cement sidewalk to 'stop a fight'. Further, the 'fight' appeared to involved Adeboyeku and Mr. Gillman at that point. Wood instead chose to further attack Plaintiff. Likewise, there is no evidence of record that there was a "gang attack" on Adeboyeku. The record does not support nor provide any independent corroboration for such an inference.

A. WOOD MAY NOT NOW RAISE THE CLAIM OF SELF-DEFENSE
   NOR MAY HE CLAIM DEFENSE OF ANOTHER.

Wood attempts to avoid summary judgment by claiming that the court should make the inference that Wood acted 'in defense of another'. Plaintiff has attached hereto three additional attachments. The standard jury instructions contained in Attachment No. 9 reflect the elements of a claim of "battery" as well as the permitted affirmative defenses—See Jury Instruction 19-6.

18

Plaintiff has attached hereto and identified as Attachments 10 and 11 the Answer of

Wood (Attachment No. 10) and Wood's Answers to Plaintiff's Interrogatory Number 1

(Attachment No. 11). Plaintiff has moved for summary judgment in regard to Wood's

Affirmative Defenses (See Plaintiff's Memorandum in Support of Motion at pages 11-

12). Wood did not oppose Plaintiff's motion in regard to the listed affirmative

defenses.[23]

Wood has not raised an affirmative defense of "self-defense" in regard to himself.

Wood has now raised "defense of another" as precluding summary judgment. A review

of Wood's Answer reflects that he did not raise 'defense of another' as an affirmative

defense. The Federal Courts in the District of Columbia have held that the failure to raise

an Affirmative Defense pursuant to Fed.R.Civ.Proc. 8(c) results in the "forfeiture" of that

defense. The United States Court of Appeals For The District of Columbia Circuit stated:

> "The failure to plead need not be intentional for the party to lose its right
>
>   to raise the defense."

*Harris v. Secretary, U.S. Department of Veterans Affairs*, 126 F.3d. 343, n. 2.

Wood requests that this Court permit an "inference" that Wood was acting in defense

of another when he engaged in the battery of Plaintiff. This is not a "justifiable" inference

as it is not now permitted by the controlling law of this case. Wood cannot raise an

affirmative defense by way of "inference" which Wood has already waived. The

Supreme Court in its 1986 "Trilogy on Summary Judgment" noted the burden on the

nonmoving party has been clarified as that party must provide specific facts under which

---

[23] Plaintiff submitted Wood's factual basis for his Fifth Affirmative Defense. Self defense nor defense of another was raised.

a jury could return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. at 249. A

jury cannot return a verdict for Wood based upon a waived affirmative defense.

### B. THE RECORD REFLECTS NEITHER DEFENDANT WOULD BE ENTITLED TO ANY CLAIM OF SELF-DEFENSE.

District of Columbia Jury Instruction 19-6 notes that an individual claiming defense of

another may only claim such defense if the 'victim' has a right to self defense. The law of

Self-defense in the District of Columbia is clear. Simply, if Adeboyeku cannot claim self

defense, then neither can Wood--even if Wood had pled the involved affirmative defense.

This Court adheres to the precedent of the United States Court of Appeals For The

District of Columbia. The appellate court over 40 years ago held that:

> "Self-defense may **not** be claimed by one who deliberately places himself
> in a position where he has reason to believe 'his presence *** will provoke
> trouble."(citation omitted).

*Rowe v. United States*, 370 F.2d. 240, 241 (U.S.App.D.C. 1966).

The District of Columbia Court of Appeals, in *Howard v. United States*, 656 A.2d.

1106, 1111 (App.D.C. 1995) discussed the affirmative defense as follows:

> "Appellants both maintain that the trial judge erred in refusing to instruct
> the jury on self-defense. When a defendant raises a claim of self-defense,
> the trial judge must decide, as a matter of law, whether there is record
> evidence sufficient to support the claim (citation omitted). Here, the
> trial judge denied the requested instruction on the ground that, in the
> court's words, the defendants had put themselves 'in a position where
> violence was likely to result.' We find no error in this ruling. We have
> repeatedly reaffirmed the principle that '(s)elf-defense may not be
> claimed by one who deliberately places himself (or herself) in a position
> where he (or she) has reason to believe his (or her) 'presence would
> provoke trouble". (citations omitted).

In addition to the above, Self-defense is not permitted to an individual that attacks

another person. *Martin v. United States*, 452 A.2d. 360, 363 (App.D.C. 1982).

Wood admits that he and Adeboyeku followed the Plaintiff. They went to the

Boardwalk, the Harbor Complex garage and then up onto K Street. There is an abundance

of testimony and evidence that Adeboyeku ran after, caught up to and then attacked

Plaintiff. Wood's deposition, which he cannot repudiate, confirms the "chase". The

courts have likewise made it clear that giving chase to or following another party negates

and invalidates any claim of Self-defense. See; *Frost v. United States*, 618 A.2d. 653, 662

(App.D.C. 1992) (pursuing another party "up the street" undercuts the right to claim self-

defense); *State v. Martinez* 652 A.2d. 958, 961 (S.Ct. RI 1995) (chasing another party

"negate(s) any claim of self-defense").

Since Adeboyeku cannot effectively claim self defense, neither can Wood. Wood can

not say that he believed that Adeboyeku, after attacking Plaintiff, was then entitled to

'self defense'. Not only did Adeboyeku chase after plaintiff, but Adeboyeku, and Wood,

placed themselves in a position where they would provoke trouble. In fact, it was both of

these defendants that instigated the situation. Plaintiff had declined to involve himself in

a fight with Adeboyeku. Adeboyeku and Wood were determined that a street fight occur.

These defendants cannot now claim that either one was acting in self-defense.

### CONCLUSION

Plaintiff has established that Wood engaged in a battery. Plaintiff has established the

amount of his medical expenses. Plaintiff is seeking summary judgment on these

expenses. Wood did not contest the fact of the battery, the nature of the injuries, nor the

amount of the medical expenses.

Plaintiff has met the requirements necessary for the imposition of summary judgment

in this case. Defendant did not meet his burden to show that he is entitled to any

21

affirmative defense and he in fact did not oppose Plaintiff's motion on summary judgment in regard to his listed affirmative defenses. Wood can be held liable for the injuries caused by both he and defendant Adeboyeku. The Single Injury Rule mandates this result. Wood did not present and cannot present any expert witness testimony in regard to any purported apportionment of the damages (how does one apportion pain & suffering as example).

Plaintiff hereby respectfully requests that the Court enter a judgment on behalf of Plaintiff in the amount sought by Plaintiff as recovery of Plaintiff's medical expenses and that the Court further enter an Order for such other and further relief as the Court deems just and appropriate in the circumstances.

Dated: 18 March 2007

Respectfully submitted,


/S/

RICK A. RUDE, Esq. #244897
Suite 103
207 Park Avenue
Falls Church, VA. 22046
(AC 703) 536-3063 Tele.
(AC 703) 536-4841 Fax.

Attorney For Plaintiff