UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

    Plaintiff,

v.                                         Case No. 05cv1274(RCL)

OLAYINKA ADEBOYEKU,
A/k/a "YINKA", and
ANTHONY B. WOOD,
A/k/a WILLIE JOYNER, JR.,

    Defendants.

### PLAINTIFF'S OPPOSITION MEMORANDUM TO DEFENDANT WOOD'S MOTION FOR LEAVE TO FILE AMENDED ANSWER

COMES NOW, Plaintiff, by and through his counsel, and submits this Opposition Memorandum to the Motion of Defendant Anthony B. Wood ("WOOD") For Leave to Amend Defendant Wood's Answer to Plaintiff's Complaint (Doc. #62). WOOD is seeking to add a Sixth Affirmative Defense stated as "self defense/defense of another". WOOD represents that the proposed amendment is based upon the existing facts and no further discovery is required. Plaintiff has objected to the proposed defense as futile. Plaintiff states as follows:

### Summary of Opposition

Defendant's proposed Sixth Affirmative Defense is barred pursuant to the legal doctrine set forth in <u>Rowe v. United States</u>, 370 F.2d. 240, 241 (D.C. Cir. 1966), as further adopted in <u>Howard v. United States</u>, 656 A.2d. 1106, 1111 (App.D.C. 1995); and the legal rule that there can be no claim of third party defense in coming to the aid of a known aggressor in the commission of a crime. <u>Taylor v. United States</u>, 380 A.2d. 989, 994 (App.D.C. 1977).

1

## Procedural Summary

The instant motion for leave to file an Amended Answer is the third set of pleadings in an attempt by defendant WOOD to avoid the imposition of summary judgment. Plaintiff in accordance with the Court's Scheduling Order filed a motion for summary judgment on February 1, 2007. The motion was premised upon WOOD's admitted involvement in a violent assault and battery of Plaintiff on June 27, 2004. The motion was based upon WOOD's deposition testimony, WOOD's voluntary statements made in a June 27, 2004 Police Interview, deposition transcript excerpts, prior criminal trial testimony, and documents. The motion further utilized Admissions pursuant to Fed.Civ.R.Proc. 36. Plaintiff's Statement of Material Facts contained multiple evidentiary corroboration.

WOOD on March 12, 2007 filed his Opposition in which he did not dispute the facts asserted by Plaintiff but contended that inferences could be made that would support a defense of another based upon WOOD's intent. Plaintiff, in Reply, pointed out that WOOD had not raised defense of another as an affirmative defense; that the 'intent' in a civil battery claim was only the intent to commit the act, WOOD apparently having confused issues of intent in criminal proceedings versus "civil intent" requirements.

WOOD has presently pending before the court a motion seeking leave to withdraw or amend the Admissions of WOOD that were also submitted to the Court by Plaintiff. Plaintiff demonstrated that WOOD's representation for why WOOD did not provide answers to the involved admissions was untrue. Plaintiff pointed out that WOOD had offered no other explanation for the decision not to provide responses as WOOD had agreed. Plaintiff further noted that WOOD had knowingly failed to comply with the

threshold requirements set forth in Local Rule 7(m) thus precluding consideration of WOOD's motion.

WOOD has now acknowledged that he did not plead the affirmative defense of "self defense/defense of another" thusly conceding the contentions set forth in Plaintiff's Motion For Summary Judgment. The timing of WOOD's Motion For Leave To Amend Answer is such that it is clearly a last ditch effort to avoid summary disposition. If the Court follows the legal doctrine set forth by the United States Court of Appeals For the District of Columbia Circuit, to which the trial court is bound, then the Court must grant Plaintiff's Motion For Summary Judgment as to WOOD.

## RULE 15(A) STANDARDS FOR LEAVE TO AMEND

Courts are instructed to permit parties to amend pleadings "when justice so requires". Fed.R.Civ.Proc. 15(a). The Court is obligated to examine the facts on a 'case-by-case' basis. The timing of WOOD's requested amendment is after all discovery has been closed and dispositive motions filed. The trial court, at this stage of a proceeding, is required to examine the record and may not approve any amendment that lacks substantial evidentiary support. Secondly, the trial court may not approve any amendment that is precluded as a matter of law. Thirdly, the trial court may not approve any amendment the timing of which results in substantial prejudice to the opposing party.

## **OPPOSITION STATEMENT OF THE FACTS**

The multiple pleadings that have been filed since February 1st reflect a number of consistently undisputed facts. WOOD described and acknowledged how he and Olayinka Adeboyeku ("Yinka") followed plaintiff from the Washington Harbor Complex on June 27, 2004. WOOD described how Yinka chased after plaintiff as plaintiff was walking

away and then attacked plaintiff from behind. WOOD's contemporaneous statements revealed that WOOD knew what Yinka was planning and WOOD 'went along' with that plan and also went after plaintiff on K Street. WOOD, when confronted in his deposition, admitted and stated that Yinka was the "first aggressor". WOOD then admits to the battery of plaintiff on the alleged grounds that WOOD needed to intercede "to make it a fair fight".

WOOD's Motion/Memorandum sets forth what is identified as "Background" (Motion at pg. 1-2). The motion statement confuses facts regarding 'who, what, and when'. There is no explanation of why WOOD waited 17 months and until after discovery was closed with motions filed before seeking to amend his answer.

WOOD incorporates his "Statement of Material Facts" and referenced Exhibits but does not make any specific record references[1]. WOOD has omitted all key material facts that occurred prior to Yinka's attack on Plaintiff. These omitted facts implicate WOOD in this matter, including his prior knowledge of the planned attack, his own warning of Yinka, and the fact that he knew that Yinka was the first aggressor. These highly relevant facts preclude any claim of defense by either WOOD or Yinka.

A. WOOD'S FACTS IN SUPPORT OF HIS MOTION.

WOOD's facts, as he has incorporated them, serve to corroborate WOOD's admission of Yinka's first aggressor status as well as the viciousness of the involved attack. Mr. Michael Gillman (WOOD Exhibit A-1 and A-2) provides a description of Yinka coming

---

[1] It is assumed for purposes of this Opposition Memorandum that the incorporated Statement of Material Facts and Exhibits are those which WOOD submitted to the Court as part of his Opposition to Plaintiff's Motion For Summary Judgment.

up behind plaintiff and attacking plaintiff[2]. Mr. Matthew Zarkhosh also describes Yinka coming from behind and attacking plaintiff[3]. Mr. Matthew Zarkhosh also described WOOD actions in pulling Michael Gillman away so that Yinka could go after Plaintiff.[4] Mr. Samir Zarkhosh stated that he was walking in front and to the right of Plaintiff talking to Plaintiff as suddenly Plaintiff was thrown into a parked car.[5] Mr. Zarkhosh also described the incident as an attack and further described "how" WOOD intervened, including how WOOD blocked Zarhkosh and Gillman from stopping the attack.[6]

B. ADDITIONAL FACTS MATERIAL TO THE MOTION.

WOOD has left out all of the material facts prior to the moment of Yinka's attack on Plaintiff. These omitted facts put WOOD's involvement in context and which further reflect that neither WOOD nor Yinka may claim "self defense/defense of another". Plaintiff submitted to the Court a Statement of Material Facts In Support of Motion For Summary Judgment as well as a Statement of Facts in Plaintiff's Memorandum of Points and Authorities.[7] Plaintiff further provided a statement of "Uncontested Facts" in his

---

[2] See WOOD Exhibit A-1, Tr. Pgs. 133-136 (Yinka hit plaintiff in the back of the head causing plaintiff to fall), Tr. Pgs. 143-144 (WOOD grabbed Gillman's shoulder and pulled Gillman away as plaintiff lay on the ground and then Yinka kicked plaintiff in the head), Tr. Pgs. 145-147 (Plaintiff was on his back on the ground as Yinka was hitting him in the head); Exhibit A-2, Tr. Pg 46-47 (WOOD pulled Gillman off Yinka as Plaintiff lay on the ground), Tr. Pg. 48 (WOOD grabbed Gillman as Plaintiff lay on the ground), Tr. Pg. 50 (Yinka Kicked Plaintiff in the head).

[3] See WOOD Exhibit A-3, Tr. Pgs. 141-142 (Yinka sneaking up behind Plaintiff and tackling plaintiff into a parked car), Tr. Pg. 146-147 (WOOD 'orange t-shirt' jogged up and got Gillman off Yinka 'black t-shirt'), Tr. Pg. 147 (WOOD 'orange t-shirt' pulled Plaintiff to the ground), Tr. Pg. 148 (as Plaintiff tried to get up, Yinka 'black t-shirt' attacked Plaintiff punching and kicking Plaintiff), Tr. Pg. 149 (Plaintiff was knocked to the ground and was being punched in the head by Yinka 'black t-shirt'), Tr. Pg. 150 (Plaintiff was trying to cover his face and push Yinka off him as Plaintiff was knocked unconscious)

[4] See WOOD Exhibit A-3, Tr. Pg. 147-148

[5] See WOOD Exhibit A-4, Tr. Pg. 185-186 (Plaintiff was either pushed or tackled into a parked car), Tr. Pg. 188 (Gillman attempted to restrain man in black t-shirt), Tr. Pg. 188-189 (WOOD 'orange t-shirt' freed Yinka 'black-t-shirt' from grip of Michael Gillman and WOOD blocked Gillman and Zarkhosh off from the attack on Plaintiff by Yinka), Tr. Pg. 190-191 (Plaintiff fell to the ground as he was being attacked by Yinka 'black t-shirt' and Yinka was hitting him in the face repeatedly as Plaintiff was trying to block the punches).

[6] See footnotes 2 through 5 infra.

[7] See Court Doc. #53, Attachment 3, pgs.2-6; Attachment 4.

5

Reply Memorandum.[8] Plaintiff submitted to the Court a total of eleven (11) Attachments in support of Plaintiff's Motion For Summary Judgment (See Index of Attachments 1-8 on February 1, 2007 and Attachments 9-11 on March 18, 2007). These Attachments included WOOD's Police Interview Statement (Attachment No. 2) and WOOD deposition testimony excerpts (Attachment No. 3).

Plaintiff has attached hereto WOOD's Answers to Plaintiff's Interrogatories 11 and 12 dated May 28, 2006 identified as Attachment No. 12[9]. Plaintiff, for the convenience of the Court, has further included the relevant portions of WOOD's deposition transcript identified as Attachment No. 13. WOOD has not, nor can he, dispute the following facts:

(1)

WOOD had a conversation with Officers Robert Owen and Glenn Luckett the contents of which make it clear that WOOD had knowledge that Yinka wanted to engage in a "fight" with Plaintiff[10].

(2)

Yinka had told WOOD that the week before (June 20, 2004) he had followed Plaintiff and Jonathan Cummings from Tony & Joe's Seafood Place into the garage of the Washington Harbor Complex and gotten into an altercation with Cummings.[11]

---

[8] See Court Doc. #57, pgs. 3-5.
[9] Plaintiff will continue the Attachment numbering sequence utilized in Plaintiff's Motion For Summary Judgment pleadings to avoid any confusion of document identification and for purposes of consistency and convenience for the court.
[10] See Wood Deposition Transcript, pg. 64, lines 9-17 (Attachment 13 hereto); Plaintiff Material Statement of Facts in support of Motion For Summary Judgment, MFS Nos. 12 and 13. WOOD had earlier sworn that he had no recollection of any conversation with Officers Owen and Luckett and is now in no position to dispute Owen's recollection nor of Wood's own recollection on July 11, 2006. See Attachment No. 12, pg. 2, Wood Answers to Interrogatories 11 and 12.
[11] See Wood Deposition Transcript, pg. 62 Line 15 to Pg. 63, Line 11 (Attachment 13 hereto). Based upon Yinka's previously actions of chasing people, it is easily inferred that WOOD knew why Yinka followed Plaintiff and why Yinka went to the garaga area in search of Plaintiff.

**(3)**

WOOD accompanied Yinka at all material times on June 27, 2004 including being with Yinka at the front doors and main exit from Tony & Joe's; going along with Yinka and following Plaintiff and Officer Owen onto the Boardwalk; going with Yinka through Tony & Joe's main restaurant; going with Yinka into the garage area of the Washington Harbor Complex; and going with Yinka from the garage area back through the Washington Harbor Complex up to K Street.[12]

**(4)**

WOOD said he warned Yinka that Yinka would be getting into trouble by going after Plaintiff.[13]

**(5)**

WOOD stated he saw Yinka run after and catch up to Plaintiff as Plaintiff was walking up K Street and away from the Washington Harbor Complex.[14]

**(6)**

WOOD stated that Yinka "lunged at" Plaintiff striking Plaintiff in the head[15].

**(7)**

That Michael Gillman had restrained Yinka after Yinka attacked Plaintiff and was holding Yinka.[16]

---

[12] See Wood Deposition Transcript, pg. 69 Line 20 to Pg. 73, Line 15, Pg. 76, Lines 10-17, Pg. 92, Lines 11-15; Plaintiff's Material Statement of Facts in support of Motion For Summary Judgment, MFS Nos. 20, 23, 22, 23, 24, 25.
[13] WOOD Opposition Exhibit D, pg. 1, wherein WOOD stated under oath: "Adeboyeku was still upset. John Rude, Michael Gilliam and another person began walking west on K St. NW. I told Adeboyeku if you go out this door you are going to get into trouble. Adeboyeku ran up the steps and I ran behind him. I stopped and Adeboyeku continued on and caught up with Rude and his friends".
[14] See footnotes 12 and 13 infra.
[15] Wood Deposition Transcript, pg. 105 Line 19 to pg. 106, Line 9 wherein WOOD stated: "I would say Yinka lunged first"; Plaintiff's Statement of Material Facts in support of Motion For Summary Judgment, MFS Nos. 25, 26.

7

(8)

WOOD did not intervene between Gillman and Yinka but chose to first tackle Plaintiff on a cement sidewalk[17].

Mr. James Sylvester testified in a deposition that WOOD was present when Yinka told Sylvester that he was going to "knock out John Rude". While WOOD denies hearing that statement, WOOD simultaneously denies any recollection of the conversation itself. It is internally inconsistent to claim you don't remember a conversation but "that was not what was said". (See Attachment No. 12, pg. 2). In either event, WOOD subsequently warned Yinka about what Yinka was going to do—How can you warn someone and then claim not to know what he was going to do? The inferences claimed by WOOD are simply contrary to the facts and therefore 'unjustifiable'.

The above factual discussion is further reflected in Plaintiff's First Request For Admissions to which WOOD obtained an extension of time to answer but did not respond. These evidentiary matters are 'three deep' in some areas. WOOD's request to withdraw or amend the admissions is solely for the purpose of avoiding the binding effect of those admissions. The facts therein are correct.

## OPPOSITION ARGUMENT

I.  DEFENDANT WOOD HAS NOT ESTABLISHED THAT THE PROPOSED AMENDED ANSWER SHOULD BE APPROVED.

The Appellate Court has stated that District Court is to conduct an inquiry

---

[16] See Footnotes 2 through 5 infra; Plaintiff's Statement of Material Facts in support of Motion For Summary Judgment, MFS No. 32, 36.
[17] See Wood Deposition Transcript, pg. 77 Lines 19-20, pg. 79, Lines 10-14; Plaintiff's Statement of Material Facts in support of Motion For Summary Judgment, MFS nos. 27, 28, and 29. WOOD was approximately 5'10' to 6'0' tall and weighed 260 pounds. That plaintiff would be injured by WOOD's actions was 100% foreseeable by WOOD.

"in every case into the circumstances of the delay" and that the inquiry "will articulate the basis for the amendment". The District Court is not to "simply approve it as a matter of course". *Harris v. Secretary, U.S. Department of Veterans Affairs*, 126 F.3d. 339, 345 (D.C. Cir. 1997). If there is no explanation for the delay, the Court has the discretion to deny the motion for amendment. Cf. *Zubulake v. UBS Warburg, LLC*, 231 F.R.D. 159, 162 (S.D. NY. 2005).

WOOD has not articulated any reason for his 17 month delay in proposing the involved amended answer. The Supreme Court in *Foman v. Davis*, **(1962)** 371 U.S. 178, 182 held that an amendment may not be permitted if there is (1) undue delay, (2) bad faith, (3) dilatory motive, (4) repeated failure to cure deficiencies, (5) undue prejudice to the opposition party, or (6) futility of amendment.

WOOD has proposed his amended answer after discovery is closed and dispositive motions filed. The timing of the proposed amended answer is therefore suspect. The Appellate Courts on review of Rule 15(a) motions has stated as follows:

> "...Rule 15(a)'s mandate that leave to amend 'shall be freely given when justice so requires'(citations omitted). 'If, however, leave to amend is not sought until after discovery is closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable, but also solidly grounded in the record (and) ... supported by substantial evidence.'"

*Watson v. Deaconess Waltham Hospital*, 298 F.3d. 102, 109 (1st Cir. 2002); and more recently, *Gonzales-Perez v. Hospital Interamericano*, 355 F.3d. 1, 5 (1st Cir. 2004).

The Court is obligated to review the record presented to determine whether there is substantial evidence to support the proposed amendment. In the present case, the evidence presented shows that WOOD is not entitled to claim self defense on his own behalf nor may WOOD claim defense of another—presumably Yinka.

The Court may not permit a proposed amendment if the amendment is "futile". See; <u>Simpkins v. Washington Metropolitan Area Transit Authority</u>, 2 F.Supp.2d. 52, 55 (D.D.C. 1998) ("one of the grounds for denying amendment is futility—that the amendment would have no practical effect"). Futility is established if the proposed amendment could not withstand a motion for summary judgment. See; <u>Roth v. Garcia Marquez et al.</u>, 942 F.2d. 617, 629 (9th Cir. 1991); <u>Bonin v. Calderon</u>, 59 F.3d. 815, 845 (9th Cir. 1995). This specifically includes a situation where the proposed amendment is barred as a matter of legal doctrine. Cf. <u>Pan American World Airway, Inc. v. Abrams</u>, 764 F.Supp. 864, 870 (S.D. NY. 1991).

WOOD has proffered no reason for the involved delay. The facts outlined at pages 5-8 infra more that support the conclusion that WOOD knew that Yinka was planning a fight with Plaintiff; that WOOD accompanied Yinka in pursuing Plaintiff; that WOOD saw Yinka attack Plaintiff making Yinka the "first aggressor"; and that WOOD jumped in to help Yinka "make it a fair fight". As noted further, such facts preclude any claim of self defense or defense of another. The court must adhere to Circuit precedent in the application of local law and therefore find the proposed defense unavailable –therefore "futile" under the Rule 15(a) standards. Fed.R.Civ.Proc. 15(a) ("when justice so requires" is not met in this case).

II. WOOD'S PROPOSED CLAIM OF SELF-DEFENSE/DEFENSE OF ANOTHER IS PRECLUDED UNDER DISTRICT OF COLUMBIA LAW AND THEREFORE IS A 'FUTILE' DEFENSE.

WOOD in his Motion/Memorandum provides a boilerplate discussion of Rule 15(a) standards. WOOD does not explain "how" this proposed defense would preclude Plaintiff's Motion For Summary Judgment. There is no discussion of the underlying

facts. The question of sufficiency of the record to support a claim of self-defense is a "matter of law" that a trial court must decide. See; <u>Howard v. United States</u>, 656 A.2d. 1106, 1111 (D.C.App. 1995) ("When a defendant raises a claim of self defense, the trial court must decide, as a matter of law, whether there is record evidence sufficient to support the claim"). As a question of law, this issue can be decided on summary judgment.

Plaintiff has moved for summary judgment based upon the civil claim of battery. Plaintiff refers the Court to the decision of Judge Green in her 1981 opinion in <u>Rogers v. Loews L'Enfant Plaza Hotel</u>, 526 F.Supp. 523, 529 (D.D.C. 1981) (See Plaintiff Reply Memorandum at page 8, Docket Doc. #57, pg. 8). Plaintiff would further refer this Court to the discussion of the law of civil battery in <u>Jenco v. Islamic Republic of Iran</u>, 154 F.Supp.2d. 27, 33 (D.D.C. 2001, J. Lamberth) ("a defendant has committed battery if 'he acts intending to cause a harmful or offensive contact with (a) person' and a 'harmful contact with the person ... directly or indirectly results' "). Plaintiff has presented an abundance of evidence which more that established that WOOD committed a battery of Plaintiff.

Plaintiff has cited the Court to the opinion of the District of Columbia Circuit in <u>Rowe v. United States</u>, 370 F.2d. 240, 241 (U.S.App.D.C. 1966) and to the District of Columbia Court of Appeals opinion in <u>Howard v. United States</u>, 656 A.2d. 1106, 1111 (App.D.C. 1995) reflecting the legal doctrine and policy of the District of Columbia that self-defense may not be claimed by one who deliberately places himself in a position where he has reason to believe his presence will provoke trouble. (See the discussion at pages 20-21,

Plaintiff's Reply to WOOD's Opposition Memorandum, Docket Doc. #57, pgs. 20-21). A copy of those pages is attached hereto and identified as Attachment No. 14.

WOOD's situation is not unlike that set forth in *Taylor v. United States* 380 A.2d. 989 (D.C. App. 1977) ("*Taylor*"). In this case, David Taylor and Gerald Edwards set out to commit the crime of robbery of Safeway employees making a bank deposit. Taylor and Edwards had previously viewed the employees and their procedure for making the cash deposits. On the night of June 16, 1975 Edwards and Taylor were surprised to see a security guard with the employees. Taylor then abandoned the plan and was going home. 380 A.2d. at 990. Edwards however continued with the plan and attempted to rob the employees resulting in an exchange of gunfire with the security guard. Taylor, who remained nearby, then began his own firing at the security guard and assisted Edwards in escape. 380 A.2d. at 990-91.

In the present case, WOOD was aware of Yinka's plan to attack Plaintiff. WOOD accompanied Yinka in the pursuit of Plaintiff. These are the same actions as Taylor—he knew Edward's plan to commit a felony and went along with him. WOOD in his Police Interview did not state that he stopped at the edge of the Washington Harbor Complex but did make that representation in his July 11, 2006 deposition. This is similar in conduct to Taylor seeing the security guard and deciding not to go further in the planned robbery. Edwards went forward with the crime and Taylor subsequently came to Edward's assistance. Yinka went forward with the pursuit and attack. WOOD also then came to Yinka's assistance. The similarities of the facts of these two case is instructive if not controlling. The District of Columbia Court of Appeals, in addressing Taylor's claim of self-defense and defense of another, stated as follows:

> "In order to offer a viable defense based upon defense of another, the intervenor MUST demonstrate that the third party was the innocent victim of an unlawful attack, i.e., the intervenor must prove that the victim of the attack was himself entitled to the defense of self-defense. (citations omitted). This defense of self-defense is not available to an aggressor unless after instigating the attack, he has attempted in good faith to withdraw from the confrontation and has communicated this desire to his opponent. (citation omitted)
>
> ....
>
> When we evaluate the evidence in the instant case against the elements required in order to establish a viable defense based upon defense of another, we must conclude, however, that there was no factual basis for such an instruction.
>
> Appellant misconstrues the application of the legal theory of defense of another. At no time did appellant have the right to come to the defense of Edwards, for at no time was Edwards himself entitled to use deadly force against the security guard. Edwards initiated the conflict when he announced the robbery, and all three prosecution witnesses agreed that Edwards was the first to shoot. One who commits an armed robbery forfeits his right to claim the right of self-defense against either the intended victim of the robbery or any person intervening to prevent the crime. (citation omitted). Thus, because Edwards himself could not justifiable return the fire of a security guard who was attempting to prevent a felony and who had been fired on first, appellant likewise had no right to shoot."

WOOD acknowledges that Yinka followed and attacked Plaintiff. Under *Taylor*, *Howard*, and *Rowe* both WOOD and Yinka are precluded from making the claim or affirmative defense of self-defense/defense of another.

The District of Columbia Court of Appeals in a more recent opinion on defense of another held that the intervenor "had to show that he reasonably believed AND actually believed" that the person he was assisting "had a right of self defense". See; *Frost v. United States*, 618 A.2d. 653, 661 (D.C.App. 1992)[18]. WOOD stated that he saw Yinka first lunge at Plaintiff and strike Plaintiff in the head. There is no way that WOOD can

---

[18] Plaintiff attached Civil Jury Instruction 19-6 as Attachment No. 9 to Plaintiff's Reply Memorandum. That instruction also contains the requirement that a person must "reasonably and actually believe both that the victim had a right to use self-defense" and that the person must intervene to protect the victim.

13

meet the requirement that he actually believed that Yinka retained a right of self-defense. It is long established that first aggressors forfeit any right to claim self-defense. Cf. *Martin v. United States*, 452 A.2d. 360, 363 (App.D.C. 1982).

### III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT NO MATTER THE DISPOSITION OF WOOD'S MOTION.

The evidence presented shows that Plaintiff would be entitled to summary judgment in regard to his claim against WOOD. The presentation of an alleged defense is inconsequential without the defendant demonstrating that the record facts supported the defense and based on the record facts precluded summary disposition. The testimony of WOOD, his Police Interview and the documents submitted by Plaintiff show that WOOD's proposed Sixth Affirmative Defense cannot be sustained. WOOD's own statements cannot be avoided by merely asserting an allegedly applicable defense. WOOD likewise cannot use the testimony of others to impeach WOOD's own statements and admissions. There is no reason for further delay in the disposition of this proceeding.

### **CONCLUSION**

Wherefore, in consideration of the above and foregoing, it is hereby respectfully requested that defendant's motion for leave to file an amended answer be denied; and that the court enter such other and further Order as it deems just and appropriate in the circumstances.

Dated: 6 April 2007

Respectfully submitted,

_____/S/_____
RICK A. RUDE, Esq. #244897
Suite 103
207 Park Avenue
Falls Church, VA. 22046
(AC 703) 536-3603 Tele.
(AC 703) 536-4841 Fax.

Counsel For Plaintiff

15