UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN W. RUDE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-01274 (RCL) |
| | ) |
| OLAYINKA ADEBOYEKU, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANT ADEBOYEKU'S MOTION FOR
### ATTORNEYS' FEES AND OPPOSITION TO PLAINTIFF'S
### MOTION FOR STAY OF INTERLOCUTORY ORDER

Defendant Olayinka Adeboyeku, by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 37 and the Local Rules of the District of Columbia, respectfully requests this Court to fix the amount of his attorneys' fees at $17,756 -- or such other amount as the Court deems fair and reasonable under the circumstances -- that was awarded to him on May 15, 2006 and confirmed by this Court by order dated March 30, 2007.  The basis for this motion and Defendant's opposition are set forth in the Memorandum of Points and Authorities filed herewith.

DATED:  May 1, 2007          /s/ Daniel E. Loeb
                              Daniel E. Loeb (DC Bar # 386098)
                              Douglas W. Baruch (DC Bar # 414354)
                              Kerry Hotopp (DC Bar # 483747)
                              Fried, Frank, Harris, Shriver & Jacobson, LLP
                              1001 Pennsylvania Ave., NW, Suite 800
                              Washington, DC  20004
                              (202) 639-7000
                              (202) 639-7003, Fax

                              *Attorneys for Olayinka Adeboyeku*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN W. RUDE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 05-01274 (RCL) |
| | ) |
| OLAYINKA ADEBOYEKU, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT
ADEBOYEKU'S MOTION FOR ATTORNEYS' FEES AND
IN OPPOSITION TO PLAINTIFF'S MOTION FOR STAY
OF INTERLOCUTORY ORDER**

Defendant Olayinka Adeboyeku, by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 37 and the Local Rules of the District of Columbia, respectfully requests that this Court fix the amount of his attorneys' fees at $17,756 -- or such other amount as the Court deems fair and reasonable under the circumstances -- that was awarded to him on May 15, 2006 and confirmed by this Court by order dated March 30, 2007.

This motion is the culmination of a protracted series of events arising from what this Court deemed was plaintiff's "ridiculous" failure to serve his initial disclosures. May 15 Order (Docket No. 32). Twice previously, this Court has ordered plaintiff's counsel to pay Defendant's attorneys' fees in this dispute. Now, having failed to convince the Court of a position that "made no sense," plaintiff's counsel has shifted tactics and demands, through his current motion, that the Court stay the matter until after trial because of the supposedly "clear hardship" that the fee demand creates. But counsel's motion is both premature and wholly unnecessary. It is premature because it was filed while the parties were still discussing the fee award, and just hours after defense counsel had sent a message asking for plaintiff's updated position regarding

the fees. It was unnecessary because defense counsel had not even sought to have the Court fix the amount of any fee award. Because this dispute has now required four separate motions and numerous hours of attorney time, the Court should pre-empt any further litigation and fix a fee award in the amount of $17,756, or such other amount as the Court deems fair and reasonable under the circumstances.

## BACKGROUND

Pursuant to the parties agreed schedule, the Court issued a Scheduling Order that originally set the due date of the Rule 26(a)(1) initial disclosures for March 16, 2006. (Docket No. 23). One day later, the Court Clerk docketed the Scheduling Order and inadvertently conflated the dates required for the Rule 26(a)(1) and Rule 26(a)(2) disclosures. The Clerk's docket entry therefore mistakenly stated that plaintiff's initial disclosures were due on November 1, 2006, at the tail-end of the discovery period.

Taking advantage of this obvious clerical error, plaintiff refused to make his initial disclosures by the March 16 due date. When Defendant Adeboyeku approached him to resolve the issue without the intervention of the Court, plaintiff rebuffed all of Defendant Adeboyeku's attempts, claiming that it was Defendant's responsibility to correct any perceived mistake on the docket. After exhausting all other options, Defendant Adeboyeku eventually filed a motion to compel the required initial disclosures and requested compensatory attorneys' fees. (Docket No. 28). The Court granted that motion and awarded Mr. Adeboyeku all reasonable attorneys' fees in connection with the motion, explaining that plaintiff's reliance on the "clearly erroneous entry on the Court's docket . . . is so ridiculous it is sanctionable." (Docket No. 32).

Just one day later, plaintiff filed a motion for reconsideration. (Docket No. 33). Plaintiff's motion did not include any new facts or evidence. Rather, as this Court later stated,

the "motion [for reconsideration] is a complete rehash of an argument that the Court already found to be 'so ridiculous it is sanctionable,' 'offensive,' 'trifling,' and raising 'serious question[s]' about counsel's fitness to proceed with this representation." March 30 Order at 3 (Docket No. 60). Moreover, the Court further explained that plaintiff's restyled arguments ultimately relied on a scheduling error "that made no sense and left out key terms." March 30 Order at 4 (Docket No. 60). The Court summarily denied plaintiff's motion. *Id.*

Shortly thereafter, on April 4, 2007, defense counsel sent plaintiff an invoice for $17,756 for 38.3 hours spent on the initial disclosure dispute and related motions. *See* April 4 Letter from K. Hotopp to R. Rude (attached hereto as Attachment 2). Five days later, plaintiff's counsel called and offered to "compromise" for $2,000, an offer which he repeated in a follow-up e-mail message. *See* April 9 Message from R. Rude to K. Hotopp (attached hereto as Attachment 3). Counsel for Defendant rejected this offered "compromise" as "unreasonable," noting that the plaintiff's proposed amount came out to roughly $50 per hour, or just a fraction of the going rate for legal assistants, not to mention attorneys. *See* April 13 Message from K. Hotopp to R. Rude (attached hereto as Attachment 4). Having received no response four days later, defense counsel sent another message, explaining that "I have not heard from you. . . and do not know your current position on whether you are willing to resolve the issue." *See* April 17 Message from K. Hotopp to R. Rude (attached hereto as Attachment 5). This message urged that "you and I can resolve the issue without the intervention of the court." *Id*. Incredibly, just two and a half hours later, never having contacted opposing counsel as the rules of this Court require, *see* LCvR 7(m), plaintiff's counsel filed his current motion to stay the attorneys' fee issue, claiming pursuant to LCvR 7(m) that "[n]o formal resolution of this matter appears possible at this time." (Docket No. 64).

3

**ARGUMENT**

I. **PLAINTIFF IS NOT ENTITLED TO A STAY OF THIS COURT'S AWARD OF ATTORNEYS' FEES.**

Plaintiff's counsel has moved for a stay of the attorneys' fee award, claiming that the "fee demand is a clear hardship upon plaintiff's counsel." While courts have the authority to stay an award of attorneys' fees where there is an exceptional hardship, the facts simply do not warrant a stay here. The request for a stay is premature, unnecessary, and unsupported by facts.

Most importantly, plaintiff does not claim that the Court's order or the actual fee to be a hardship, but rather that the hardship comes simply from the "fee demand." By focusing on the fee demand, plaintiff emphasizes the most salient weakness in his motion -- that if anything, it is simply premature. The parties had not even concluded their discussions concerning the amount of the award when plaintiff rushed to file this motion. At the very least, it is not proper for plaintiff's counsel to short circuit the discussion and seek the Court's intervention without even attempting to find an amicable resolution. Similarly, the motion is unnecessary. Defense counsel had not sought any award from the Court before opposing counsel filed his motion. Such a stay would be appropriate, if at all, only after the Court had set the amount of the award. Therefore, it is hard to understand what exactly opposing counsel wishes to stay.

Even if the Court were to consider a stay at this point, opposing counsel must of course show some sort of hardship or prejudice. Counsel clearly has failed to make such a showing here. In fact, other than his bald assertion of the fact that the fee demand is a "clear hardship," plaintiff's counsel offers absolutely no explanation about how exactly this court-ordered sanction constitutes any sort of hardship. Counsel includes no affidavit outlining any financial hardship, nor does he assert any inability to pay. Instead, plaintiff's counsel alleges that defense counsel's "unethical" and "inflated fee demand" is a "tool to disrupt" his case and that defense counsel is

4

in essence "pressuring him" to drop this suit.[1] While defense counsel did at one point suggest that given Defendant's complete lack of financial resources, the resolution of the fee award could form the basis of any overall resolution of the case, it is preposterous to suggest that this was an attempt to "disrupt" plaintiff's case.

    Ironically, this supposed effort to "disrupt[]," "pressure," or "harass" more accurately describes plaintiff's efforts against Defendant. Plaintiff's counsel is clearly attempting to use the federal courts to carry out his own personal vendetta against Defendant, all because plaintiff's counsel's son and three of his friends jumped Defendant, who eventually fended off the attack. As a consequence, plaintiff sued Defendant, until recently a college student who has few current financial resources, for $5 million. Plaintiff's counsel has admitted that he never expects to see any money from this case, since according to what he has told defense counsel, Defendant will never have "two nickels to rub together." Nevertheless, he has demanded a six-figure settlement amount, explaining that he would be "willing" to recognize that any settlement negotiated between the parties would be "uncollectible." This is assuming he could ever establish any liability stemming from a physical altercation that his client -- his 6'4", 270 pound son -- started. Yet while he recognizes there will never be any monetary recover here, plaintiff's counsel continues to proceed under the pretense that there will be. This behavior -- and not defense counsel's effort to recover pursuant to this Court's order -- better describes disruptive pressure tactics and harassment.

---

[1] Plaintiff unfortunately resorts to this all-too common refrain of characterizing any disagreement with his position as pressure or harassment. In response to defense counsel's original motion to compel, plaintiff alleged that "opposing defense counsel is seeking to harass plaintiff" and to "bully opposing counsel." Plaintiff's Opposition to Motion to Compel at 1, 2 (Docket No. 29).

Just as plaintiff's counsel has continued to use this Court to vent his personal antipathy towards Defendant, he has similarly and unnecessarily dragged out this attorneys' fee issue, causing no less than four motions to be filed in this "ridiculous" dispute. Plaintiff's counsel's intransigence began when he impulsively relied on a Clerk's docket entry that the Court said "made no sense and left out key terms." Despite "repeated prodding by defense counsel" to contact the Court for clarification, plaintiff steadfastly refused, requiring that a motion to compel be filed. After losing on the motion and being sanctioned, plaintiff filed a motion for reconsideration, "rehash[ing]" the same arguments as before. After the Court denied that motion and while the amount of any fee award was still under discussion, plaintiff's counsel abruptly filed a motion to stay, alleging that "[n]o informal resolution of this matter appears possible at this time." With this most recent meritless pleading, plaintiff seeks to drag out the initial disclosures issue even longer.[2] The practical effect of delaying the resolution would be to blunt the impact of the Court's original sanctions decision, reduce the value of any award, and unnecessarily increase Defendant's litigation costs. The Court should reject this effort out of hand and foreclose any further and pointless motions practice on this issue by immediately setting the amount of defense counsel's fees to be awarded and directing immediate payment.

II.   **THE COURT SHOULD FIX DEFENSE COUNSEL'S FEES IN THE AMOUNT OF $17,756, OR SUCH OTHER AMOUNT AS THE COURT DEEMS APPROPRIATE.**

Defendant has submitted an invoice to plaintiff in the amount of $17,756 for 38.3 hours of work by two attorneys in connection with the initial disclosures dispute. This figure was

---

[2] Incredibly, but perhaps predictably, plaintiff's counsel has threatened defense counsel with a sanctions motion for "improper multiplication of litigation." April 20 Message from R. Rude to K. Hotopp (attached hereto as Attachment 6).

6

reached by using this Court's approved method for awarding Rule 37 fees, the lodestar method. *See Cobel v. Norton*, 231 F. Supp. 2d 295, 300 (D.D.C. 2002) (Lamberth, J.). Under the lodestar method, the Court must multiply the reasonable hourly rate by a reasonable number of hours expended. *Id*. *See also Blum v. Stenson*, 465 U.S. 886, 888 (1984) ("the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate"). Once the lodestar amount is determined, the Court may then adjust the amount as is necessary. *See Blum*, 465 U.S. at 888 (stating that "[a]djustments to [the lodestar] fee may be made as necessary in the particular case"). As discussed below, defense counsel's hourly rate and its hours devoted to the dispute are reasonable and should therefore be set by the Court.[3]

### A.    Reasonable Rate

The reasonableness of lawyers' rates in a law firm is "relatively easy," since it is "presumed to be the rate such lawyers charge paying clients for similar services, within certain parameters." *Covington v. District of Columbia*, 839 F. Supp. 894, 896 (D.D.C. 1993) (Lamberth, J.). Indeed, as the D.C. Circuit explained in *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 24 (D.C. Cir. 1983), "*[i]n almost every case, the firm's established billing rates will provide fair compensation*." (emphasis in original). This is so because the firm's established billing rates represent "the opportunity cost of what the firm turned away in order to take the litigation; they represent the lawyers' own assessment of the value of their time." *Id*. Only where a firm's established billing rates are not in line with the "prevailing market rate in the relevant community" should the Court decline to use the rates in determining the appropriate

---

[3] In his motion to stay, opposing counsel questions the hourly rates charged by defense counsel, but nowhere does he dispute or challenge the number of hours spent by defense counsel.

7

reasonable hourly rate. *Blum*, 465 U.S. at 896. *See also Laffey*, 746 F.2d at 24-25 (holding that after a firm has provided its normal market rates, "the court may then 'bracket' this rate by establishing that it falls within the rates charged by other firms for similar work in the same community"). While some D.C. courts have adopted the so-called "*Laffey* Matrix" in determining lawyers' rates, this decision, which was first established by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp 354 (D.D.C. 1983), is inapplicable here. The *Laffey* Matrix applies to government lawyers or law firms with little or no regular billing practices or hourly rates, such as public interest firms. The D.C. Court of Appeals, which overturned the *Laffey* decision, stated very clearly that a different standard applies where, as here, a law firm has regular rates.

The rates for the two attorneys included on Defendant's invoice are their regular billing rates. Indeed, as detailed in the Declaration of Daniel E. Loeb, attached hereto as Attachment 1 (the "Declaration"), the invoiced rates for Wendy P. Fischman ($540/hour) and Kerry Hotopp ($445/hour) are the same rates that are regularly billed to other clients for similar services. These rates are also the normal and regular rates for other attorneys at Fried, Frank, Harris, Shriver & Jacobson LLP with similar levels of experience.

Similarly, these rates are substantially the same as attorneys in other large Washington law firms who have similar experience to Ms. Fischman and Mr. Hotopp. As further detailed in the Declaration, the 2006 rates for attorneys with similar levels of experience to Ms. Fischman ranged from $330 to $575. Declaration ¶ 8 (Attachment 1). The 2006 rates for attorneys with similar levels of experience to Mr. Hotopp ranged from $290 to $450. *Id.* Thus, the invoiced hourly rates are clearly in line with the "prevailing market rate" in other large Washington law firms.

As a consequence, the rates for Ms. Fischman and Mr. Hotopp are both presumptively reasonable.

B.   Reasonable Hours

A fee award should include any time "reasonably expended" on the underlying dispute. *See McDowell v. District of Columbia*, 2001 U.S. Dist. LEXIS 8114, *15-16 (D.D.C. 2001) (Lamberth, J.). In deciding what is reasonably expended, the District Court necessarily has substantial discretion and may reduce hours where they are excessive. *Id.* As a general rule, however, hours are reasonable if they would be billed to a client, because "[h]ours that are not properly billed to one's client are also not properly billed to one's adversary." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980).

Defendant has submitted a day-by-day invoice that details 38.3 hours spent by Ms. Fischman and Mr. Hotopp on the initial disclosures dispute.[4] Roughly 26 hours of that time was spent 1) calling and drafting e-mail messages and letters to plaintiff's counsel about his failure to serve his initial disclosures, 2) determining how to respond to plaintiff's counsel's failure, 3) researching Rule 26(a)(1) and caselaw interpreting the rule, and 4) finally drafting the motion to compel. Five and a half hours was devoted to drafting and researching the reply to the motion to compel. And the remaining 7.5 hours were spent researching and drafting the opposition to plaintiff's Motion for Reconsideration.[5] Duplication on the matter was kept to a minimum, since

---

[4] Defendant's invoice to plaintiff omits specific descriptions of the work that Ms. Fischman and Mr. Hotopp performed, because these billing descriptions contain privileged information. The disclosure of privileged information remains an issue in this case, since unlike many fee dispute cases, this case is ongoing. Of course, Defendant is prepared to submit detailed billing descriptions to the Court for *in camera* review.

[5] Although plaintiff has alleged that time spent responding to a motion for reconsideration is not recoverable, plaintiff has not offered a single case in this Circuit to support his bald assertion. Moreover, this Court found that the motion for reconsideration simply "rehash[ed]" plaintiff's previous arguments. Thus, plaintiff's motion was not a proper motion for reconsideration, and time spent replying to it should be compensable.

9

the overwhelming majority of the work -- 30.8 hours -- was done by Mr. Hotopp, with the remainder -- 7.5 hours -- being done by Ms. Fischman.

Moreover, defense counsel has kept the number of total hours to a minimum by reducing the total number of hours billed to plaintiff. First, in creating its invoice, defense counsel eliminated all hours billed by the two most senior attorneys supervising this case, Daniel E. Loeb and Douglas W. Baruch. Second, counsel opted not to invoice for time spent responding to plaintiff's Motion for Stay or in drafting this fee petition, even though a party is allowed to recover for such time. *See, e.g., Cobell*, 231 F.Supp. 2d at 306-07, citing *Environmental Defense Fund v. EPA*, 672 F.2d 42, 64 (D.C. Cir. 1982) ("time reasonably devoted to obtaining attorneys' fees in the context of litigation where the court must be petitioned for such an award is itself subject to an award of fees"). As a consequence, the 38.3 hours invoiced to plaintiff is quite reasonable, particularly when considering that plaintiff's counsel's actions have generated four motions, substantial research time, and a considerable number of written pages.

**CONCLUSION**

For the foregoing reasons, Defendant Adeboyeku respectfully requests that the Court grant all appropriate attorneys' fees and costs associates with the initial disclosures dispute in the amount of $17,756, or such other amount as the Court deems fair and reasonable under the circumstances.

**CERTIFICATION**

Counsel for plaintiff concurs that the Court should decide the attorneys' fee issue.

DATED: May 1, 2007                                    /s/ Daniel E. Loeb
                                                  Daniel E. Loeb (DC Bar # 386098)
                                                  Douglas W. Baruch (DC Bar # 414354)
                                                  Kerry Hotopp (DC Bar # 483747)
                                                  Fried, Frank, Harris, Shriver & Jacobson, LLP
                                                  1001 Pennsylvania Ave., NW, Suite 800
                                                  Washington, DC  20004
                                                  (202) 639-7000
                                                  (202) 639-7003, Fax

                                                  *Attorneys for Olayinka Adeboyeku*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JONATHAN W. RUDE,** | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action No. 05-01274 (RCL) |
| **OLAYINKA ADEBOYEKU**, *et al.*, | ) |
| **Defendants.** | ) |

## PROPOSED ORDER

Upon consideration of Defendant Adeboyeku's Motion for Attorneys' Fees, and all responses thereto, this Court determines that the Motion is **GRANTED**. It is hereby **ORDERED** that plaintiff reimburse Defendant Adeboyeku the amount of $_____ for Defendant's attorneys' fees and costs associated with the initial disclosures dispute. Plaintiff shall make payment within \_\_ days of entry of this order or face dismissal of the action.

So ORDERED this \_\_ day of May, 2007.

_____
United States District Judge Royce C. Lamberth