UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN W. RUDE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 05-01274 (RCL) |
| | ) |
| OLAYINKA ADEBOYEKU, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPLY TO PLAINTIFF'S OPPOSITION OF DEFENDANT
ADEBOYEKU'S MOTION TO AWARD ATTORNEYS' FEES**

Although his opposition is replete with legal errors and dubious factual arguments, Plaintiff's counsel is correct in one respect in his opposition to Defendant's Motion for Attorneys' Fees ("Defendant's Motion"): that the attorneys' fees issue has "taken on far too great weight in this proceeding." Opposition at 11. The tortured history of this dispute -- having consumed numerous hours spent on no fewer than four motions -- is unfortunately all too familiar to this Court and need not be repeated at length here. The salient point, however, is that none of this would have been necessary had Plaintiff's counsel simply complied with the Court's scheduling order. But time and again at each point in this dispute, Plaintiff's counsel has imprudently and obstinately ignored and rejected the numerous opportunities available to him to defuse the situation.

Plaintiff's counsel first ignored defense counsel's repeated urging to contact the Court to rectify the Clerk's simple and obvious mistaken docket entry, instead choosing to rely on an entry that this Court said "made no sense and left out key terms" and forcing Defendant to file a motion to compel. He then improvidently chose to file a motion for reconsideration, arguing precisely the same points he presented in the motion to compel, even though the Court had emphatically rejected those arguments the first time it heard them. After the Court reaffirmed its

1

award of fees and in the midst of discussions to attempt to resolve the amount of attorneys' fees to be paid, Plaintiff's counsel rushed to file a motion for stay, certifying that "[n]o formal resolution of this matter appears possible at this time," even though he had never bothered to confirm this assumption with defense counsel, who just hours earlier had sent a message urging that "you and I can resolve the issue without the intervention of the court."[1]  Yet incredibly, despite this clear pattern of obfuscation, Plaintiff's counsel now alleges that it is defense counsel who has "engaged in improper multiplication of litigation."  Opposition at 11.

In now opposing Defendant's Motion, Plaintiff's counsel asks the Court effectively to condone his antics by narrowing the scope of the Court's sanctions to just a sliver.  Plaintiff's counsel claims that he should only be liable, if at all, for a few hours defense counsel spent typing their original motion to compel, despite the constant roadblocks and obstacles Plaintiff's counsel erected both before that motion was filed and subsequently.  In making this argument, Plaintiff's counsel purports to rely upon Rule 37(a)(4)(A), but completely misapplies the applicable law.  In actuality, the much broader scope of Rules 37(b)(2) and 37(c) applies, under which defense counsel is entitled to recover all reasonable expenses "caused by" Plaintiff's failure to provide his initial disclosures.[2]

---

[1] Verging on the nonsensical, Plaintiff's counsel argues that "Defendant intimates that somehow Plaintiff researched, drafted and filed a Motion for Stay between 2:47 PM [when defense counsel sent his message] and 5:13 PM [when Plaintiff's counsel filed his Motion to Stay] on April 17th."  Opposition at 1.  Of course, defense counsel never made such a ludicrous suggestion.  Rather, the point is that Plaintiff's counsel's motion was utterly unnecessary and his Rule 7(m) certification was unequivocally wrong.  This is but one example of the extent to which Plaintiff's counsel is willing to ignore or attempt to alter the facts to fit his needs.

[2] In addition to opposing Defendant's Motion, Plaintiff's counsel devotes nearly a page and a half to two allegations involving other supposed assaults involving Defendant Adeboyeku.  These allegations are simply incorrect: Defendant was acquitted in the Prince George's County proceeding and is unconnected to the Badr case.  But not only are these allegations incorrect, they are entirely irrelevant to the resolution of this Motion.  It is clear that Plaintiff's counsel's lengthy discussion of them is nothing other than a ham-fisted and transparent attempt to poison the Court's view of Mr. Adeboyeku.

**ARGUMENT**

I.   **THE SCOPE OF THE SANCTIONS COVERS ALL REASONABLE EXPENSES "CAUSED BY" PLAINTIFF'S FAILURE TO PROVIDE HIS INITIAL DISCLOSURES.**

In the hopes of reducing the fee award to just a nominal amount, Plaintiff's counsel argues that pursuant to Rule 37(a)(4)(A), the scope of the fee awarded is narrowly focused on the fees "attributable to making the involved motion." Plaintiff's Opposition at 5. Rule 37(a)(4), however, applies only to discovery disputes between the parties that involve neither a court order nor the initial disclosures. It does not apply here.

Rather, Plaintiff's violation was much more egregious: he failed to comply with a court order and to provide information he was required to disclose. Therefore, the sanctions for Plaintiff's failure come under Rules 37(b)(2) and 37(c). Indeed, Rule 37(b)(2), entitled "Failure to Comply With Order," specifically states that it covers "a party [who] fails to obey an order entered under Rule 26(f)" (the discovery conference rule). The notes to the Rule add further clarification that "the sanctions available for violation of other court orders respecting discovery *are available for violation of the discovery conference order*." Advisory Committee Notes, 1980 Amendment to Subdivision (b)(2) (emphasis added). Thus, a violation of any court order -- regardless of whether it is a specific discovery order or a scheduling order like the one Plaintiff violated -- triggers the broader sanctions mandated by Rule 37(b)(2). In addition to the sanctions available under Rule 37(b)(2), Plaintiff's failure to provide his initial disclosures also triggered sanctions under Rule 37(c), which provides for sanctions when a party fails "to disclose information required by [the initial disclosure] Rule 26(a)." *See generally Centagon, Inc. v.*

*Board of Directors of 1212 Lake Shore Drive Condo. Ass'n.*, 2002 U.S. Dist. LEXIS 9737, *11 (N.D. Ill. March 5, 2002) (differentiating Rules 37(a)(4)(A), (b)(2), and (c) as described above).[3]

Because violations under Rule 37(b)(2) and 37(c) go beyond mere discovery disputes between the parties, the required sanctions are appropriately more severe, allowing for the recovery of "reasonable expenses, including attorney's fees, *caused by* the failure." Rule 37(b)(2) (emphasis added). *See also* Rule 37(c)(1). This is essentially a "but for" test that includes any expenses that would not have been incurred but for the violation, a fact underscored by decisions in this and other jurisdictions. In fact, this Court has relied on Rule 37(b)(2) to award all attorneys' fees incurred as a result of counsel's failure to comply with a scheduling order. *See Cobell v. Babbitt*, 37 F. Supp. 2d 6, 39 (D.D.C. 1999) (Lamberth, J.) (ordering plaintiff to submit reasonable expenses and attorneys' fees "incurred to date as a result of defendants' failure to obey this court's two aforementioned orders," including a scheduling order). *See also McDowell v. District of Columbia*, 2006 U.S. Dist. LEXIS 89138, *10-11 (D.D.C. 2006) (upholding magistrate judge's ruling under Rule 37(b)(2) awarding all "costs stemming from the District's failure to obey the magistrate judge's [] order" to produce certain documents); *AFD Fund v. Sill*, 2003 U.S. Dist LEXIS 18914, *20 (N.D. Tex. 2003) (awarding, pursuant to Rule 37(b)(2), all attorney's fees incurred as a result of defense counsel's failure to comply with scheduling order); and *Jones v. Clinton*, 36 F. Supp. 2d 1118, 1134 (E.D. Ark. 1999) (granting attorney's fees under Rule 37(b)(2) for all time "in connection with" Defendant's failure to comply with discovery orders).

---

[3] In addition, courts have the inherent power to "protect their integrity and prevent abuses of the judicial process," and pursuant thereto may impose necessary fines and expenses. *See Shepherd v. ABC*, 62 F.3d 1469, 1474-75 (D.C. Cir. 1995). *See also Atkins v. Fischer*, 232 F.R.D. 116, 128 (D.D.C. 2005) (explaining that pursuant to the court's inherent power, it can enter "a variety of sanctions, including fines, awards of attorneys' fees and expenses").

Indeed, the cases relied upon by Plaintiff's counsel in fact support the substantially broader scope of Rule 37(b)(2) and confirm that all costs caused by Plaintiff's failure to follow the scheduling order are recoverable. Thus, in Plaintiff's counsel's leading case, *Foxley Cattle Co. v. Grain Dealers Mutual Ins. Co.*, 142 F.R.D. 677, 680 (S.D. Iowa 1992), *see* Opposition at 5, the court explained that while communications with opposing counsel regarding the underlying discovery dispute could not be compensated under Rule 37(a)(4)(A), they could be so compensated under Rule 37(b)(2).

Accordingly, under the broad scope of Rules 37(b)(2) and 37(c), recoverable expenses here include not only drafting and filing the motion to compel, as Plaintiff's counsel argues, but all activities "caused by" Plaintiff's violation of the scheduling order. This includes relevant communications with Plaintiff's counsel prior to the motion to compel, time spent opposing Plaintiff's counsel's two motions (the Motion for Reconsideration, Doc. No. 33, and the Motion for Stay of Interlocutory Order, Doc. No. 64), and time spent on Defendant's current Motion.

## II.  THE COURT HAS INFORMATION SUFFICIENT TO DETERMINE THE AMOUNT OF DEFENDANT'S FEES.

### A.  Reasonable Hours

Defense counsel has exercised their discretion in ensuring that the amount of time submitted is a reasonable amount. Despite the fact that Rules 37(b)(2) and 37(c) allow for the recovery of all reasonable attorneys' fees caused by Plaintiff's failure to provide his initial disclosures, defense counsel has removed all time spent opposing Plaintiff's counsel's Motion for Stay and for working on this Motion, both of which have required significant expenditures of time. Moreover, time spent by the two most senior attorneys assigned to this case has not been sought, leaving only the time spent by the two more junior attorneys. Accordingly, Defendant seeks just 38.3 hours for time spent working on four contentious motions and communicating

5

with Plaintiff's counsel. In view of the breadth of Rules 37(b)(2) and 37(c), this amount of time is eminently reasonable.

Because the actual time entries would potentially reveal defense counsel's work product and privileged communications in this ongoing litigation, those entries and descriptions have been withheld as privileged. In their brief in support of their motion for attorneys' fees, however, defense counsel provided specific descriptions detailing how those 38.3 hours were spent, devoting a full paragraph to describe how much time was spent 1) corresponding with Plaintiff's counsel and researching and drafting the motion to compel, 2) drafting the reply to the motion to compel, and 3) researching and drafting the opposition to Plaintiff's counsel's Motion for Reconsideration. *See* Opening Brief at 9. *See also* April 4 Invoice to R. Rude (Opening Brief, Attachment 2). Yet despite this, Plaintiff's counsel argues that these descriptions are somehow insufficient. In so arguing, he relies on a series of cases where the offered descriptions were so lacking that the reviewing courts simply did not have *any* reliable indicia of how the time was spent. Indeed, in *In re North*, 32 F.3d 607, 608 (D.C. Cir. 1994), the descriptions did not reflect any contemporaneous records, but were "[c]asual after-the-fact estimates." In *In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989), relied on by the court in *Michigan v. United States Environmental Protection Agency*, 254 F.3d 1087 (D.C. Cir. 2001), the court reduced the number of hours because the descriptions were so vague -- for example, "legal issues," "conference re all aspects," or "call re status" -- that the court could not evaluate what in fact the attorneys were doing and whether the time was spent working on the appropriate matter.

In stark contrast, defense counsel here provided comprehensive descriptions in both their invoice letter to Plaintiff's counsel as well as their Motion that detail how they spent the billed time. These descriptions contain substantial detail that reflect defense counsel's contemporaneous time records. *See* Declaration of Daniel E. Loeb (the "Declaration"), ¶ 3. For

6

example, they state not only that defense counsel corresponded with Plaintiff's counsel, but they identify the precise type of correspondence (making phone calls and writing letters and e-mail messages). Similarly, the descriptions detail not only that defense counsel spent time researching the motion to compel, but they identify the actual research topics (Rule 26(a)(1) and caselaw interpreting the rule). Thus, defense counsel's descriptions are nothing like the "vague" descriptions or "casual after-the-fact estimates" cited by Plaintiff's counsel. Moreover, should it be necessary, the Court can perform a more searching examination of the claimed time, since defense counsel has repeatedly stated their willingness to submit detailed and contemporaneous privileged billing descriptions to the Court for *in camera* review.

     B.    <u>Reasonable Rates</u>

Plaintiff's counsel argues that defense counsel has failed to establish their market rates, and accordingly, the Court should use the *Laffey* Matrix. But as explained by the D.C. Circuit in *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 24 (D.C. Cir. 1983), "[i]n almost every case, the *firm's established billing rates will provide fair compensation*." (emphasis in the original). *See also Lebron v. Washington Metro. Area Transit Authority*, 665 F. Supp. 923, 924 (D.D.C. 1987) (holding that "[i]n determining the market rate for the services of an attorney in private practice, the attorney's customary billing rate will provide a presumptive measure"). In establishing its billing rates, the firm should provide "supporting affidavits by an attorney or law firm knowledgeable in the activities litigated." *Corbell v. Norton*, 407 F. Supp. 2d 140, 170 (D.D.C. 2005) (Lamberth, J.). Once those billing rates have been established, "the court may then 'bracket' this rate by establishing that it falls within the rates charged by other firms for similar work in the same community." *Laffey*, 746 F.2d at 24-25.

By providing the Declaration of Daniel E. Loeb, defense counsel has met this burden. Mr. Loeb is actively involved in, and familiar with, this case, and his name appears on every

filing made by Defendant Adeboyeku.  The Declaration states that the billing rates for Ms. Fischman and Mr. Hotopp[4] are the "standard rates the Firm charges" for these attorneys, and that the rates are the same as the rates charged for other attorneys in the Firm with "similar background, experience, and expertise."  Declaration, ¶ 7.  The Declaration goes on to explain that these rates "are substantially the same as the rates of other similarly situated law firms in Washington, D.C."  Declaration, ¶ 8.  As additional evidence of this fact, the Declaration then points to two surveys -- including an annual billing survey by the National Law Journal -- which reflect that the rates for defense counsel are similar to the rates at other Washington firms of similar size.  *Id*.  Thus, such a Declaration is all that is necessary to establish the reasonableness of defense counsel's rates.  In fact, defense counsel's Declaration is substantially similar to declarations this Court has accepted in the past in establishing a firm's billing rates.  For instance, in 2004, this Court accepted a declaration similar to defense counsel's Declaration, along with the 2002 version of the same National Law Journal billing survey that defense counsel has provided.  *See* Memorandum and Opinion and Order at 4 (Doc. No. 951), *United States ex rel. Pogue v. Diabetes Treatment Center of America*, Civil No. 99-3298 (D.D.C. May 17, 2004) (Lamberth, J.) (attached hereto as Attachment 1).

Plaintiff's counsel now resorts to made-up requirements, insisting that to prove the reasonableness of its rates, defense counsel is "require[d]" to provide an affidavit from "an independent attorney not employed by the petitioner."  Opposition at 10.  Not surprisingly, Plaintiff's counsel's language is entirely his own, and he fails to cite any specific court language

---

[4] Plaintiff's counsel here again plays fast and loose with the facts to suit his purposes, claiming that a "proper analysis" of the National Law Journal figures shows that Mr. Hotopp's hourly rate is actually within 10% of the *Laffey* Matrix.  Opposition at 11, note 4.  In arriving at this erroneous conclusion, Plaintiff's counsel uses the figures for first year associates, surprisingly demoting Mr. Hotopp, an attorney with almost 5 years of experience, down to what he describes as a "starting associate. . . which is 'where' Mr. Hotopp actually belongs."  Plaintiff's counsel's arrogance and mean-spirited attitude apparently has no bounds.

discussing this "require[ment]." Instead, Plaintiff's counsel cites to two 20 year old decisions -- *In re Donovan*, 877 F.2d 982 (D.C. Cir. 1989) and *Jordan v. United States Dep't of Justice*, 691 F.2d 514 (D.C. Cir. 1982) -- where the fee petitioner merely included independent affidavits. However, neither of these decisions, nor any subsequent decision, has ever required an independent attorney to establish the reasonableness of an attorney's or law firm's rates.

      C.      <u>Reasonable Amount</u>

Defense counsel's requested amount of $17,756 -- or such other amount as the Court deems fair and reasonable under the circumstances -- for litigating four separate motions is reasonable in light of many of the cases cited above. For instance, in *United States ex rel. Pogue*, Civil No. 99-3298, this Court awarded fees and expenses of $83,116.02 for over 300 hours of work on three motions to compel, one motion for a protective order, and the fee petition. In *McDowell*, 2006 U.S. Dist. LEXIS 89138, the district court awarded attorney's fees of $72,910.12 for litigating five motions to compel. Thus, far from Plaintiff's counsel's bald assertion that the amount defense counsel is seeking is "outrageously unreasonable," the amount actually compares quite favorably to the fees awarded in similar Rule 37 cases in this district.

Importantly, the $72,910.12 awarded in *McDowell* was awarded by Magistrate Judge Facciola, the same Judge who Plaintiff's counsel argues has "developed the fact that one page of a pleading by an associate should take no more than 'one hour.'" Opposition at 11. Of course, Judge Facciola has expressed no such rule. Such a rule could never accurately capture the undeniable fact that different pleadings drafted by different people will take different amounts of time, and that all such times may be "reasonable." Plaintiff's counsel's invented "one page per hour rule" comes from *Mitchell v. National Railroad Passenger Corp.*, 217 F.R.D. 53, 60 (D.D.C. 2003), where Judge Facciola observed that "the junior attorney spent about an hour per

9

page on each of the documents she worked on because she spent 39.5 hours on the 44 pages she produced," and accordingly allowed 1 page per hour *in that case*.

### III.    PLAINTIFF'S COUNSEL'S PROCEDURAL ARGUMENTS ARE MERITLESS.

Finally, in a desperate ploy to distract the Court from the merits of the issue, Plaintiff's counsel argues that Defendant's pleadings should be ignored on various procedural grounds. Like his substantive arguments, however, Plaintiff's counsel is flatly wrong.

Plaintiff's counsel first argues that Defendant was untimely in opposing his Motion for Stay.[5]  Plaintiff's Reply to Motion for Stay (Doc. No. 67) at 2-3.  But in calculating the due date of Defendant's opposition, Plaintiff's counsel simply failed to make the correct calculation. Specifically, he failed to take into account that because he served his motion by electronic means, three extra days are added to the due date of Defendant's opposition, as specified under Rule 6(e) (stating "[w]henever. . . service is made under Rule 5(b)(2)(B), (C), or (D) [the electronic service provision], 3 days are added after the prescribed period").  Although defense counsel explained in detail this rule to Plaintiff's counsel, *see* May 8 message from K. Hotopp to R. Rude (attached hereto as Attachment 2), Plaintiff's counsel inexplicably refused to retract his argument, claiming that electronic service was the same as personal service and that Rule 6(e) did not apply.  Plaintiff's counsel is simply wrong.  Defendant's opposition clearly was timely.

Second, Plaintiff's counsel has taken the mystifying position that Defendant's Motion does not include the required LCvR 7(m) statement.  Opposition at 1.  But, on page 11 of Defendant's Motion, captioned in bold face, is the required certification that "Counsel for plaintiff concurs that the Court should decide the attorneys' fee issue."  Defendant's Motion at

---

[5] This issue is dealt with here because of the factual similarities between Plaintiff's counsel's Motion and Defendant's Motion.  Moreover, responding here avoids cluttering the record with additional, unnecessary filings.

11. The statement fully complies with Local Rule 7(m), informing the Court that counsel for Defendant and Plaintiff spoke and agreed the Court should decide the issue. It is baffling that Plaintiff's counsel ignores not only this portion of Defendant's brief, but also *his own agreement* that the Court should decide the attorneys' fee issue. It does, however, highlight the difference between Defendant's Motion, which was brought only after counsel for Defendant and Plaintiff had spoken and agreed to submit the issue to the Court, and Plaintiff's Stay Motion, which Plaintiff's counsel filed without *ever* having contacted defense counsel concerning the relief sought.

## CONCLUSION

For the reasons set forth herein and in Defendant's opening memorandum in support of his motion for attorneys' fees, Defendant Adeboyeku respectfully requests that the Court award him fees incurred as a result of Plaintiff's violation of his initial disclosures obligations in the amount of $17,756, or such other amount that the Court deems fair and reasonable under the circumstances.

DATED:  May 18, 2007                            /s/ Daniel E. Loeb
                                                Daniel E. Loeb (DC Bar # 386098)
                                                Douglas W. Baruch (DC Bar # 414354)
                                                Kerry Hotopp (DC Bar # 483747)
                                                Fried, Frank, Harris, Shriver & Jacobson, LLP
                                                1001 Pennsylvania Ave., NW, Suite 800
                                                Washington, DC  20004
                                                (202) 639-7000
                                                (202) 639-7003, Fax

                                                *Attorneys for Olayinka Adeboyeku*

285813