## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

       Plaintiff,

  v.                               Case No. 05cv1274(RCL)

OLAYINKA ADEBOYEKU,
A/k/a "YINKA" And
ANTHONY B. WOOD,
A/k/a WILLIE JOYNER, JR.,

       Defendants.

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff, by and through his counsel, and submits this Memorandum of Points and Authorities In Support of Plaintiff's Renewed Motion For Summary Judgment as to defendant Anthony B. Wood.

### Introduction

Plaintiff Jonathan W. Rude (hereinafter "Rude") filed suit June 24, 2005 for common law assault, battery, intentional infliction of emotional distress and gross and wanton behavior in violation of the laws of the District of Columbia. Rude seeks compensatory and punitive damages. Plaintiff, a student at Georgetown University at the time of the underlying incident, received serious injuries after being attacked by the defendants, Anthony B. Wood ("Wood") and Olayinka Adeboyeku ("Yinka" or "Adeboyeku"). The admissible evidence reflects that Wood intentionally engaged in a battery of Rude. The evidence likewise reflects that Wood cannot meet the dual elements of the 'defense of another'. Accordingly, summary judgment is appropriate.

STATEMENT OF FACTS

A.
Summary of Key Material Facts

Plaintiff has submitted a Statement of Material Facts. The Statement is a chronology of events. The document set forth relevant facts not all of which are "material", but are provided as a matter of completeness. These fact points are based upon Wood's deposition testimony, his statements to the Metropolitan Police, Wood's further amended responses to Plaintiff's First Request For Admissions and the Affidavit of an eyewitness. The following key facts are established:

- **Wood had knowledge that co-defendant Yinka intended to engage plaintiff in a fist fight the morning of June 27, 2004;**

- **Wood knew what Yinka intended to do as he told Yinka that he would get in trouble and probably get arrested;**

- **Wood, with this knowledge, made the decision to accompany Yinka in his search for and pursuit of plaintiff;**

- **Wood and Yinka saw plaintiff and 3 other persons walking away from the Harbour Complex on K Street, N.W.;**

- **Wood saw Yinka chase/run after plaintiff as plaintiff walked away;**

- **Wood saw Yinka lunge at and strike plaintiff in the head from behind;**

- **Wood saw Michael Gillman trying to restrain Yinka after Yinka's attack on plaintiff;**

- **Wood stated that after Yinka attacked, Rude was simply trying to defend himself;**

2

- **Wood decided to join the altercation and Wood then blind side plaintiff tackling plaintiff on a cement sidewalk;**

- **Wood stood between Michael Gillman and the ongoing attack to make sure that the attack was a 'fair fight';**

- **Wood saw Yinka hitting and kicking plaintiff in the head/face while plaintiff was unconscious on the sidewalk;**

- **Wood decided when plaintiff had been sufficiently beaten by Yinka;**

- **Plaintiff was seriously injured as a result of this attack;**

- **Wood demanded and obtained immunity from prosecution when he was subpoenaed at the criminal trial of Yinka.**

Plaintiff has submitted herewith a Statement of Material Facts in Support of Motion For Partial Summary Judgment. The listed fact points are referenced to the record, including Wood's deposition testimony. Such facts are incorporated herein as if set forth in full. Plaintiff has attached to the Statement of Material Facts documents, deposition excerpts and exhibits, pleadings and relevant transcript excerpts that pertain to the events of June 27, 2004.[1] The attachments are designated numbers 1 through 13. References in this Memorandum, where necessary, are to the points as identified in the Material Statement of Facts (identified hereinafter as "MSF ___"). Part B below includes the above key material facts with the required record references.

---

[1] Plaintiff has attached the documents and materials listed on Plaintiff's Statement of Material Facts. Attachment No. 1 is Wood's amended answers to Plaintiff's First Request For Admission. The November 15, 2007 deposition of Wood reflected that Wood had improperly obtained withdrawl of facts that he admitted during the deposition. (Att. No. 4, Tr. Pgs. 76-79).

B.

Relevant Chronological Facts

On June 27, 2004 at approximately 1:45 A.M. plaintiff entered the main restaurant and bar area of the Dancing Crab (MSF 16) Plaintiff was as the Dancing Crab to provide Michael Gillman a ride home (MFS 16). The Dancing Crab conducted business as a restaurant, bar and dining establishment at the Washington Harbour Complex. (MFS 1). The Complex is located at 3000-3050 K Street, N.W., Washington, D.C. (MFS 1). Olayinka Adeboyeku and Anthony B. Wood were employees of the Dancing Crab on June 27, 2004 (MFS 2,3,4,5). Wood observed Plaintiff standing in the main inside bar are of Tony & Joe's Seafood Place. (MFS 17)

Officers Robert Owen and Glenn Luckett were present in the main bar area of the Dancing Crab along with plaintiff while Yinka, Wood and Yinka's brother, Oluwatosin Adeboyeku, stood outside the main entrance/exit to the Dancing Crab. (MFS 10). Yinka was acting in a very angry manner, banging and pulling on the doors saying that he was going to fight plaintiff. (MFS 24). Officers Robert Owen and Glenn Luckett were off-duty and worked for the Washington Harbour Complex providing security services to the Complex. (MFS 22).

Robert Puzio, a manager for the Dancing Crab, approached James Sylvester and asked Sylvester to ask plaintiff to leave as Yinka was very "angry with plaintiff" (MFS 18). Yinka was upset and furious that Plaintiff was present and shouted that he was going to "fight" plaintiff. (MFS 24). Yinka also went into the summer garden area of Tony & Joe's and began to make loud noises, banging on and tipping over tables and chairs. (MFS 26). Wood approached Officers Owen and Luckett and stated there was a 'problem' involving Yinka and plaintiff and that Wood expected that Yinka would

4

engage plaintiff in a fist fight when plaintiff came outside. (MFS 19, 25). Plaintiff had a

conversation inside the main bar area of the Dancing Crab with Officer Owen in which

plaintiff indicated that he did not have a problem with Yinka and that he was willing to

speak with Yinka (MFS 20). Plaintiff specifically stated that he did not want to fight

Yinka as he had no quarrel with him (MFS 21). Officer Owen told plaintiff that it would

be better not to even see Yinka (MFS 23). Officer Owen took plaintiff, Michael Gillman

and two individuals out a side/back entrance to avoid Yinka and any incident. (MF 23,

27). Officer Owen, plaintiff and these individuals then walked past the Sequoia restaurant

on the boardwalk toward 30th Street and toward K Street, N.W. (MFS 28). Wood and

Yinka observed Officer Owen walking Plaintiff and other individuals toward a side/back

exit/entrance of Tony & Joe's Seafood Place (MFS 27, 28).Yinka began to follow Officer

Owen and plaintiff as they left the side entrance and Yinka began screaming at them,

throwing tables and chairs and banging on the outdoor furniture. (MFS 28). Officer Owen

turned to address the ruckus that Yinka was creating while Plaintiff, Gillman and the

other two individuals continued walking up 30th Street. Yinka then turned and cut

through the restaurant and main bar area of the Dancing Crab at which time Yinka told

James Sylvester that he was going to "knock Jon Rude out" and then he was going to

come back and knock out Sylvester. (MFS 29). Wood was also then in the main bar area

and was present when Yinka stated his intent to attack plaintiff. (MFS 30). Yinka and

Wood exited the main entrance of the Dancing Crab and ran into the garage of the

Complex. (MFS 31). Yinka and Wood went to the parking garage area searching for

plaintiff. (MFS 31). Wood, knowing that Yinka was intended to go after the plaintiff and

engage him in street fight, warned Yinka that he was "going to get into trouble" and

would "get arrested". (MFS 32, 33). Wood, knowing Yinka's intentions, followed with

him anyway. Yinka and Wood the left the garage area and ran up the main steps of the

Harbour Complex leading toward K Street, N.W. (MFS 34). Yinka and Wood spotted

plaintiff, Gillman and two other persons walking away from the Complex and down K

Street, N.W. (MFS 34). Yinka ran after plaintiff, Gillman and these individuals and

caught up to them (MFS 35). Yinka then lunged at plaintiff striking plaintiff in the back

of the head causing plaintiff to fall (MFS 36). Gillman then grabbed Yinka. (MFS 38).

Plaintiff from the moment he was attacked by Yinka was trying to defend himself. (MFS

37). Wood then blind sided plaintiff and tackled him onto the cement sidewalk with

Wood landing on top of Rude. (MFS 40). Wood, in June 2004, was approximately

5'10'to 6' tall and weighed 260 pounds. (MFS 41). Wood tackled plaintiff below the

waist such that Plaintiff's head hit the cement. (MFS 41). Wood then positioned himself

between the witnesses and the attack announcing that the attack was to be a 'fair fight'.

(MFS 38). Plaintiff, while being attacked by Yinka, was kicked in the head and face

several times, the last time while he lay unconscious on the sidewalk. (MFS 42, 44).

Yinka then was on top of plaintiff on the sidewalk and striking plaintiff in the head and

hitting him in the face such that plaintiff head was bouncing off the cement sidewalk

(MFS 43).[2] Yinka was hitting Plaintiff in the head while Plaintiff was laying on his back

with his arms at his sides making no effort to defend himself. (MFS 43). Wood prevented

Michael Gillman from stopping the attack. (MFS 39). When Wood decided that plaintiff

had been sufficiently beaten, he pulled Yinka off Plaintiff and Yinka again kicked

---

[2] This portion of the involved brutal attack was witnessed by another off duty police officer. That officer, at
the subsequent criminal trial testified that Yinka hit plaintiff in the head approximately 5 times and these
were some of the hardest hits he had ever seen or heard. This is a relevant fact point to the aggravated
nature of the assault. (Att. No. 7, Tr. pg. 236-237).

plaintiff in the head/face. (MFS 44). Officer Edwin Kennedy, who was off-duty and across the street from the scene of the attack observed Yinka striking Plaintiff in the head with severe blows at least five or six times while Plaintiff lay unconscious on the sidewalk[3].

Yinka and Wood then returned to Tony & Joe's Seafood Place.(MFS 45). Plaintiff, from the time that he walked into the Dancing Crab until the unprovoked attack, did not speak to nor communicate in any way with Wood, Yinka nor Oluwatosin Adeboyeku. Wood was arrested on June 27, 2004 at Tony & Joe's Seafood Place and charged with aggravated assault on plaintiff (MFS 48). Yinka fled to Maryland and was arrested on July 8, 2004 as a fugitive from the District of Columbia. (MFS 49). Yinka was returned to the District of Columbia and charged with aggravated assault on plaintiff (MFS 50).

Yinka was indicted on November 2, 2004 on six felony charges, including Aggravated Assault, Felony threats, Assault With a Deadly Weapon-Shod Foot, and Obstruction of Justice.[4] Wood was subpoened as a witness in the criminal proceedings but demanded and obtained immunity from prosecution before he would testify. (MFS 51).

Plaintiff was seriously injured in the attack sustaining a concussion, multiple facial fractures, broken eye socket, cuts, abrasions and contusions and a separated shoulder all of which were a direct result of the June 27, 2004 attack by Wood and Yinka. (MFS 52). Plaintiff incurred permanent injury to the his face as a result of the attack. (MFS 53). Plaintiff incurred a total of $73,600.20 in medical and related expenses as a direct result of the June 27, 2004 attack by Wood and Yinka. (MFS 54).

---

[3] Ibid; footnote 2 above.
[4] The felony threats and obstruction charges were the result of Yinka threatening witnesses to the June 27, 2004 attack.

7

## ARGUMENT

### Summary of Argument

Plaintiff's complaint is premised upon joint and several liability of Wood and Yinka for plaintiff's injuries. Wood has admitted that Yinka chased plaintiff as plaintiff walked away from the Washington Harbour Complex. This fact point is conclusively established pursuant to Fed.R.Civ.Proc. 36(b). Wood stated in his depositions that Yinka was the "aggressor" in this situation. Either of these fact points precludes Yinka from asserting the claim of "self defense". Wood likewise has made a Rule 36(b) Admission which conclusively establishes that Wood attacked and was also an "aggressor" toward plaintiff.

Wood makes the admission that he knew that Yinka intended to attack plaintiff. Wood stated that he witnessed Yinka attack plaintiff by lunging at plaintiff and striking him in the head. Wood's deposition testimony corroborates the Affidavit of Michael Gillman that Yinka came up from behind and to the left of Plaintiff and struck plaintiff in the back of the head. Wood provided a simple drawing as to 'where' Yinka was in relation to plaintiff as plaintiff walked up K Street.

Wood has now claimed the benefit of the Good Samaritan defense—'defense of another'. This defense requires that Wood must establish that he reasonably and actually believed 'both' that Yinka was the victim and had a right to self defense in the situation and secondly, that Wood had to intervene to "protect" Yinka. Wood's prior knowledge of Yinka's intent to assault plaintiff is knowledge of Yinka's intent to commit a crime. Wood's eyewitness account (no matter how Wood seeks to skew the facts) of Yinka's chasing and actual attack preclude any belief that Yinka had a right to self defense. In addition, Yinka was involved in a struggle with Michael Gillman at the time Wood

8

attacked plaintiff. Lastly, Wood made no effort to stop the alleged altercation but instead

sought to insure that a street fight occurred. Wood has shown evidence that he was not

only a joint tortfeasor but it can be inferred that he was a co-conspirator in the involved

attack. This inference is supported by Wood's demand for immunity.

The undisputable evidence of record supports a finding that Wood committed a

battery upon Plaintiff. Plaintiff by this motion is seeking an Order finding that the battery

occurred and that Wood is liable for Plaintiff's medical expenses incurred as a direct

consequent of the involved attack.

(I)

**THE STANDARD FOR SUMMARY JUDGMENT**

(A)

Rule 56(c) Criteria

This Court in *Demar v. PA Consulting Group, Inc.*, Case No. 04-00826 (RCL)

(D.DC.), Memorandum Opinion dated June 30, 2006, set forth this Court's legal standard

for a summary judgment motion. The court noted as follows:

> "Summary judgment shall be granted 'if the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law'. Fed.R.Civ.P. 56.
> In determining whether there is a genuine issue of material fact, the Court
> views the facts and all reasonable inferences to be drawn from them, in
> the light most favorable to the plaintiff, as the non-movant. (citation omitted).
> Plaintiff must respond to the summary judgment motion by going 'beyond
> the pleadings and by her own affidavits, or by the depositions, answers to
> interrogatories, and admissions on file, and designate specific facts showing
> that there is a genuine issue for trial (citation omitted). It is not enough for
> the plaintiff to point to any alleged factual dispute; rather, she must point to
> a genuine issue of material fact that might affect the outcome of the suit under
> the governing substantive law. (citation omitted). The court must not weigh
> the evidence, Rather, the court must determine whether enough evidence
> exists to enable a reasonable fact finder to find in favor of the plaintiff."

Defendant Wood has the burden to establish the existence of "material facts" necessary to

a "genuine issue". The Supreme Court, in *Anderson v.Liberty Lobby, Inc.* (1986) 477

U.S. 242, 248,  106 S.Ct. 2505, 91 L.Ed.2d. 202, stated:

> "Substantive law will identify which facts are material. Only disputes over
> facts that might affect the outcome of the suit under the governing law will
> properly preclude the entry of summary judgment. Factual disputes that
> are irrelevant or unnecessary will not be counted".

The Honorable Judge Gladys Kessler, in a recent Memorandum Opinion in *Essex*

*Insurance Co., v. Associates For Renewal In Education, et al.,* (Case No.

04cv1460(GK)), filed August 30, 3006, Memo. at pgs. 7-8), explicitly cited this

requirement and further noted that the non-moving party has the "affirmative duty" to

provide "enough" evidence that a reasonable jury could return a verdict in its favor…that

there "must be" a showing of "specific facts" to support an alleged genuine issue. Judge

Kessler, quoting *Anderson* concluded by noting that the court must evaluate the evidence

presented and if the evidence presented is "so one-sided" then the moving party "must

prevail as a matter of law". *Ibid.*

(B)
Reasonable Inferences Under Rule 56(c)

The Supreme Court, in consideration of a motion for summary judgment, has stated

'non-movants' are entitled to  "justifiable inferences". *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 255 (1986). Trial courts, however, are not permitted to make inferences

that are "implausible". Cf. *Matsushita Electric Industrial Co. v. Zenith Radio*

*Corporation,* 475 U.S. 574, 593 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 261 fn. 2.

This reasonable inference advantage provided non-movants does NOT extend to

inferences that "are at war with undisputed facts". *Sip-Top, Inc. v. Ekco Group, Inc.,* 86

F.3d. 827, 830 (8th Cir. 1996). Likewise, a movant is entitled to reasonable inferences, including the adverse inference to be drawn from a party that asserts fifth amendment immunities. Cf. *State Farm Life Insurance Co. v. Gutterman*, 896 F.2d. 116, 119 (5th Cir. 1990).

(C)
The Burden On Affirmative Defenses

The same standards apply to affirmative defenses raised by a defendant. Defendant has the burden of proof as to these defenses. As this Court has held, if an essential element of a claim (or defense) is missing, then judgment must be entered for the party seeking summary judgment. Cf. *Brisbin v. Washington Sports And Entertainment*, Case No. 04-0643 (RCL), Memorandum Order dated February 21, 2006, at page 4 (the moving party is successful if the opposing party fails to make a showing of an element essential to that party's case and on which that party has the burden of proof). Defendant has the burden of proof as to the affirmative defenses he raised—not only as to the alleged factual basis, but the legal sufficiency as well. If a defense is legally insufficient, then the facts become irrelevant. The involved affirmative defenses fail on both grounds.

(II)
PLAINTIFF HAS CONCLUSIVELY ESTABLISHED
THAT BOTH WOOD AND YINKA WERE AGGRESSORS
AND JOINTLY ENGAGED IN A BATTERY

The Court in its August 31st Order (Docket Entry 71, pg 5) indicated that by permitting Wood to withdraw and amend his response to plaintiff's first request for admissions that therefore it was not conclusively established that defendant was an aggressor. Wood however, has continued the following admission:

" 31. That on June 27, 2004 in the 3100 block of K Street, N.W. Wood did tackle

plaintiff.

Subject to, and without waiving, those objections set forth in Defendant's General

Objections above, this statement is **ADMITTED."** (Att. No. 1, pg. 8).

This fact is "conclusively established" pursuant to Fed.R.Civ.Proc. 36(b). Any concern

that the Court had regarding Wood as an 'aggressor' is clarified and resolved.[5]

In addition to the above, Wood also admitted that he and Yinka did chase and follow

plaintiff from the Washington Harbour Complex. Wood, in his November 2007

deposition stated:

"Q. Let's go to number 27[6]. On several different occasions you indicated that

Olayinka chased after or ran after Jon Rude, Mike Gillman, and the three other

individuals. So wouldn't this also be correct?

A. Yes." (Att. No. 4, pg. 79).

Wood likewise testified that Yinka not only ran after plaintiff but was the aggressor in

that Yinka struck the first blow. Wood stated:

"Q. Let's go to page 6. In your previous testimony you, in fact, testified that Yinka

runs first at Jonathan Rude and hit him in the head. Do you recall that?

---

[5] A plaintiff and the court are entitled to rely upon the binding effect of admissions. Cf.*Chicago District Council of Carpenters Pension Fund v. P.M.Q.T., Inc. et al.* 169 F.R.D. 336, 341 (N.D. Ill. 1996); *Rainbolt v. Johnson*, 669 F.2d. 767, 768 (D.C. Cir. 1981); *McNeil v. AT & T Universal Card*, 192 F.R.D. 492, 494 (E.D. Pa. 2000) ("admissions are conclusively binding and carry more weight than a witness statement, deposition testimony, or interrogatories, because once made, admissions can not be countered by other evidence").

[6] First Admission Request Number 27 is found at page 7 of Attachment 1 and states as follows: "that on June 27, 2004 Olayinka Adeboyeku did chase plaintiff as plaintiff walked away from the Washington Harbour Complex and Tony & Joe's Seafood Place toward the 3100 block of K Street, N.W." Wood originally provided an ambiguous response but when deposed about the responses submitted by his counsel admitted that this Admission Request in fact correct.

A.  He threw it towards the head area. I couldn't see them because they went behind the beam on K Street.

Q.  I would like to draw your attention down to lines 6 through 9. Do you see that?

A.  Mm-hmm. Yes, I do.

Q.  And you say Jon Rude was trying to defend himself?

A.  Yeah, because Yinka lunged at him first. ..." (Att. No. 4, pg 61, lines 1-13).[7]

The above deposition testimony likewise removes any doubt that Olayinka Adeboyeku was an aggressor toward plaintiff.

Wood admitted, both in his deposition testimony, and by way of admission, that he tackled Plaintiff. This constitutes a battery. *Jackson v. District of Columbia*, 412 A.2d. 948, 955 (App.D.C. 1980) (..."a battery is an intentional act that causes a harmful or offensive bodily contact"). This Honorable Court in a 2001 Opinion stated:

> "...a defendant has committed a battery if 'he acts intending to cause a harmful or offensive contact with [a] person', and a 'harmful contact with the person ....directly or indirectly results.'(citations omitted).[8]

The District Court in *Rogers v. Loews L'Enfant Plaza Hotel*, 526 F.Supp. 523 (D.D.C. 1981), stated:

> "to constitute the tort of battery, a defendant can be found liable for any physical contact with the plaintiff which is offensive or insulting, as well as physically harmful. Of primary importance is such a cause of action is the absence of consent to the contact on the part of the plaintiff, rather than hostile intent of the defendant, although intent is required, the intent is **only the intent to bring about the contact**." (526 F.Supp. at 529).

See also: *Etheredge v. District of Columbia*, 635 A.2d. 908, 916 (App.D.C. 1993) (police officer shot plaintiff). The performance of the act meets the basic requirement of "intent".

---

[7] Wood also made this fact statement in his earlier deposition as well. See. Att. 3, Dep. Tr. Wood, page 106, lines 7-9). Gillman corroborates the fact that Yinka attacked plaintiff. Gillman Stsmt, pg. 4, para. 24-26.
[8] See; *Jenco v. Islamic Republic of Iran*, 154 F.Supp.2d. 27, 33 (D.D.C. 2001, J. Lamberth).

There can be no dispute, Wood not only participated in the pursuit of Plaintiff by Yinka, but Wood further participated in the attack. It has been further established that Wood had advance knowledge of Yinka's intentions to engage in a fight. Wood went along with Yinka in this inappropriate undertaking. Wood also admitted that he kept Michael Gillman from intervening in the attack.

Plaintiff has submitted to the Court a Statement which briefly details the injuries sustained as attached an itemized summary of medical expenses incurred as a direct and proximate result of the attack. The underlying invoices and records have been produced and repeatedly made available for review. Wood did not identify any expert witness to contest that these injuries were not caused by the involved attack. Plaintiff lost over six months of his life due to the injuries sustained and the time needed for recovery. Plaintiff has sustained permanent injury to his face. The evidence show medical expenses in the amount of $73,600.29 which are undisputed. (MFS 52-54, Stmt. Rude, para. 30-35, attachment). Wood has shown himself to Plaintiff as being fundamentally 'judgment proof'. However, such a financial condition is most certainly not to be employed as a 'shield' from liability and personal responsibilities. Were that situation to be; the basic tenets of tort and personal injury law would cease to exist. Plaintiff, with the recognition of the above, is seeking an award from Wood equal to Plaintiff's medical expenses. These expenses are liquidated amounts and are recoverable by way of summary judgment. Cf. *Hudson v. Lazarus*, 217 F.2d. 344, 346-47 (U.S.App.D.C. 1954).

Yinka fled to Maryland and was arrested as a fugitive about 10 days after the attack. This evidence of flight is itself admissible. Cf. *Williamson v. United States*, 445 A.2d. 975, 981 (App.D.C. 1982)("It is universally conceded that an accused's flight or

14

disappearance is admissible as evidence of consciousness of guilt".) Wood while not

finally indicted, did demand immunity. (MFS 51). Such a demand by Wood is also

evidence of culpability in regard to the attack on Plaintiff.

(III)

**WOOD CANNOT ESTABLISH THE NECESSARY
ELEMENTS OF THE GOOD SAMARITAN DEFENSE**

The Court permitted Wood to assert the affirmative defense of "defense of another".

This places the burden on Wood to show the necessary elements in order to avoid

summary judgment. The Standard Civil Jury Instructions, number 19-6, state in part:

> "To use force to defend another victim, a person must reasonably and
> actually believe BOTH that the victim had a right in this situation to
> use self defense, and that the person must intervene to protect the
> victim."

The Court of Appeals for the District of Columbia recently stated that the intervenor "had

to show that he reasonably believed AND actually believed" that the person he was

assisting "had a right of self defense". See; *Frost v. United States*, 618 A.2d. 653, 661

(D.C.App. 1992). The Court decides the merits of affirmative defenses "as a matter of

law". See; *Howard v. United States*, 656 A.2d. 1106, 1111 (App.D.C. 1995).

Wood cannot claim the benefit of this affirmative defense because he admitted he had

knowledge of what Yinka intended and Wood also saw Yinka follow and attack the

plaintiff. Yinka had no right of self defense—and Wood knew it. Wood cannot establish

that he (Wood) had any belief that Yinka had any right to any claim of self defense.

A.

**A CLAIM OF SELF DEFENSE IS NOT AVAILABLE
WHEN ONE IS AN AGGRESSOR IN AN ALTERCATION**

There are a number of established legal principles regarding self defense. Wood

testified that Yinka attacked plaintiff and struck plaintiff. Yinka is precluded from

15

claiming self defense in this situation. See; *Martin v. United States*, 452 A.2d. 360, 363
(App.D.C. 1982). Wood admitted to seeing this act. Wood cannot therefore establish that
either he or Yinka had any "right" to the claim of self defense.

B.
SELF DEFENSE IS NOT AVAILABLE TO ONE THAT
DELIBERATELY PLACE HIMSELF IN POSITION
WHERE HE HAS REASON TO BELIEVE HIS
PRESENCE WILL PROVOKE TROUBLE

The District of Columbia has no 'rule on retreat' but has instead established the legal
doctrine and policy that denies the claim of self defense to one who deliberately places
himself in a position where he has reason to believe his present will provoke trouble. The
doctrine was established by the Court of Appeals over 40 years ago. See; *Rowe v. United
States*, 370 F.2d. 240, 241 (D.C. Cir. 1966).

Yinka placed himself on K Street and attacked the Plaintiff. Wood knew that Yinka
was going to 'get into trouble' and would 'get arrested'. Wood accompanied Yinka
anyway and he also went to a place where he knew his presence would provoke trouble.
Neither Yinka NOR Wood can claim any right of self defense. The Court in *Howard v.
United States*, 656 A.2d. 1106, 1111 (App.D.C. 1995) discussed this legal doctrine and
policy as follows:

> "Appellants both maintain that the trial judge erred in refusing to instruct
> the jury on self-defense. When a defendant raises a claim of self-defensen,
> the trial judge must decide, as a matter of law, whether there is record
> evidence sufficient to support the claim (citations omitted). Here, the
> trial judge denied the requested instruction on the ground that, in the
> court's words, the defendants had put themselves 'in a position where
> violence will likely to result'. We find no error in this ruling. We have
> repeatedly affirmed the principle that '(s)elf-defense may not be
> claimed by one who deliberately places himself (or herself) in a position
> where he (or she) has reason to believe his (or her) 'presence would
> provoke trouble'(citations omitted)".

(C)
### THE ACT OF CHASING A PLAINTIFF
### NEGATES ANY CLAIM OF SELF DEFENSE

An additional grounds for voiding any claim of self defense is when a defendant

undertakes to chase a plaintiff/victim. Such an act comes within the legal policy and

doctrine contained in the above discussion. Self defense is denied defendants in this

situation. See; *Frost v. United States*, 618 A.2d. 653, 662 (App.D.C. 1992) (...pursuing

another party 'up the street' undercuts the right to claim self defense); *State v. Martinez*,

652 A.2d. 958, 961 (S.Ct. RI. 1995) (chasing another party 'negates any claim of self

defense').

WOOD FREELY ADMITTED THAT YINKA, ACCOMPANIED BY WOOD,

WENT AFTER AND 'CHASED' PLAINTIFF UP K STREET. Again, self defense is

denied to Yinka as well to Wood. Wood likewise cannot establish that he 'actually'

believed that Yinka had the right of self defense.

(D)
### DEFENSE OF ANOTHER IS NOT AVAILABLE TO
### ONE THAT HAS ADVANCE KNOWLEDGE OF THE
### VICTIM'S INTENT TO COMMIT A CRIME

Wood has repeatedly admitted that he knew what Yinka was going to do. Wood

invoked the "Street Code" that purportedly permits residents of the District of Columbia

to engage in assault and battery, provided the incident "last less than five minutes" (See,

Att. No. 4, Dep. Tr. Wood, pg.32-33). It is no wonder that Wood seems not to understand

why he was sued.

The present case is very similar to that set forth in *Taylor v. United States*, 380 A.2d.

989 (D.C.App. 1977) ("*Taylor*"). In *Taylor* two defendants, (David Taylor and Gerald

Edwards) set out to commit the crime of robbery of Safeway employees making a bank

drop. Taylor and Edwards had previous knowledge of where and what the Safeway

employees did to make a deposit. When Edwards and Taylor saw the Safeway employees

they were surprised to see that there was a security guard with the employees. Taylor

abandoned the plan. (380 A.2d. at 990). Edwards continued and attempted to rob the

employees resulting in an exchange of gun fire with the security guard. Taylor, who was

nearby, then began to fire at the security guard and assisted Edwards to escape. (380

A.2d. at 990-91).

In the present case, Wood was aware of Yinka's plan. Wood accompanied Yinka in

furtherance of this plan to attack plaintiff. Yinka went forward with the attack and Wood

then came to Yinka's purported assistance. This is the same act as Taylor coming to the

assistance of Edwards in the attempted robbery. The Court of Appeals flatly rejected the

contention that Taylor was entitled to EITHER a claim of self-defense and defense of

another. The Court stated:

> "In order to offer a viable defense based upon defense of another, the
> intervenor MUST demonstrate that the third party was the innocent
> victim of an unlawful attack, i.e. the intervenor must prove that the
> victim of the attack was himself entitled to the defense of self-defense.
> (citations omitted). This defense of self-defense is not available to an
> aggressor unless after instigating the attack, he has attempted in good
> faith to withdraw from the confrontation and has communicated this
> desire to his opponent. (citation omitted).
> . . . . .
> When we evaluate the evidence in the instant case against the elements
> required in order to establish a viable defense based upon defense of
> another, we must conclude, however, that there was no factual basis
> for such an instruction.
> Appellant misconstrues the application of the legal theory of defense
> of another. At not time did appellant have the right to come to the
> defense of Edwards, for at not time was Edwards himself entitled to
> use deadly force against the security guard. Edwards initiated the
> conflict when he announced the robbery, and all three prosecution
> witnesses agreed that Edwards was the first to shoot. One who com-
> mits an armed robbery forfeits his right to claim the right of self-

defense against either the intended victim of the robbery or any person
intervening to prevent the crime, (citations omitted). Thus, because
Edwards himself could not justifiably return the fire of a security guard
who was attempting to prevent the felony and who had been fired on
First, appellant likewise had no right to shoot."

Wood knew that Yinka was going to commit the crime of assault and battery. Wood

cannot say that he actually believed that Yinka had a right to the claim of self-defense.

Wood likewise had no right to claim self-defense on his own, as Wood freely admitted to

the battery of plaintiff.

(IV)

**WOOD IS LIABLE AS A JOINT TORTFEASOR
FOR ALL INJURIES THAT RESULTED FROM THE ATTACK**

Wood and Yinka engaged in a battery on Plaintiff. A battery is an intentional tort. Cf.

*State Farm Mutual Automobile Insurance Co. v. Hill*, 775 A.2d. 476, 481-82 (Md.App.

2001). The Maryland Court further cited an earlier case wherein the Court held that being

"kicked .. in the face" was an intentional tort. *Ibid.* Thusly, even though Wood did not

kick Plaintiff himself, he is liable for Yinka's actions as a joint tortfeasor. Cf. *National*

*Health Laboratories v. Ahmadi*, 596 A.2d. 555, 557 (App.D.C. 1991) ("when two

tortfeasors jointly contribute to harm to a plaintiff both are potentially liable to the

plaintiff for the entire harm"). See also; *Faison v. Nationwide Mortgage Corporation*,

839 F.2d. 680, 685-686 (U.S.App.D.C. 1988) citing *Leiken v. Wilson*, 445 A.2d. 993, 999

(App.D.C. 1982). See Restatement Second, Torts, Section 12—Intentional Tortfeasors

(Joint and Several Liability for a tort which requires "intent").

(V)

**WOOD'S REMAINING DEFENSES ARE INVALID**

19

Wood raised six defenses. Three of these defenses (First – Failure to state a Claim; Second—time barred) are inconsequential. The claim clearly states a case in diversity. Secondly, the complaint was filed within one year of the underlying incident—June 27, 2004. The complaint is timely. The Fourth defense is a claim of lack of jurisdiction. Complete diversity exists—Plaintiff is a resident of Virginia, defendants are residents of Maryland and the District of Columbia respectively. Plaintiff is entitled to summary judgment on Wood's First, Second and Fourth Defenses.

A.

## RES JUDICATA/COLLATERAL ESTOPPEL ARE INAPPLICABLE TO A CIVIL PROCEEDING

Wood has not cited Plaintiff to any prior litigation between Plaintiff and Wood. Simply, there is no such prior litigation. These legal doctrines require that there be other litigation and that the "parties" or their "privies" be the same. See; *Montana v. United States*, 440 U.S. 147, 153-154 (1979); *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Parklane Hosiery Co. v. Shore* 439 U.S. 322, 326 (1979).

The criminal proceedings against Olayinka Adeboyeku in the Superior Court, *United States v. Adeboyeku*, Case Nos. F-4460-04 and 4895-04, do not provide Wood any relief. It is well established that criminal proceeding do not bar subsequent civil proceedings involving the same matters. Cf. *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235, 93 S.Ct. 489, 34 LEd.2d. 438, 442 (1972)(acquittal on a criminal proceeding is no bar to civil proceeding). Plaintiff is entitled to summary judgment on Wood's Third Defense.

B.
## THE EQUITABLE DOCTRINE OF UNCLEAN HANDS
## IS INAPPLICABLE TO AN ACTION FOR DAMAGES

Wood's Fifth Defense is alleged "unclean hands". The District of Columbia Court of

Appeals has specifically held that the doctrine of unclean hands "has no applicability in

an action for damages". *Truitt v. Miller*, 407 A.2d. 1073, 1080 (App.D.C. 1979). The

*Truitt* decision was cited with approval by the Federal District Court in *Johns v. Rozet*

141 F.R.D. 211, 220) (D.DC. 1992). Wood's Fifth Defense is invalid as a matter of law.

Plaintiff is entitled to summary judgment on the Fifth Defense.

### CONCLUSION

The facts of this case are quite clear. Two individuals pursued and attacked Plaintiff.

These individuals (Wood and Adeboeyku) were arrested and charged. Wood has

provided deposition testimony which implicates him as a participant in an assault and

battery perpetrated on Plaintiff. Wood is found to be of limited means. The limitations of

financial resources with which to pay any civil judgment should NOT constitute a "free

pass" to engage in such criminal and tortuous conduct. Were that to be the case, there

would be no consequences for defendants' conduct.

Plaintiff is seeking an award and judgment to be imposed in a liquidated amount equal

to the medical expenses incurred. It is the belief of Plaintiff that such an award amount is

appropriate to Wood's financial condition.

Accordingly, it is hereby respectfully requested that the Court favorably grant

Plaintiff's motion for summary judgment as to defendant Anthony B. Wood and in the

amount of $73,600.00 as an award of compensation from him.

21

Respectfully submitted,


_____/S/_____
RICK A. RUDE, Esq. #244897
Suite 103
207 Park Avenue
Falls Church, VA. 22046
(AC 703) 536-3063 Tele.
(AC 703) 536-4841 Fax.

Counsel For Plaintiff

Dated: 15 January 2008