UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN W. RUDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1274 (RCL) |
| ) | |
| OLAYINKA ADEBOYEKU, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Now before the Court comes plaintiff Jonathan W. Rude's renewed motion [78] for summary judgment as to defendant Anthony B. Wood. Upon full consideration of the motion, opposition brief, reply, the entire record herein, and applicable law, the motion will be GRANTED in part and DENIED in part for the reasons set forth below.

**I.   BACKGROUND**

On June 27, 2004, plaintiff and defendants Anthony Wood and Olayinka Adeboyeku were involved in a fight outside the Dancing Crab at Washington Harbour, a restaurant and bar located in the District of Columbia. In that fight, plaintiff sustained substantial injuries, which form the basis of this litigation.

During the summer of 2003, plaintiff, a Georgetown University football player, was employed as a doorman and bouncer at the Dancing Crab. (*See* Rude Aff. ¶ 4.) At the time of the events giving rise to this lawsuit, plaintiff was no longer a Dancing Crab employee. (*See id.* ¶ 6.) Adeboyeku was a University of Maryland football player employed at the Dancing Crab.

At approximately 1:45 a.m. on June 27, plaintiff went to the Dancing Crab to give Michael Gillman—his friend, teammate, and a Dancing Crab employee—a ride home. (*See* Gillman Aff. ¶ 14–15.) Adeboyeku saw plaintiff and was agitated by plaintiff's presence. Wood, who was 37 years old and working at the Dancing Crab as a doorman and bouncer on the evening in question, indicates that the source of Adeboyeku's agitation was that plaintiff was banned from the Dancing Crab due to a previous altercation with Adeboyeku. (*See* Wood Dep. 71:21–22, July 11, 2006; Opp. at 1–2.) Fearing that a dispute could arise, Police Officer Robert Owen, an off-duty officer employed part-time at the Dancing Crab, escorted plaintiff away. (*See* Pl.'s Statement of Material Facts [78-6] ¶¶ 22, 27.)

Sometime after Officer Owen and plaintiff separated, Adeboyeku followed plaintiff and Gillman along K Street away from the Dancing Crab. (*See* Opp. at 2.) Wood was either with Adeboyeku at this time or followed close behind. (*See* Wood Dep. 71:5–7, July 11, 2006.) A brawl then broke out between Adeboyeku and plaintiff, with both Wood and Gillman playing roles in the altercation. Although Wood at times maintains that Adeboyeku and plaintiff lunged at each other simultaneously to begin the physical altercation (*see id.* at 77:8–9), he also admits that Adeboyeku "lunged first" at plaintiff. (*See id.* at 106:9.) Wood's participation involved intervening to tackle plaintiff and then ensuring that Adeboyeku and plaintiff could have a "fair" one-on-one fight. (*See* Def.'s Am. Answers ¶¶ 31, 42.) Plaintiff faired poorly in this fight, causing Wood to at some point again intervene to pull Adeboyeku off of plaintiff, in effect ending the fight and preventing further injury to plaintiff. (*See* Gillman Aff. ¶ 35.)

On June 24, 2005, plaintiff filed a complaint in this Court against defendants Wood and

Adeboyeku.[1]  In his complaint, plaintiff alleges that Wood and Adeboyeku "jointly engaged in an unprovoked and vicious 'tag team' assault and battery on plaintiff" on June 27, 2004. (Compl. ¶ 8.)  Plaintiff contends that Wood encouraged, incited, and participated in the assault and battery, and prevented witnesses from intervening to prevent Adeboyeku from further attacking plaintiff. (See *id.* ¶ 14.)  Plaintiff's complaint seeks damages in the amount of $5,000,000 for his medical damages, pain and suffering, mental anguish, and permanent injury and disfigurement that resulted from the assault. (*See id.* at 4.)

Plaintiff and Adeboyeku reached a confidential settlement agreement resolving their dispute, and on October 1, 2007, this Court issued an Order [75] dismissing plaintiff's complaint as to Adeboyeku, thus leaving Wood as the sole remaining defendant in this action.

Plaintiff's renewed motion for summary judgment as to Wood seeks to hold defendant liable for $73,600, which represents the actual medical expenses incurred by plaintiff as a result of the assault. (Pl.'s Mem. [78-5] at 7, 21.)  Although Wood admits to assault and battery, at trial he intends to establish the affirmative defense that he intervened solely in the defense of Adeboyeku, who Wood actually and reasonably thought was entitled to self-defense.[2]

---

[1] Three days later, plaintiff filed a separate suit against the Dancing Crab at Washington Harbour, L.P. and its partners and managers. *See Rude v. Dancing Crab at Washington Harbour, L.P.*, No. 05-cv-1278 (D.D.C. Jun. 27, 2005).

[2] Defendant also asserts five other defenses: (1) the complaint fails to state a claim against defendant upon which relief can be granted; (2) plaintiff's suit is barred by the statute of limitations; (3) the complaint is barred by the doctrines of *res judicata* and collateral estoppel; (4) the court lacks jurisdiction over this matter; and, (5) the Court should dismiss the case because of plaintiff's unclean hands. (*See* Am. Answer at 1–2.)  Plaintiff seeks summary judgment on all of these defenses and offers more than a scintilla of evidence in support of his position on each defense. (*See* Pl.'s Mem. [78-5] at 18–19.)  Wood's opposition does not respond at all to plaintiff's arguments.  Thus, the Court will treat those matters as conceded, and plaintiff is entitled to summary judgment on the five defenses.

## II.     APPLICABLE LAW

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment when the evidence in the record demonstrates that there are no disputed issues of material fact and that the moving party is entitled to judgment on the undisputed facts as a matter of law. FED. R. CIV. P. 56(c).  A genuine issue of material fact exists if the evidence, when viewed in a light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party must provide more than "a scintilla of evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party.  *Id.* at 252.  The burden is on the movant to make the initial showing of the absence of a genuine issue of material fact in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party is then entitled to judgment as a matter of law if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  "[A]t the summary judgment stage, a judge may not make credibility determinations, weigh the evidence, or draw inferences from the facts—these are jury functions, not those of a judge ruling on a motion for summary judgment."  *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005); *see also Agosto v. INS*, 436 U.S. 748, 756 (1978) (noting that a district court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented").

## B. Assault and Battery

A defendant may be held liable for assault against another if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Rogers v. Lowes L'Enfant Plaza Hotel*, 526 F. Supp. 523, 529 (D.D.C. 1981) (quoting Restatement (Second) of Torts § 21 (1979)) (interpreting District of Columbia law). A defendant may be held liable for battery if the above "requirements of (a) are met and (b) an offensive contact with the person of the other directly or indirectly results." *Id.* (quoting Restatement (Second) of Torts § 18 (1979)) (interpreting District of Columbia law).

## C. Affirmative Defense: Defense of Another

### 1. Self-Defense Standard

> In order to invoke a legitimate claim of self-defense, a defendant must satisfy the following conditions: (1) there was an actual or apparent threat; (2) the threat was unlawful and immediate; (3) the defendant honestly and reasonably believed that he was in imminent danger of death or serious bodily harm; and (4) the defendant's response was necessary to save himself from the danger.

*Brown v. United States*, 619 A.2d 1180, 1182 (D.C. 1992) (citations omitted). However, when a defendant uses non-deadly force rather than deadly force, the third prong in this standard changes: the defendant must only honestly and reasonably that harm was imminent, not serious bodily harm or death. *McPhaul v. United States*, 452 A.2d 371, 373 (D.C. 1982). Further, as a general rule, "[o]ne cannot provoke a fight and then rely on a claim of self-defense when that provocation results in a counterattack, unless he has previously withdrawn from the fray and communicated this withdrawal." *Harris v. United States*, 364 F.2d 701, 702 (D.C. Cir. 1966) (citing *Rowe v. United States*, 164 U.S. 546 (1896)).

## 2. Defense of Another Standard

"When it comes to determining whether force is reasonably necessary to defend a third person under attack, the focus ultimately must be on the intervenor's, not the victim's, reasonable perceptions of the situation." *Frost v. United States*, 618 A.2d 653, 661 (D.C. 1992) (citations omitted). In order to prove that an intervenor has the right to use force in the defense of another person, the intervenor must show that he reasonably and actually believed that the other person had a right of self-defense. *Id.* (citing *Fersner v. United States*, 482 A.2d 387, 390 (D.C. 1984)); Standardized Civil Jury Instructions for the District of Columbia § 19.06 (2007). Although a jury's focus is on the intervenor's "reasonable perceptions of the situation, . . . [t]he victim's perception of the situation, however, is still relevant 'to determine what the intervenor's perceptions actually and reasonably were.'" *Muschette v. United States*, 936 A.2d 791, 799 (D.C. 2007) (citing *Fersner*, 482 A.2d at 392).

## III. ANALYSIS

For the reasons set forth below, the Court finds that a genuine issue of material fact exists regarding Wood's affirmative defense to assault and battery of plaintiff such that the defense remains sustainable as a matter of law. Thus, this Court cannot grant summary judgment in favor of plaintiff.

Wood admits to intentionally tackling plaintiff, and does not contest the fact that the elements of assault and battery are conclusively established. (*See* Def.'s Am. Answers ¶ 31.) However, Wood asserts the affirmative defense of defense of another. In order to escape liability, Wood must demonstrate that he reasonably and actually believed that Adeboyeku had a

right of self-defense. *See Frost*, 618 A.2d at 661. Plaintiff offers several theories in an attempt to demonstrate that Wood cannot successfully maintain this affirmative defense: (1) an aggressor cannot assert self-defense; (2) one who purposefully puts himself in a position with reason to know that his presence would provoke trouble cannot argue self-defense; (3) a defendant's chasing of his victim precludes claiming self-defense; and, (4) a defendant's advance knowledge of intent to commit a crime forecloses a self-defense argument.

First, plaintiff relies heavily on the contention that Adeboyeku and Wood were aggressors, and that it is impossible to demonstrate that Wood reasonably believed Adeboyeku had a right of self-defense. In fact, in one of Wood's depositions, he stated: "I would say [Adeboyeku] lunged first." (*See* Wood Dep. 106:9, July 11, 2006.) In plaintiff's view, this statement establishes that Adeboyeku was the initial aggressor and that Wood could not possibly have a reasonable belief that Adeboyeku was entitled to any right of self-defense. However, at another time in the deposition and in Wood's responses to requests for admission, he states that Adeboyeku and plaintiff lunged at each other simultaneously. (*See id.* at 77:8–15; Def.'s Am. Answers ¶ 29.) Wood also states that he attempted to stop Adeboyeku from harming plaintiff but was unable to do so. (*See* Wood Dep. 47:19–48:4, Nov. 15, 2007.) Further, Wood claims that "at the time from what I saw, [Adeboyeku] was being jumped by two Georgetown football players." (*See id.* at 51:15–17.) Consistent with this claim, Wood states that he only tackled plaintiff when Gillman had Adeboyeku in a choke-hold and plaintiff was punching him. (*See id.* 56:5–13.) In light of all of these statements—and despite plaintiff's presentation of evidence

undermining Wood's claims[3]—the Court cannot say that a reasonable jury could not find in favor of Wood on the affirmative defense of defense of others. At trial, the jury will have ample opportunity to weigh the credibility of witnesses in determining what defendant Wood reasonably and actually believed at the time of his decision to tackle plaintiff. Based on the record as of this date, the Court is in no position to usurp that responsibility from the jury.

Plaintiff also claims that he is entitled to summary judgment because "self-defense may not be claimed by one who deliberately places himself [or herself] in a position where he [or she] has reason to believe his [or her] presence . . . would provoke trouble." *Howard v. United States*, 656 A.2d 1106, 1111 (D.C. 1995) (citations omitted). However, it is far from clear that Wood placed himself at the scene of the altercation with reason to believe that his presence would provoke trouble. To the contrary, Wood fashions himself as someone who attempted to prevent Adeboyeku from getting into trouble with plaintiff, and who then acted as a self-anointed arbiter in the street-fight that ensued. Further, under Wood's theory, he may not have thought that Adeboyeku deliberately placed himself in a situation with a reason to believe his presence would provoke trouble. Wood denies that Adeboyeku chased plaintiff[4] (*see* Def.'s Am. Answers ¶ 27; Wood Dep. 72:14–16, July 11, 2006), and at multiple times, asserts that he had no idea why Adeboyeku followed and walked alongside plaintiff. (*See* Wood Dep. 106:10–15, July 11, 2006; Wood Dep. 44:1–2, Nov. 15, 2007.) Despite plaintiff's presentation of evidence that contradicts

---

[3] For example, Officer Owen states that Wood politely asked him and another officer to turn their backs to allow plaintiff and Adeboyeku to fight one-on-one. (*See* Superior Ct. Criminal Trial Tr. [79-8], 313:4–7, Mar. 8, 2005.)

[4] Wood at times contradicts himself regarding whether Adeboyeku chased plaintiff. (*Compare* Wood Dep. 72:14–16, July 11, 2006 (stating that Adeboyeku did not chase plaintiff), *with id.* at 69:20–76:17 (describing Adeboyeku as running after plaintiff).)

these statements, the issue of whether Wood deliberately placed himself in a situation where he had reason believe that his presence would provoke trouble, or was aware that Adeboyeku had done so, is an issue of material fact that remains. Resolution of this issue depends on the fact-finder's weighing the credibility of Wood's evidence and testimony against plaintiff's evidence and testimony. Such a role is the jury's rightful province and it remains for the jury to determine Wood's motivation for following Adeboyeku to the eventual altercation with plaintiff and whether Wood had reason to know that his presence would provoke trouble.

Plaintiff's remaining arguments in support of summary judgment—(1) that Adeboyeku's act of chasing plaintiff negates a claim of self-defense, and (2) that defense of another is unavailable because Wood had advance knowledge of intent to commit a crime—must be rejected because, like the aforementioned issues that remain for the jury to determine, a finding in support of plaintiff requires weighing the credibility of witnesses and evidence, which is properly left for a jury. First, even if the evidence presented at trial establishes that Adeboyeku pursued plaintiff along K Street, such evidence may not determinatively foreclose asserting defense of others; the chase would rather be "a fact which clearly undercut[s] the argument that [defendant] had a right to self-defense." *Frost v. United States*, 618 A.2d 653, 662 (D.C. 1992). Naturally, other facts could serve to bolster an argument in favor of a right to self-defense. Additionally, as discussed above, Wood appears to deny that Adeboyeku chased plaintiff.

As for Wood's supposed advance knowledge of Adeboyeku's intent to commit a crime, as noted above, Wood at times states that he had no idea what Adeboyeku's intentions were. This will be yet another issue for the jury to determine at trial by weighing the credibility of Wood's evidence against that of plaintiff.

**IV.    CONCLUSION**

For the reasons set forth in this Opinion, the Court concludes that plaintiff Jonathan Rude's renewed motion for summary judgment will be GRANTED in part and DENIED in part.[5] The motion will be denied as to the affirmative defense of defense of others, and granted as to all other defenses that Wood sets forth in his amended answer.

A separate order shall issue this date.


Signed by Royce C. Lamberth, Chief Judge, on May 15, 2008.

---

[5] The Court notes plaintiff's objection to Wood's statement of material facts on the grounds that Wood's submissions of superior court transcripts are inadmissible for several reasons.  (*See* Reply at 10–13.)  This objection is DENIED as moot.  In finding that plaintiff's renewed motion for summary judgment must be denied, the Court relied almost exclusively on plaintiff's own exhibits.  The Court did not have occasion to rely on Wood's superior court transcripts.